IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROQUETTE FRERES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-540-KAJ |
| | ) | |
| SPI PHARMA, INC., and | ) | |
| DRYTEC LTD. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT DRYTEC LTD.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Drytec Ltd.*

OF COUNSEL:
Brian P. Murphy
Oren D. Langer
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York  10178
(212) 309-6000

Dated: December 6, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

NATURE AND STAGE OF THE PROCEEDING............................................1

SUMMARY OF ARGUMENT ........................................................................2

STATEMENT OF FACTS ...............................................................................3

ARGUMENT....................................................................................................5

    I.    Drytec Does Not Have Any Contacts With the State of Delaware
        Sufficient to Support the Exercise of Personal Jurisdiction........................5

    II.    This Court Lacks Statutory Authority Under Delaware Law to
        Exercise Personal Jurisdiction over Drytec ...................................................6

        A.    The Facts Do Not Support the Exercise of Specific
                Jurisdiction over Drytec Pursuant to 10 Del. C. §
                3104(c) ...............................................................................8

        B.    Drytec Does Not Regularly Conduct Business in,
                Derive Substantial Revenue from or Engage in a
                Persistent Course of Conduct in the State of Delaware
                and The Facts Do Not Support the Exercise of General
                Jurisdiction over Drytec Pursuant to 10 Del. C. §
                3104(c)(4) ...........................................................................9

    III.    This Court Lacks Constitutional Power to
        Exercise Personal Jurisdiction over Drytec ...............................................10

        A.    Drytec Does Not Have the Continuous
                and Systematic Contacts Required to Establish
                General Personal Jurisdiction Under the Due
                Process Clause ..............................................................11

        B.    This Court Cannot Constitutionally Assert
                Specific Jurisdiction over Drytec...................................................14

        C.    This Court Cannot Exercise Its Authority over Drytec
                Without Offending the Traditional Notions of Fair Play
                and Substantial Justice Implicit in the Due Process
                Clause..................................................................................15

CONCLUSION.....................................................................................16

# TABLE OF AUTHORITIES

**Cases**

American Bio Medica Corp. v. Peninsula Drug Analysis Co.,
C.A. No. 99-218-SLR, 1999 WL 615175 (D. Del. Aug. 3, 1999)................................. 7

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985)........................................................................................ 15

Carteret Sav. Bank, FA v. Shushan,
954 F.2d 141 (3d Cir.), cert. denied, 506 U.S. 817 (1992) ............................................. 5

Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,
297 F.3d 1343 (Fed. Cir. 2002)........................................................... 5, 11, 14

Gehling v. St. George's School of Med., Ltd.,
773 F.2d 539 (3d Cir. 1985)................................................................ 10, 11, 14

Glater v. Eli Lilly & Co.,
744 F.2d 213 (1st Cir. 1984) .......................................................................... 13

Hall v. Helicopteros Nacionales de Columbia, S.A.,
638 S.W.2d 870 (Tex. 1982) ...................................................................... 12, 13

Hanson v. Denckla,
357 U.S. 235 (1958)...................................................................................... 15

Helicopteros Nacionales de Columbia v. Hall,
466 U.S. 408 (1984)................................................................. 11, 12, 14, 15

Hildebrand v. Steck Mfg. Co.,
279 F.3d 1351 (Fed Cir. 2002)....................................................................... 11

Int'l Shoe Co. v. Washington,
326 U.S. 310 (1945)...................................................................................... 15

Intel Corp. v. Silicon Storage Tech., Inc.,
20 F. Supp. 2d 690 (D. Del. 1998)................................................................... 7

Keeton v. Hustler Magazine, Inc.,
465 U.S. 770 (1984)......................................................................... 11, 12, 13

Koppers Co., Inc. v. Aetna Cas. & Sur. Co.,
98 F.3d 1440 (3d Cir. 1996)............................................................................ 7

ii

LSI Indus. v. Hubbell Lighting, Inc.,
232 F.3d 1369 (Fed. Cir. 2000)...................................................................................... 13

Nichols v. G. D. Searle & Co.,
991 F.2d 1195 (4th Cir. 1993) ................................................................................. 10, 13

North Penn Gas Co. v. Corning Natural Gas Corp.,
897 F.2d 687 (3d Cir.), cert. denied, 498 U.S. 847 (1990) ............................................ 5

Orange Prods., Inc. v. Winters,
C.A. No. 94-CV-6004, 1998 WL 118461 (E.D. Pa. Mar. 21, 1995) ........................... 14

Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,
149 F.3d 197 (3d Cir. 1998)................................................................................... 10, 11

Perkins v. Benguet Consol. Mining Co.,
342 U.S. 437 (1952)............................................................................................... 12, 14

Provident Nat'l Bank v. Ca. Fed. Sav. & Loan Ass'n,
819 F.2d 434 (3d Cir. 1987) ........................................................................................ 11

Ramada Inns, Inc. v. Drinkhall,
C.A. No. 83C-AV-56, 1984 WL 247023 (Del. Super. May 17, 1984)........................... 7

Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Productions, Inc.,
C.A. No. 12036, 1991 WL 129174 (Del. Ch. July 10, 1991 ...................................... 7, 9

Reliance Steel Prods. Co. v. Watson, Ess Marshall & Enggass,
675 F.2d 587 (3d Cir. 1982)........................................................................................ 11

Renner v. Lanard Toys Ltd.,
33 F.3d 277 (3d Cir. 1994)............................................................................................ 5

Saft Amer., Inc. v. Ovonic Battery Co., Inc.,
C.A. No. 95-430-SLR, U.S. Dist. LEXIS 5068 (D. Del. Mar. 25, 1996) ....................... 9

Sears, Roebuck & Co. v. Sears plc,
744 F. Supp. 1289 (D. Del. 1990)................................................................................. 8

Shute v. Carnival Cruise Lines,
897 F.2d 377 (9th Cir. 1990) ......................................................................... 10, 13, 14

Time Share Vacation Club v. Atlantic Resorts, Ltd.,
735 F.2d 61 (3d Cir. 1984)......................................................................................... 5,6

Ware v. Ball Plastic Container Corp.,
432 F. Supp. 2d 434 (D. Del. 2006).............................................................................. 11

**Statutes**

10 Del. C. § 3104(c) ........................................................................................ 6

10 Del. C. § 3104(c)(4) .............................................................................. 9, 10

**Other Authorities**

A General Look at General Jurisdiction,
    66 Tex. L. Rev. 723 (1988) ...................................................................... 13

The Myth of General Jurisdiction,
    101 Harv. L. Rev. 610 (1988) .................................................................. 13

**Rules**

Fed. R. Civ. P. 4(k)(1)(a) ............................................................................... 5

Fed. R. Civ. P. 12(b)(2) .................................................................................. 1

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff Roquette Freres ("Plaintiff" or "Roquette") filed this patent infringement action on October 20, 2006, alleging that Drytec Ltd. ("Drytec") infringes United States Patent No. 5,573,777 (the " '777 patent"). Docket Item ("D.I.") 9. The '777 patent discloses a form of pulverulent mannitol and its properties. *See id.*, Ex. A. Plaintiff's First Amended Complaint alleges that Drytec is and has been importing into the United States a product called MANNOGEM™ EZ Spray Dried Mannitol ("MANNOGEM™ EZ product") which is alleged to infringe one or more claims of the '777 patent. *Id.* ¶¶ 7-8.

Drytec is a private limited company organized under the laws of the United Kingdom with its principal place of business in Kent, England. Declaration of Paul C. Kennet In Support of Defendant Drytec Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Kennet Decl.") ¶ 4. Drytec is in the business of making and selling particle drying equipment for use in the chemical, food manufacturing and pharmaceutical industries. Drytec does not sell the accused MANNOGEM™ EZ product or any other product or service in Delaware. *Id.* ¶¶ 5, 12, 17. Drytec has no contacts with the State of Delaware, and it is not subject to suit in this State. Drytec has never transacted business or performed any character of work or service in Delaware. *Id.* ¶ 12. Drytec accordingly moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). This is the opening brief in support of Drytec's motion.

DB02:5649511.1                    064409.1002

## SUMMARY OF ARGUMENT

When challenged in a motion to dismiss, a plaintiff may not rest on the allegations of its complaint, but rather must establish, by a preponderance of the evidence, that the named defendant is subject to personal jurisdiction in the forum state. Plaintiff's complaint fails to allege a legally or factually sufficient basis for this Court to assert personal jurisdiction over Drytec. Plaintiff provides no evidentiary basis for this Court to assert personal jurisdiction over Drytec and therefore cannot meet its burden of proof.

The Delaware long-arm statute does not permit the Court to exercise personal jurisdiction over Drytec in Delaware. Because Drytec does not manufacture, produce, own, or sell the accused product in Delaware – or elsewhere – the specific jurisdiction provisions of the Delaware long-arm statute do not apply. Furthermore, Drytec has no established contacts with Delaware, therefore, the general jurisdiction provision of the Delaware long-arm statute also does not apply. Drytec does not regularly conduct business in, derive substantial revenue from, or engage in a persistent course of conduct with the State of Delaware. An assertion of general personal jurisdiction over Drytec is, therefore, unwarranted.

Drytec's lack of contacts with Delaware is insufficient under the Due Process Clause to allow this Court to assert its power and authority over Drytec. Plaintiff has not met and cannot meet its burden of proving that Drytec has continuous and systematic general business contacts with Delaware, nor has plaintiff proffered any evidence showing that Drytec has purposefully directed its activities at residents of Delaware. This litigation does not result from alleged injuries that arise out of or relate to any Drytec activity. The implicit notions of fair play and substantial justice embodied in the Due Process Clause do not permit plaintiff to hale Drytec into court in the State of Delaware.

## STATEMENT OF FACTS

The complaint alleges, correctly, that Drytec is a British corporation with its principal place of business at 46 Morley Road, Tonbridge, Kent, TN9 1RA, England. Companies House[1] Current Appointments Report for Drytec Limited (created Sept. 21, 2006) ("Companies House Rpt."), p. 2; D.I. 9 ¶ 5; Kennet Decl. ¶ 4. The complaint incorrectly alleges, however, that Drytec is and has been "importing into the United States Mannitol products that infringe one or more claims of the '777 patent" and that Drytec is and has been "importing into the United States MANNOGEM™ EZ Spray Dried Mannitol." D.I. 9 ¶¶ 7-8.

The true facts are that Drytec is not a Delaware entity and has never been authorized, registered or qualified to do business in the State of Delaware. Kennet Decl. ¶ 5; see also Delaware Secretary of State Reports (attached hereto as Ex. B). Drytec, a worldwide supplier of particle drying equipment, does not make, use or sell any type of mannitol product, nor does it import any type of mannitol product into the United States. Kennet Decl. ¶¶ 16-17. Drytec has never transacted business or performed any character of work or service in Delaware. Id. ¶ 12. Drytec has never entered into any contractual relationship with any Delaware entity, related to the accused MANNOGEM™ EZ product. Id. ¶¶ 15-17. Drytec has never contracted to do business with any persons or entities, including co-defendant SPI Pharma, Inc. and plaintiff Roquette, in Delaware. Id. ¶¶ 5, 12, 14-17. Drytec has never made, used, offered to sell, or sold any mannitol product in the United States, nor has it imported any mannitol product into the United

---

[1]    All limited companies in the UK are registered at Companies House, an Executive Agency of the Department of Trade and Industry. The main functions of Companies House are to: (i) incorporate and dissolve limited companies; (ii) examine and store company information delivered under the Companies Act and related legislation; and (iii) make this information available to the public. The Companies House Rpt. is attached as Ex. A.

States. *Id.* ¶ 16. Drytec has never made, used, offered to sell, or sold any

MANNOGEM™ EZ Spray Dried Mannitol product in the United States, nor has it

imported any MANNOGEM™ EZ Spray Dried Mannitol product into the United States.

*Id.* ¶ 17.

In a similar vein, Drytec does not have an agent for service of process in the State

of Delaware. Kennet Decl. ¶ 6. Drytec has never maintained an office, place of business,

factory, or showroom in the State of Delaware, and no Drytec officers, employees, agents

or other representatives have an office or workplace in the State of Delaware. *Id.* ¶¶ 7-8.

Drytec does not have an interest in and does not use or possess any real or personal

property in the State of Delaware. *Id.* ¶ 9. Drytec does not provide insurance in

Delaware and does not act as a surety for anyone in Delaware. *Id.* ¶ 10.

Drytec has no mailing address, telephone listing, or bank account in the State of

Delaware. Kennet Decl. ¶ 11. Drytec has never transacted any business or performed

any character of work or service in the State of Delaware, and Drytec has not contracted

to supply services or products in the State of Delaware. *Id.* ¶ 12. Drytec has never

directed any advertising specifically toward residents of the State of Delaware. *Id.* ¶ 13.

Drytec derives no revenue from any clients, consumers, customers or any other business

in the State of Delaware. *Id.* ¶ 14.

Roquette makes no allegation about personal jurisdiction over Drytec. The only

facts pleaded specifically as to Drytec that could conceivably relate to personal

jurisdiction are as follows:

> 5.    On information and belief, Defendant Drytec is a
> British corporation with its principal place of business at 46
> Morley Road, Tonbridge, Kent, TN9 1RA, England.

D.I. 9 ¶ 5. The complaint makes no other jurisdictional allegations.

## ARGUMENT

I.    **DRYTEC DOES NOT HAVE ANY CONTACTS WITH THE STATE OF DELAWARE SUFFICIENT TO SUPPORT THE EXERCISE OF PERSONAL JURISDICTION**

Roquette's complaint fails to allege a legally or factually sufficient basis for this Court to assert personal jurisdiction over Drytec.  Under Federal Rule of Civil Procedure 4(k)(1)(a), personal jurisdiction may be established over a party "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located."  "[B]efore a federal court can exercise personal jurisdiction over a defendant in a federal question case, the court must determine whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and whether the exercise of jurisdiction would satisfy the requirements of due process." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002); *see also Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir. 1994) (holding that courts "must first determine whether the exercise of jurisdiction is authorized under the state (or appropriate federal) long-arm statute and then whether it meets the requirements of the Due Process Clause of the United States Constitution").

The party asserting personal jurisdiction, Roquette, "bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir.), *cert. denied*, 506 U.S. 817 (1992).  Roquette may not rely on the conclusory allegations raised in its pleadings, but rather "must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.) (per curiam) (quotation omitted), *cert. denied*, 498 U.S. 847 (1990); *see also Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984) ("[A]t

no point may a plaintiff rely on the bare pleadings alone in order to withstand a

defendant's Rule 12(b)(2) motion to dismiss . . . . Once the motion is made, plaintiff must

respond with actual proofs, not mere allegations.").  Roquette has failed to provide any

evidentiary basis for this Court to assert personal jurisdiction over Drytec, and has,

therefore, not met its burden of proof.

## II.    THIS COURT LACKS STATUTORY AUTHORITY UNDER DELAWARE LAW TO EXERCISE PERSONAL JURISDICTION OVER DRYTEC

The only statutory basis that could possibly support personal jurisdiction over

non-resident Drytec in this action is the Delaware long-arm statute – 10 Del. C.

§ 3104(c).  Section 3104(c) provides:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>
> (5) Has an interest in, uses or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

When interpreting the Delaware long-arm statute, the federal courts must "defer to the interpretations of the Delaware state courts." *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 694 (D. Del. 1998); *cf. Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996) (holding that federal courts sitting in diversity must follow existing state court interpretations of state law).

Section 3104(c) is "given a liberal construction so that its purpose is achieved," but Delaware law also requires that the statutory language not be stretched beyond "the common usage of the English language" in a quest to acquire personal jurisdiction over a defendant. *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Productions, Inc.*, C.A. No. 12036, 1991 WL 129174 at *2-3 (Del. Ch. July 10, 1991)[2]; *Ramada Inns, Inc. v. Drinkhall*, C.A. No. 83C-AV-56, 1984 WL 247023 at *2 (Del. Super. May 17, 1984) ("Where qualifying language is used, the Court should not ignore that language out of a desire to afford maximum jurisdictional coverage."). This Court has followed the Delaware state courts' fidelity to the language of the statute. *See, e.g., Intel Corp.*, 20 F. Supp. 2d at 694 ("the Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis"); *see also American Bio Medica Corp. v. Peninsula Drug Analysis Co.*, C.A. No. 99-218-SLR, 1999 WL 615175, at *2 n.3 (D. Del. Aug. 3, 1999) ("as noted above, the Delaware state courts do not collapse the long-arm inquiry into the due process inquiry and neither shall this court"). This Court, therefore, lacks statutory authority under Delaware law to exercise personal jurisdiction over Drytec.

---

[2]      Unreported cases cited in this brief are appended alphabetically under Ex. C.

A.    **The Facts Do Not Support the Exercise of Specific Jurisdiction over Drytec Pursuant to 10 Del. C. § 3104(c)**

There are no facts that could possibly support personal jurisdiction under the specific jurisdiction provisions of § 3104(c). Drytec has never sold any mannitol products or services that could possibly infringe the claims of the '777 patent, nor does Drytec have any operations in the State of Delaware. Kennet Decl. ¶¶ 5, 7, 8, 12. As a result, the specific jurisdiction subsections of § 3104(c), *i.e.* subsections (1)-(3), cannot support any exercise of personal jurisdiction over Drytec by this Court. *See Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1289, 1292 (D. Del. 1990) (noting that the specific jurisdiction portions of § 3104(c) require the cause of action to "arise out of the defendant's alleged contacts with the forum").

There also is no basis to assert personal jurisdiction under subsections (5) or (6) of the statute, because the complaint does not allege that Drytec has an interest in real or personal property located in Delaware or a surety or insurance contract for persons, property, risks, contracts, obligations or agreements located, executed, or to be performed within Delaware. The complaint could not contain such allegations because Drytec does not have an interest in and does not use or possess any real or personal property in the State of Delaware, nor does it provide insurance or act as a surety for anyone in Delaware. Kennet Decl. ¶¶ 9-10. Therefore, no basis for specific jurisdiction exists under the Delaware long-arm statute.

**B.    Drytec Does Not Regularly Conduct Business in,
Derive Substantial Revenue from or Engage in a
Persistent Course of Conduct in the State of Delaware
and No Facts Support the Exercise of General Jurisdiction
over Drytec Pursuant to 10 Del. C. § 3104(c)(4)**

An assertion of general personal jurisdiction subjects a defendant to a virtually

unlimited variety of suits in the forum. As a result, a court may assume jurisdiction under

§ 3104(c)(4) – the statutory authority for general jurisdiction under Delaware law – <u>only</u>

"when a defendant has contacts with this state that are <u>so extensive and continuing</u> that it

is fair and consistent with state policy to require that the defendant appear here and

defend a claim." *Red Sail Easter*, 1991 WL 129174, at *3 (emphasis added). Roquette

cannot invoke § 3104(c)(4) because Drytec does not regularly conduct business in

Delaware, derive substantial revenue from Delaware, or engage in a persistent course of

conduct in Delaware.

Drytec has never conducted any business in Delaware. Kennet Decl. ¶ 12.

Drytec does not sell any products or services in Delaware. *Id.* at ¶¶ 12, 14. Drytec has

never maintained an office, place of business, factory, or showroom in the State of

Delaware, and none of Drytec's officers, employees, agents or other representatives have

an office or workplace in the State of Delaware. *Id.* at ¶¶ 7-8. Finally, Drytec does not

derive any revenue from any clients, consumers, customers or any other business in

Delaware. *Id.* at ¶ 14. *See Saft Amer., Inc. v. Ovonic Battery Co., Inc.*, C.A. No. 95-430-

SLR, U.S. Dist. LEXIS 5068, at *14-15 (D. Del. Mar. 25, 1996) (motion to dismiss for

lack of personal jurisdiction granted where moving party maintains no offices, owns no

property, has no employees, and derives no revenue from the State of Delaware). An

assertion of general personal jurisdiction over Drytec pursuant to § 3104(c)(4) cannot be

justified because of the lack of any contacts between Drytec and the State of Delaware.

Any attempt to construe § 3104(c)(4) to permit the exercise of personal jurisdiction over a party such as Drytec would, moreover, expand § 3104(c)(4) far beyond the Due Process Clause as construed by the United States Supreme Court and the United States Courts of Appeals. *See infra* text at p. 12 *et seq.* (citing and discussing *Gehling v. St. George's School of Med., Ltd.*, 773 F.2d 539, 541 (3d Cir. 1985) (six percent of its students from forum (constituting several hundred thousand dollars in tuition from forum residents) not sufficient); *Nichols v. G. D. Searle & Co.*, 991 F.2d 1195, 1198-200 (4th Cir. 1993) ($9-13 million annual sales in forum (2% of total) not sufficient); *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990) (1.29% and 1.06% of total business drawn from forum in two years prior to suit not sufficient), *rev'd on other grounds*, 499 U.S. 585 (1991). Delaware law holds that its long-arm statute should be construed liberally to comport with the bounds of Due Process, but it has never demanded that any court interpret the law in a manner that would violate the Due Process Clause. On this basis as well, the Court should reject Roquette's assertion of personal jurisdiction over Drytec.

### III. THIS COURT LACKS CONSTITUTIONAL POWER TO EXERCISE PERSONAL JURISDICTION OVER DRYTEC

The Due Process Clause[3] requires an independent evaluation by this Court of whether it has the constitutional power to require Drytec to defend this lawsuit in Delaware. This is so even if the requisite statutory authority exists under Delaware state law. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 202 (3d Cir. 1998) ("We cannot presume that jurisdiction is proper simply because the requirements of a

---

[3]    Although the Fifth Amendment Due Process Clause applies because this is a patent case, the Federal Circuit interprets the Fifth Amendment Due Process Clause in accord with the Fourteenth Amendment Due Process Clause. *Deprenyl Animal Health*, 297 F.3d at 1350.

long-arm statute have been met."). Whether the dictates of the Due Process Clause are met is governed by Federal Circuit law. *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1355 (Fed Cir. 2002). Because Drytec does not have continuous and systematic contacts with the State of Delaware and does not purposefully direct its activities at residents of the forum resulting in a litigation from alleged injuries that arise out of or relate to those activities, this Court lacks constitutional power to exercise personal jurisdiction over Drytec.

A. **Drytec Does Not Have the Continuous and Systematic Contacts Required to Establish General Personal Jurisdiction Under the Due Process Clause.**

For an assertion of <u>general</u> personal jurisdiction to satisfy the dictates of due process, "the plaintiff must show significantly more than mere minimum contacts." *Provident Nat'l Bank v. Ca. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). Rather, Roquette must prove that Drytec has "continuous and systematic general business contacts" with Delaware. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 416 (1984); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984) (stating the issue as whether the defendant's relationship with the forum was "so substantial as to support jurisdiction over a cause of action unrelated to those activities"); *Deprenyl Animal Health*, 297 F.3d at 1349 (continuous and systematic contacts required); *Gehling*, 773 F.2d at 541 (requiring showing that defendant "carried on a 'continuous and substantial part' of their business in [the forum]"). "The facts required to assert this 'general' jurisdiction must be 'extensive and persuasive.'" *Reliance Steel Prods. Co. v. Watson, Ess Marshall & Enggass*, 675 F.2d 587, 589 (3d Cir. 1982); *see also Ware v. Ball Plastic Container Corp.*, 432 F. Supp. 2d 434, 438 (D. Del. 2006). Roquette has not shown that Drytec has <u>any</u> contacts with the State of Delaware, and certainly has not

shown Drytec has contacts with Delaware sufficient to establish general personal

jurisdiction under the Due Process Clause.

The United States Supreme Court has found the assertion of general personal

jurisdiction valid just once – in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437

(1952) – based on the defendant's decision to locate its principal place of business in the

forum state:

> In *Perkins*, . . . [the corporation's] president, who was also
> general  manager and principal stockholder of the
> company, returned to his home in Ohio where he carried on
> 'a continuous and systematic supervision of the necessarily
> limited wartime activities of the company. . . . The
> company's files were kept in Ohio, several directors'
> meetings were held there, substantial accounts were
> maintained in Ohio banks, and all key business decisions
> were made in the State. . . .  In those circumstances, <u>Ohio
> was the corporation's principal, if temporary, place of
> business so that Ohio jurisdiction was proper even over a
> cause of action unrelated to the activities in the State.</u>

*Keeton*, 465 U.S. at 779 n.11 (emphasis added) (citations omitted).  Following *Perkins*,

an entity must be generally present in the forum and make the forum its home in some

substantial manner – and not merely affect the forum by activities conducted elsewhere –

before a continuous and systematic relationship sufficient to establish general personal

jurisdiction will exist. *See, e.g.*, *Helicopteros*, 466 U.S. at 411 (reversing finding of

general jurisdiction where defendant purchased substantially all equipment (helicopters)

from forum manufacturer for "substantial sums"; spent $50,000 per month in the forum;

sent personnel to forum for training; negotiated helicopter purchases and hired pilots; and

maintained bank account and employees in forum);[4] *Keeton*, 465 U.S. at 772, 779 (sales

---

[4]     Some of these facts are drawn from the lower court opinion, *Hall v. Helicopteros
Nacionales de Columbia, S.A.*, 638 S.W.2d 870, 871 (Tex. 1982).

of 15,000 magazines per month not substantial enough "to support jurisdiction over a cause of action unrelated to those activities") (dicta).

The Courts of Appeals likewise have refused to exercise general jurisdiction absent a showing of general presence in the forum state. *See, e.g.*, *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (Fifth Amendment permitted exercise of general jurisdiction because defendant "employs multiple distributors in Ohio and nets several millions of dollars per year from sales"); *Nichols v. G. D. Searle & Co.*, 991 F.2d 1195, 1198 (4th Cir. 1993) (\$ 9-13 million annual sales (2% of total sales) and 21 sales representatives in forum (13 of which were forum residents) insufficient); *Shute*, 897 F.2d at 381 (forum-directed advertising, commission payments, and up to 1.29% of total cruise business in forum insufficient), *rev'd on other grounds*, 499 U.S. 585 (1991); *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 214-15 (1st Cir. 1984) (eight sales representatives and product sales to distributors in forum insufficient); *see generally Hall*, 638 S.W.2d at 882 ("the defendant must establish some close substantial connection with the state approaching the relationship between the state and its own residents" to establish general jurisdiction) (Pope, J., dissenting); Mary Twitchell, *The Myth of General Jurisdiction*, 101 HARV. L. REV. 610, 634 (1988) (physical presence required); Lea Brilmayer, *A General Look at General Jurisdiction*, 66 TEX. L. REV. 723, 743-46 (1988) (activity toward the forum that originates outside the forum does not rise to the level of "continuous and systematic" forum affiliation). Drytec has no connection with the forum state, let alone continuous and systematic contacts or a general presence. As such, this Court may not assert general personal jurisdiction without violating the dictates of due process.

Drytec has no contacts with Delaware, and therefore certainly does not have contacts with Delaware that are "continuous and systematic." Like the defendants in *Helicopteros*, *Keeton*, *Gehling*, and *Shute*, Drytec does not maintain an office, place of business, factory, showroom, mailing address or telephone listing in the State of Delaware; Drytec has no officers, employees, agents or other representatives that have an office or workplace in the State of Delaware; Drytec is not authorized, registered or qualified to do business in the State of Delaware; and Drytec does not have an agent for service of process in the State of Delaware. Kennet Decl. ¶¶ 5-8, 11. These missing forum affiliations are the only affiliations the Supreme Court has ever found sufficient to support an assertion of general personal jurisdiction. Manufacture of goods in the forum state, not their subsequent sale in the forum state, is the "type of activity contemplated by the 'central to the conduct of the business' language" of the general jurisdiction analysis. *Orange Prods., Inc. v. Winters*, C.A. No. 94-CV-6004, 1998 WL 118461, at *4 (E.D. Pa. Mar. 21, 1995). Because Drytec does not have any manufacturing facilities or sales in Delaware, this again indicates that Drytec's relationship with Delaware is not of the continuous and systematic nature required by *Perkins* and its progeny. Therefore, general jurisdiction over Drytec does not exist.

### B.    This Court Cannot Constitutionally Assert Specific Jurisdiction over Drytec

For the Court to constitutionally assert specific jurisdiction over a defendant, there must be evidence that the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Deprenyl Animal Health*, 297 F.3d at 1350. Drytec has not directed any activities into the State of Delaware – purposefully or otherwise, let alone undertaken

conduct alleged in the complaint. Even if the Delaware long-arm statute could be

contorted into supporting specific jurisdiction over Drytec, the Due Process Clause does

not permit the Court to extend its power over Drytec in this case.

     **C.**     **This Court Cannot Exercise Its Authority over**
               **Drytec Without Offending the Traditional**
               **Notions of Fair Play and Substantial Justice**
               **Implicit in the Due Process Clause**

Drytec's Delaware contacts also fail to satisfy the requirement that "maintenance

of the suit . . . not offend 'traditional notions of fair play and substantial justice.'"

*Helicopteros Nacionales de Columbia*, 466 U.S. at 414 (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945)). In this regard, the 'fairness factors' used to

measure traditional notions of fair play and substantial justice counsel against the

exercise of jurisdiction over Drytec:

> "the burden on the defendant, the forum State's interest in
> adjudicating the dispute, the plaintiff's interest in obtaining
> convenient and effective relief, the interstate judicial
> system's interest in obtaining the most efficient resolution
> of controversies, and the shared interest of the several
> States in furthering fundamental substantive social
> policies,"

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (citation and internal

quotations omitted). For example, the burdens on Drytec of defending this action in

Delaware go beyond the monetary and temporal costs; defending this action in Delaware

will require Drytec, a foreign corporation based in Kent, England, to appear and defend

in a location where it does not have any operations or facilities. *Hanson v. Denckla*, 357

U.S. 235, 251 (1958) (measuring the burden of defending an action against the

defendant's contacts with the forum). Similarly, Delaware, as the forum state, does not

have a greater interest in adjudicating this dispute than does any other state. Therefore,

the implicit notions of fair play and substantial justice embodied in the Due Process

Clause do not permit Drytec to be summoned into this litigation.

## CONCLUSION

For the reasons set forth above, defendant Drytec Ltd. respectfully requests the

Court to dismiss it from this action for lack of personal jurisdiction.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Drytec Ltd.*

OF COUNSEL:
Brian P. Murphy
Oren D. Langer
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Dated: December 6, 2006

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on December 6, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Mary B. Graham, Esquire
> Julia Heaney, Esquire
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street
> Wilmington, DE  19801

I further certify that on December 6, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL AND FEDERAL EXPRESS**

> Douglas V. Rigler, Esquire
> Young & Thompson
> 745 South 23rd Street, Suite 200
> Arlington, VA  22202

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for SPI Pharma, Inc. and Drytec Ltd.*

# EXHIBIT A



Companies House
— for the record —

# Current Appointments Report for:
## DRYTEC LIMITED
### 01602355

## Created: 21/09/2006

# Company Register Information

| | | |
|---|---|---|
| Company Number: | 01602355 | Date of Incorporation:07/12/1981 |
| Company Name: | DRYTEC LIMITED | |
| Registered Office: | 46 MORLEY ROAD | |
| | TONBRIDGE | |
| | KENT | |
| | TN9 1RA | |
| Company Type: | Private Limited Company | |
| Country of Origin: | United Kingdom | |
| Status: | Active | |
| Nature Of Business (SIC(92)): | 2852 - General mechanical engineering | |
| Mortgage: Number of Charges: | 6 ( 1 outstanding / 0 part satisfied / 5 satisfied ) | |

## Previous Names

No previous name information has been recorded over the last 20 years.

## Key Filing Dates

| | |
|---|---|
| Accounting Reference Date: | 31/12 |
| Last Accounts Made Up To: | 31/12/2004 (FULL) |
| Next Accounts Due: | 31/10/2006 |
| Last Return Made Up To: | 18/04/2006 |
| Next Return Due: | 16/05/2007 |
| | |
| Last members list: | 18/04/2006 |
| Last Bulk Shareholders List: | Not available |

2

# Current Appointments

Number of current appointments: 4/Number of resigned appointments : 13

| | |
|---|---|
| SECRETARY: | O'BRIEN, PHILIP JOHN |
| Appointed: | 26/11/2004 |
| Nationality: | BRITISH |
| No. of Company appointments: | 3 |
| Address: | 34 FORGE CROFT |
| | EDENBRIDGE |
| | KENT |
| | TN8 5BW |

Date of Birth: 24/11/1957

| | |
|---|---|
| DIRECTOR: | JORGENSEN, ALLAN |
| Appointed: | 01/01/2006 |
| Nationality: | DANISH |
| No. of Company appointments: | 3 |
| Address: | BENTZONSVEJ 6 |
| | FREDERIKSBERG |
| | 2000 |
| | DENMARK |

Date of Birth: 13/01/1957

| | |
|---|---|
| DIRECTOR: | KENNET, PAUL CHARLES |
| Appointed: | 01/06/2001 |
| Nationality: | BRITISH |
| No. of Company appointments: | 8 |
| Address: | 6 STRACHEY CLOSE |
| | READING |
| | BERKSHIRE |
| | RG8 8EP |

Date of Birth: 03/10/1956

| | |
|---|---|
| DIRECTOR: | KJAER ODGAARD, METTE |
| Appointed: | 01/01/2006 |
| Nationality: | DANISH |
| No. of Company appointments: | 3 |
| Address: | LIVJAEGERGADE 12 |
| | COPENHAGEN O |
| | 2100 |
| | DENMARK |

Date of Birth: 16/05/1961

3

FOREIGN

| | | |
|---|---|---|
| SECRETARY: | KENNET, PAUL CHARLES | |
| Appointed: | 12/06/2002 | Date of Birth: 03/10/1956 |
| Resigned: | 03/12/2004 | |
| Nationality: | BRITISH | |
| No. of Company appointments: | 8 | |
| Address: | 6 STRACHEY CLOSE | |
| | READING | |
| | BERKSHIRE | |
| | RG8 8EP | |

| | | |
|---|---|---|
| SECRETARY: | POPE, JOHN MELVYN MR | |
| Appointed: | pre18/05/1991 | Date of Birth: 23/05/1940 |
| Resigned: | 03/05/2001 | |
| Nationality: | BRITISH | |
| No. of Company appointments: | 2 | |
| Address: | 122 HALE STREET | |
| | EAST PECKHAM | |
| | TONBRIDGE | |
| | KENT | |
| | TN12 5HN | |

| | | |
|---|---|---|
| SECRETARY: | REES, SPENCER GAVIN | |
| Appointed: | 03/05/2001 | |
| Resigned: | 11/06/2002 | |
| Nationality: | BRITISH | |
| No. of Company appointments: | 3 | |
| Address: | 19 PARKLANDS | |
| | BILLERICAY | |
| | ESSEX | |
| | CM11 1AS | |

| | | |
|---|---|---|
| DIRECTOR: | ANDERSEN, OLE EJNER VIGGO | |
| Appointed: | 27/04/2005 | Date of Birth: 21/03/1941 |
| Resigned: | 01/01/2006 | |
| Nationality: | DANISH | |
| No. of Company appointments: | 3 | |
| Address: | SOLLERODGARDSVEJ 11 | |
| | HOLTE | |

2840
DENMARK

---

| DIRECTOR: | DEDERT, THOMAS WILLIAM | |
|---|---|---|
| Appointed: | 03/05/2001 | Date of Birth: 17/12/1951 |
| Resigned: | 08/03/2004 | |
| Nationality: | AMERICAN | |
| No. of Company appointments: | 3 | |
| Address: | 1028 S BUTTERNUT CIRCLE | |
| | FRANKFORT | |
| | ILLINOIS 60423 | |
| | USA | |

---

| DIRECTOR: | DICKINSON, PETER WILFRID MR | |
|---|---|---|
| Appointed: | pre18/05/1991 | Date of Birth: 23/08/1951 |
| Resigned: | 31/03/2004 | |
| Nationality: | BRITISH | |
| No. of Company appointments: | 4 | |
| Address: | 17 ELY GARDENS | |
| | TONBRIDGE | |
| | KENT | |
| | TN10 4NZ | |

---

| DIRECTOR: | IVERSEN, KJELD LINDBERG | |
|---|---|---|
| Appointed: | 08/03/2004 | Date of Birth: 01/06/1952 |
| Resigned: | 01/01/2006 | |
| Nationality: | DANISH | |
| No. of Company appointments: | 3 | |
| Address: | 12 HUMLEVEJ | |
| | KISSKOV | |
| | 8270 | |
| | DENAMRK | |

---

| DIRECTOR: | JEPSON, PAUL CEDRIC | |
|---|---|---|
| Appointed: | 05/07/1993 | Date of Birth: 03/07/1954 |
| Resigned: | 11/01/1997 | |
| Nationality: | BRITISH | |
| No. of Company appointments: | 1 | |
| Address: | MARS HILL VILLA | |
| | BLACK HOUSE ROAD | |

COLGATE HORSHAM
WEST SUSSEX
RH13 6HS

| | | |
|---|---|---|
| DIRECTOR: | JESPERSEN, PER SKOVGAARD | |
| Appointed: | 08/03/2004 | Date of Birth: 06/08/1946 |
| Resigned: | 27/04/2005 | |
| Nationality: | DANISH | |
| No. of Company appointments: | 3 | |
| Address: | 185 GL STRANDVEJ | |
| | ESPERGAERDE | |
| | 3060 | |
| | DENMARK | |

| | | |
|---|---|---|
| DIRECTOR: | LANG, RICHARD WARWICK MR | |
| Appointed: | pre18/05/1991 | Date of Birth: 22/12/1929 |
| Resigned: | 01/01/1995 | |
| Nationality: | BRITISH | |
| No. of Company appointments: | 3 | |
| Address: | 95 HARVEST BANK ROAD | |
| | WEST WICKHAM | |
| | KENT | |
| | BR4 9DP | |

| | | |
|---|---|---|
| DIRECTOR: | POPE, JOHN MELVYN MR | |
| Appointed: | pre18/05/1991 | Date of Birth: 23/05/1940 |
| Resigned: | 31/03/2004 | |
| Nationality: | BRITISH | |
| No. of Company appointments: | 3 | |
| Address: | 9139 WRIGHT STREET | |
| | MERRILLVILLE | |
| | INDIANA 46410 | |
| | USA | |

| | | |
|---|---|---|
| DIRECTOR: | ZWITSERLOOT, WILHELMUS REINIER MARIA | |
| Appointed: | 03/05/2001 | Date of Birth: 29/08/1945 |
| Resigned: | 08/03/2004 | |
| Nationality: | DUTCH | |
| No. of Company appointments: | 3 | |

*Current Appointments*

| | |
|---|---|
| Address: | 11 GAGELVELD |
| | MILSBECH |
| | 6596CL |
| | NETHERLANDS |

---

| | | |
|---|---|---|
| DIRECTOR: | ZWITSERLOOT, WILHELMUS REINIER MARIA | |
| Appointed: | 27/04/2005 | Date of Birth: 29/08/1945 |
| Resigned: | 01/01/2006 | |
| Nationality: | DUTCH | |
| No. of Company appointments: | 3 | |
| Address: | GAGELVELD 11 | |
| | CC MILSBEEK | |
| | 6596 | |
| | HOLLAND | |

# Recent Filing History

Documents filed since 07/12/2004

| FILING DATE | FORM | DESCRIPTION |
|---|---|---|
| 26/05/2006 | 288a | DIRECTOR APPOINTED |
| 12/05/2006 | 288a | DIRECTOR APPOINTED |
| 12/05/2006 | 363s | RETURN MADE UP TO 18/04/06; FULL LIST OF MEMBERS |
| 13/02/2006 | 288b | DIRECTOR RESIGNED |
| 13/02/2006 | 288b | DIRECTOR RESIGNED |
| 13/02/2006 | 288b | DIRECTOR RESIGNED |
| 06/10/2005 | AA | FULL ACCOUNTS MADE UP TO 31/12/04 |
| 07/06/2005 | 288a | DIRECTOR APPOINTED |
| 07/06/2005 | 288a | DIRECTOR APPOINTED |
| 07/06/2005 | 288b | DIRECTOR RESIGNED |
| 17/05/2005 | 363s | RETURN MADE UP TO 18/04/05; FULL LIST OF MEMBERS;SECRETARY RESIGNED |
| 07/12/2004 | 288a | SECRETARY APPOINTED |

This Report excludes 88(2) Share Allotment documents

# EXHIBIT B

Delaware Secretary
of State Gateway

 LexisNexis™

**NOTE!** The cite list returned from your search is offered to you at NO CHARGE. All accesses to the actual document(s) from the cite list, however, will incur a search charge. Please complete any browsing and/or printing of the document while in the original access - re-access, even of the same document, will result in additional charges.

Source Info

## *Search Results*

### *Active Companies*

*This search has found no matching corporations.*

### *Inactive Companies*

| File Number | Name |
|---|---|
| 2404077 | DRY-TECH INCORPORATED |
| 3539238 | DRY TECK, INC |

### *Prior Names*

*This search has found no matching corporations.*

### *Name Reservations*

*This search has found no matching corporations.*

Go Back

About LexisNexis  |  Terms and Conditions   |  Change Password
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.
Delaware graphic courtesy of The General Libraries, The University of Texas at Austin.

*Corporate Charter Name Summary*     New Online Search | Report | Options | Add a Service/Continue

**Delaware* Corporate Name**

Click on a hyperlink for more detail
Found **2 records**.   Searched on **"DRYTEC"**.

| Corporate Name | City | State | Status | Charter ID | Name Type |
|---|---|---|---|---|---|
| DRY TECK, INC | | | INACTIVE | 3539238 | |
| DRY-TECH INCORPORATED | | | INACTIVE | 2404077 | |

Back

Back to Top

My CT | Online Courses | News & Resources | Seminars | Trade Shows & Conferences | Logout
For help, call Product Support at 1-800-435-0808 or email us as LIS_Support_Center@cch-lis.com
CTAdvantage.com™ is brought to you by CT Corporation © 2002, a company of CCH Group
Legal Disclaimer. Privacy Policy. Terms of Use

# EXHIBIT C

Westlaw

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C

Briefs and Other Related Documents
American Bio Medica Corp. v. Peninsula Drug
Analysis Co., Inc.D.Del.,1999.Only the Westlaw
citation is currently available.
United States District Court, D. Delaware.
AMERICAN BIO MEDICA CORPORATION,
Plaintiff,
v.
PENINSULA DRUG ANALYSIS CO., INC.;
James T. Ramsey; Phamatech, Inc .; Dipro
Diagnostic Products, Inc.; Dipro Diagnostic
Products of North America, Inc., Defendants.
**No. Civ.A. 99-218-SLR.**

Aug. 3, 1999.

Daniel F. Wolcott, Jr., Gregory A. Inskip, and
Joanne Ceballos, of Potter, Anderson & Corroon
LLP, Wilmington, Delaware, and Charles Michael
Tobin, of Hopkins & Sutter, Washington, D.C., for
plaintiff.
Matthew B. Lehr, and Maryellen Noreika, of
Morris, Nichols, Arsht & Tunnell, Wilmington,
Delaware, and Edward W. Moore, of Dallas, Texas,
for defendants Peninsula Drug Analysis Co., Inc.;
James T. Ramsey; DiPro Diagnostic Products, Inc.;
and DiPro Diagnostic Products of North America,
Inc., Doreen L. Costa, Neil P. Sirota, and Steven R.
Gustavson, of Baker & Botts, L.L.P., New York,
New York, of counsel.
Kevin W. Goldstein, of Ratner & Prestia,
Wilmington, Delaware, for defendant Phamatech,
Inc., Steele N. Gillaspey, of Gillaspey, Harms &
Associates, San Diego, California, of counsel.

MEMORANDUM OPINION
ROBINSON, J.

I. INTRODUCTION

*1 Pending before the court are motions to dismiss
or transfer venue filed by defendants Dipro

Diagnostic Products of North America, Inc. ("Dipro
"), Phamatech, Inc. ("Phamatech"), and Peninsula
Drug Analysis Co., Inc. and James T. Ramsey ("
Peninsula" and "Ramsey," respectively). (D.I. 17,
25 and 49) Plaintiff American Bio Medica
Corporation ("ABMC") opposes said motions.
ABMC owns the rights to U.S. Design Patent No.
D404812, which patent issued on January 26, 1999.
ABMC is a New York corporation engaged in the
manufacture, worldwide distribution and sale of the
Rapid Drug Screen, a product covered by the patent
at issue. According to ABMC, when the Rapid Drug
Screen was developed in 1995, it was the first
vertical, hands free test for the detection of the
presence of drug residue in urine. Until February
1999, ABMC purchased test strips from defendant
Phamatech for incorporation into the Rapid Drug
Screen. ABMC alleges that Phamatech initiated
production of its own vertical test kit (Quick
Screen) in 1998 or earlier, using proprietary
information it acquired by reason of its supply
relationship with ABMC.

Defendant Phamatech is a California corporation.
According to ABMC, Phamatech distributes Quick
Screen through the auspices of defendants Peninsula
and Ramsey, among others. Defendant Dipro is a
Delaware corporation that, according to ABMC,
acquires directly or indirectly from Phamatech an
accused product called Rapid Response and
distributes that product through Peninsula and
Ramsey, among others. Peninsula is a Virginia
corporation and Ramsey is the sole stockholder and
an employee of Peninsula.

Plaintiff ABMC initiated this lawsuit on April 7,
1999 against defendants for design patent
infringement, violation of the Lanham Act, and
other acts of unfair competition. A day later, on
April 8, 1999, Phamatech filed suit in the United
States District Court for the Southern District of
California seeking a declaratory judgment that
ABMC's design patent is invalid, and joining other
federal and state claims essentially mirroring the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 2

Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

claims and operative facts at issue. By decision issued June 21, 1999, Judge Keep of the Southern District of California found that the California court could exercise specific personal jurisdiction over ABMC; however, applying the "first-filed" rule, she stayed the California case pending disposition of the instant motions.

## II. FACTS

The facts are essentially undisputed. Prior to the filing of the complaint, none of the accused products had been sold to a Delaware resident. In the fall of 1998, defendant Peninsula did ship an order of ABMC's Rapid Drug Screen to a Delaware resident, Pace Electric of New Castle, Delaware. Sometime thereafter and prior to January 1999, Peninsula stopped handling ABMC's product. In January 1999, defendant Ramsey and a third party met with a representative of Pace to discuss a possible business relationship for the sale and distribution of the Phamatech/Dipro product, Rapid Response, in Delaware. These discussions took place in Hawaii and Maryland. Although there are averments of record indicating that some agreement was reached (D.I.32), it is the court's understanding that no actual sales or movement of defendants' products occurred in Delaware prior to the filing of the complaint.

**\*2** Prior to April 1999, Peninsula sent direct mail postcards to Delaware as part of a mass mailing to potential customers in more than 20 states.[FN1] Both Ramsey and Phamatech maintain national Internet websites that can be accessed from Delaware. It is the court's understanding that these websites include promotional material about the allegedly infringing products, including information on ordering and shipping; however, orders cannot be consummated directly through the websites.

> FN1. Approximately 60 out of a total of 6,000 postcards were directed to Delaware residents. No responses are recorded.

## III. DISCUSSION

### A. Personal Jurisdiction

ABMC, as plaintiff, bears the burden of establishing that this court may exercise personal jurisdiction over defendants. When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a *prima facie* case with the record viewed in the light most favorable to the plaintiff. *See Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1462 (D.Del.1991); *Computer People, Inc. v. Best Int'l Group, Inc.,* No. Civ. A. 16648, 1999 WL 288119, at *4 & n. 5 (Del. Ch. Apr 27, 1999). There is no question but that this court can exercise personal jurisdiction over defendant Dipro, a Delaware corporation. The focus of the following discussion, therefore, is whether the exercise of personal jurisdiction over the remaining defendants comports with the law of the Federal Circuit.[FN2]

> FN2. According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995).

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for "lack of jurisdiction over the person." According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). The principle pronounced above is traditionally described in this court as a two-step analysis. The court will determine, first, whether there is amenability to service and, second,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3

Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

whether the exercise of jurisdiction offends the defendants' rights to due process.

Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected " pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed "broadly ... to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). As noted by this court in *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998), "[t]he Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis." *Accord Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd.,* 611 A.2d 476, 480-81 (Del.1992); *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods. Inc.,* Civ. A. No. 12036, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991); *Ramada Inns v. Drinkhall,* No. Civ. A. 83C-AU-56, 1984 WL 247023, at *2 (Del.Super. May 17, 1984). Therefore, the court must determine that the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendants' constitutional rights to due process.[FN3]

> FN3. The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we ... defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386 (Fed.Cir.1998). Thus, in *Luker,* the Federal Circuit's analysis followed that of the Sixth Circuit's holding in *R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.,* 811 F.2d 967 (6th Cir.1987): " 'This Ohio [long-arm] statute has been construed to extend to the outer limits of due process, and thus an Ohio personal jurisdiction analysis becomes an

examination of constitutional limitations." ' *Luker,* 45 F.3d at 1544 (quoting *Dribeck,* 811 F.2d at 969). By contrast, as noted above, the Delaware state courts do not collapse the long-arm inquiry into the due process inquiry and neither shall this court.

**\*3** Delaware's long-arm statute provides:
(c) As to a cause of action brought by a person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or his personal representative, who in person or through an agent:
(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State....

Del.Code Ann. tit. 10, § 3104(c)(1)-(4).

As explained by the Delaware Supreme Court in *LaNuova,*
[t]he conduct embraced in subsections (1) and (2), the transaction of business or performance of work and contracting to supply services or things in the State, may supply the jurisdictional basis for suit only with respect to claims which have a nexus to the designated conduct. Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction.

Similarly, where the claim is one for tortious injury under subsection (c)(3).
a single "act or omission" in the State in which the injury was caused will suffice. Such a claim may also be viewed as transactional.

*LaNuova,* 513 A.2d at 768. Therefore, in order to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

establish transactional or specific jurisdiction, plaintiff must demonstrate not only that an act or acts occurred in Delaware but also that its causes of action arise from those act or acts. According to relevant caselaw, plaintiff also must demonstrate that the act or acts occurring in Delaware actually constitute "transacting business" in Delaware, i.e., that defendants "purposefully avail[ed themselves] of the privileges and benefits of Delaware law." *Computer People, Inc.*, 1999 WL 288119, at *8; *see also Thorn EMI N. Am. v. Micron Tech., Inc.*, 821 F.Supp. 272, 274 (D.Del.1993) (stating that the designated conduct "must be directed at residents of the State of Delaware and the protection of its laws" ). With this requirement in mind, courts have concluded that "[m]ere solicitation does not arise to transacting business, nor does the isolated shipment of goods into Delaware." *Id.* (citing *Moore v. Little Giant Indus., Inc.*, 513 F.Supp. 1043, 1047 (D.Del.1981); *Waters v. Deutz Corp.*, 460 A.2d 1332, 1335 (Del.Super.1983). The distinction between isolated business activities and those giving rise to personal jurisdiction has been explained on the basis of whether the conduct is " part of a general business plan ... to solicit business in Delaware and deliver products to customers in Delaware." *Thorn EMI*, 821 F.Supp. at 274.

**\*4** Plaintiff alleges in its complaint seven causes of action, including unlawful use of the trademarks and service marks of the Rapid Drug Screen in violation of the Lanham Act and common and state law trademark rights; violation of the design patent " by making, using and/or selling the ABMC design ... "; and engaging in unfair competition and deceptive trade practices. (D.I.1) Although the products at issue have not been made, used, or sold in Delaware, plaintiff asserts that, "[t]hrough offers and extensive planning to sell the infringing product in Delaware, defendants have engaged in a course of conduct that readily meets the nexus requirements of sections 3104(c)(1), (2), and (3)." (D.I. 57 at 7-8)

The record demonstrates that defendants Peninsula and Ramsey have offered to sell [FN4] allegedly infringing products to Delaware residents through what appears to be a concerted marketing effort. The marketing effort includes national

advertisements accessible to Delaware residents (the internet website), out-of-state sales negotiations with a Delaware resident,[FN5] and the mailing of promotional materials to Delaware residents. Given the history of these defendants' relationship with plaintiff, the record adequately demonstrates that these activities are directed at Delaware residents, constitute "transacting business," and are sufficiently related to plaintiff's causes of action to satisfy the requirements of 10 Del. C. § 3104(c)(1). [FN6] *Cf. Computer People, Inc.*, 1999 WL 288119, at *8.[FN7]

> FN4. Plaintiff did not specifically allege such in its complaint; however, 35 U.S.C. § 271(a) reads "whoever without authority makes, uses, offers to sell, or sells any patented invention ... infringes the patent." (Emphasis added)

> FN5. The out-of-state sales negotiations with Pace Electric are viewed in tandem with defendants' other conduct as evidence of a general business plan directed at Delaware residents and the protection of its laws.

> FN6. As noted, the court is satisfied that the activities described above are "part of a general business plan" and not isolated, unrelated events. In the past, this court has demanded as well proof that the activities have had a "tangible effect" in Delaware. *See, e.g., Intel Corp.*, 20 F.Supp. at 696 ( "... SST's solicitations in Delaware [have not] been shown to have had any tangible effect on Intel's sales here."). Sales are lost generally because of the sale of competing products. Given the fact that liability under 35 U.S.C. § 271(a) can now rest on mere " offers to sell," the court is reluctant to require proof of actual sales and is not sure what other "tangible effect" is contemplated. Therefore, the court will not require evidence of "tangible effects" in this case.

> FN7. Although the court noted that, "as a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

general matter telephone calls and an e-mail [to a Delaware resident] do not, in and of themselves, automatically constitute 'transacting business' within Delaware sufficient to invoke jurisdiction under § 3104(c)(1)," the court looked at the specific factual context and held that these contacts were insufficient because they could not be a basis for the plaintiff's causes of action.

The court further finds that the exercise of personal jurisdiction over these defendants comports with federal due process considerations. The Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), held that

due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintainance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316 (citation omitted). The Court in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), added the further requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." *Id.* at 475 n. 18. Therefore, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477. In *Luker,* the Federal Circuit suggested a three-prong jurisdictional analysis: 1) has the defendant purposefully directed its activities at residents of the forum?; 2) do the claims arise out of or relate to those activities?; 3) is the assertion of personal jurisdiction reasonable and fair? *See Luker,* 45 F.3d at 1545-46. The court has already answered the first two inquiries in the affirmative and has not discovered in the record any compelling evidence which suggests that the exercise of personal jurisdiction over these defendants would be unreasonable.

**\*5** The court concludes otherwise with respect to

defendant Phamatech. The conduct attributed to Phamatech includes the following: 1) Phamatech manufactures allegedly infringing products; 2) Phamatech arranges for the distribution of its product through defendants Peninsula and Ramsey; and 3) Phamatech advertises its product through an Internet website accessible to Delaware residents. As noted previously, however, there had been no actual sales of infringing product in Delaware prior to the filing of the complaint. Neither is there evidence relating Phamatech to Peninsula and Ramsey's marketing efforts directed at Delaware residents. Although plaintiff asserts that " Phamatech intentionally established a chain of distribution that it knew, or reasonably could have foreseen, had a termination point in Delaware" (D.I. 62 at 11), the record does not demonstrate the existence of ongoing commercial relationships with retailers and customers in Delaware.

The facts of record are distinguishable, therefore, from the facts in *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.1994) , cited by plaintiff. In that case, the court concluded that the alleged infringers were placing accused products into the chain of commerce, which included shipping products into the forum for sale to customers through an intermediary. Because the commercial relationship with the intermediary was ongoing and the accused products in fact had been shipped into the forum, the court found the defendant amenable to the exercise of personal jurisdiction: "From these ongoing relationships, it can be presumed that the distribution channel formed by defendants and [the intermediary] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was [the forum]." *Royal Sovereign,* 21 F.3d at 1564. Instantly, there is no evidence demonstrating that Phamatech directed Peninsula and Ramsey's sales efforts at Delaware residents; there certainly is no evidence of any ongoing commercial relationships between Phamatech, Peninsula/Ramsey, and Delaware residents. The final conduct designated is Phamatech's Internet website. Assuming for purposes of this motion that a website with product information constitutes an "offer to sell," in the absence of evidence that Delaware residents

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

actually accessed this website, the court declines to find that Phamatech transacted business in Delaware, consistent with 10 Del. C. § 3104(c)(1) and (3).[FN8]

> FN8. Plaintiff does not assert general jurisdiction under § 3104(c) (4).

### B. Venue

Generally, in reviewing a motion for transfer of venue, this court gives great deference to a plaintiff's choice of forum and only transfers venue if the defendants truly are regional (as opposed to national) in character. Motions to transfer venue are granted as well if there is a related case which has been filed first or otherwise is the more appropriate vehicle to litigate the issues between the parties. Given the court's conclusion that it cannot exercise personal jurisdiction over defendant Phamatech, the manufacturer of the accused products, transfer of this case to the Southern District of California is warranted.

### IV. CONCLUSION

**\*6** For the reasons stated, defendants' motions to dismiss are granted in part and denied in part. Defendants' motions to transfer venue are granted.

An appropriate order shall issue.

D.Del.,1999.
American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.
Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:99CV00218 (Docket) (Apr. 07, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 118461 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Briefs and Other Related Documents
Orange Products, Inc. v. WintersE.D.Pa. 1995Only
the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
ORANGE PRODUCTS, INC., Plaintiff,
v.
Howard WINTERS and Engineering Labs, Inc.,
Defendants.
No. CIV. A. 94-CV-6004.

March 21, 1995.

MEMORANDUM
BUCKWALTER.
*1 Before the court is defendants' Joint Motion to
Dismiss for Lack of Jurisdiction and for Improper
Venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3),
respectively, and, alternatively to Transfer Venue to
the District of New Jersey. For the reasons outlined
below, defendants' Motions are granted in part and
denied in part.

I. BACKGROUND

In October of 1994, plaintiff filed a complaint
against defendants alleging that defendant Howard
Winters ("defendant Winters"), and by extension
defendant Engineering Labs, Inc. ("defendant
Engineering"), breached an employment agreement
which plaintiff maintains contained a covenant not
to compete. Plaintiff is a company in the business of
manufacturing plastic balls for use in roll-on
deodorants and other products. Defendant Winters
began his employment with NASCO International,
Inc. ("Nasco"), plaintiff's parent company, in 1979.
On or about June 21, 1984 defendant Winters
entered into an employment agreement with Nasco.
The agreement was signed and entered in Chatham,
New Jersey and its terms stipulated that defendant
Winters was to refrain from the use of any "trade
secrets and/or proprietary rights in any manner

contrary to the interests of NASCO" for a period of
five years after termination of his employment. In
1986, Nasco sold Orange Products, Inc. to its
present owners Mr. Sachdev and Mr. Verdi who
continued to operate the business at the Chatham
location until 1991 when it was moved to its current
address in Allentown, Pennsylvania. Defendant
Winters assisted in the relocation and setup at the
new location but resigned from Orange Products in
February, 1993. In June of 1994, after a brief period
of employment with another company, defendant
Winters began his employment with Engineering
Labs which is located in New Jersey.

Plaintiff filed the instant action alleging that "there
is likely to be evidentiary support" to prove that
defendant Winters "has disclosed or used the
confidential information" acquired during his
employment with plaintiff company, "for the
purpose of furthering [Engineering Labs, Inc.'s]
business as a competitor of plaintiff." Plaintiff
contends that such disclosures will cause irreparable
harm to its business and seeks to enjoin any further
disclosures.

II. LEGAL STANDARD

Federal Rule of Civil Procedure 4(e) establishes
that a federal court may exercise personal
jurisdiction over a nonresident defendant to the
extent permitted by the state in which it sits.
Pennsylvania's long-arm statute provides that
jurisdiction may be exercised "to the fullest extent
allowed under the Constitution of the United States
and may be based on the most minimum contact
with the Commonwealth allowed under the
Constitution of the United States." 42 Pa.
Cons.Stat.Ann. § 5322(b) (Purdon 1981). When a
personal jurisdiction defense is raised, the plaintiff
must establish either that the cause of action arose
from the forum-related activities of the defendant
(specific jurisdiction) or that the defendant has "
continuous and systematic" contacts with the forum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2

Not Reported in F.Supp., 1995 WL 118461 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

state (general jurisdiction). *Mellon Bank (East) v. Diveronica Bros.,* 983 F.2d 551, 554 (3d Cir.1993). It is therefore not the defendant, but the plaintiff who is required to sustain its burden of proving, through affidavits or other competent evidence, that the court has *in personam* jurisdiction. *Time Share,* 753 F.2d at 67 n. 9; *Jaffe v. Julien,* 754 F.Supp. 49, 51 (E.D.Pa.1991). It is not enough for the plaintiff to rely on the pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion; instead, the plaintiff must respond to the defendant's motion with affidavits, *Patterson by Patterson v. F.B.I.,* 893 F.2d 595, 603-4 (3d Cir.1990), and "actual proofs, not mere allegations." *Time Share,* 753 F.2d at 67 n. 9.

### III. DISCUSSION

**\*2** In support of its argument that this court can exercise jurisdiction over defendants, plaintiff has proffered the affidavit of Paul Sachdev, President, Chief Executive and Treasurer of Orange Products, Inc. As to defendant Winters, Mr. Sachdev's affidavit states the following: 1) beginning in July 1991 and continuing through the following six to eight months, defendant Winters lived in Allentown, Pennsylvania while working at plaintiff company; 2) at the end of this time period, defendant Winters commuted from New Jersey to Allentown; 3) defendant Winters obtained trade secrets concerning the manufacture of hollow plastic balls while in the employ of plaintiff; 4) defendant Winters entered into an employment agreement with plaintiff which contained a covenant not to compete; and, 5) following termination of his employment with plaintiff, defendant Winters began employment with defendant Engineering. Defendant Winters submitted two affidavits to the court which offer amplification of several of the statements made in the Sachdev affidavit. In particular, defendant Winters states: 1) he stayed in the Allentown apartment, which was rented and maintained by plaintiff, only two to three nights per week to lessen the commute to and from his home in New Jersey and never intended to relocate to Pennsylvania; 2) he never provided any of plaintiff's manufacturing or development processes to Engineering Labs or any other entity; and, 3)

following termination of his employment with plaintiff, he was employed by AMS America Corp. for sixteen months.

In determining whether exercise of specific jurisdiction is fair, the court in *Strick Corp. v. A. J. F. Warehouse Distrib., Inc.,* 532 F.Supp. 951, 957 (E.D.Pa.1982), articulated several factors which the United States Supreme Court has made clear require evaluation: 1) has the defendant purposefully availed itself of the privilege of conducting activities within the forum? *See Hanson v. Denkla,* 357 U.S. 235, 251 (1958); 2) did the cause of action arise from defendant's activities within the forum? *See McGee v. International Life Insur. Co.,* 355 U.S. 220, 223 (1957); and, 3) were defendant's actions in the forum state substantial enough to make the exercise of jurisdiction over it reasonable? *See International Shoe Co. v. Washington,* 326 U.S. 310, 326 (1945). In sum, defendant's contacts with the forum must rise to a level such that the defendant would be able to reasonably anticipate being haled into court in the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Applying these principles to the question of specific jurisdiction as to defendant Winters, this court finds that it can assert *in personam* jurisdiction over defendant Winters.

Defendant Winters purposefully availed himself of the privileges of conducting activities in Pennsylvania by continuing his employment with plaintiff Orange Products, Inc. after Orange Products relocated to Pennsylvania. Defendant Winters made the decision to actively pursue his employment with plaintiff company; accordingly, defendant Winters cannot be described as a " passive defendant" who is being forced to appear in an inconvenient forum on the basis of contacts which he did not initiate. *See Stick,* 532 F.Supp., at 958.

**\*3** Further, this court finds that the cause of action at issue can be said to have arisen from defendant Winter's activities within Pennsylvania. While the employment agreement involved in this dispute presumably was signed in New Jersey to safeguard information that was then being shared, its protective nature was transferred to Pennsylvania

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3

Not Reported in F.Supp., 1995 WL 118461 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

when plaintiff company relocated. *See Horne v. Adolph Coors Co.,* 684 F.2d 255 (1982) (fictional situs of state trade secret and patent at the residence of the owner). Contrary to defendants' assertions, it is of no import that plaintiff has not proffered any evidence to demonstrate that defendant Winters learned new or additional manufacturing information or trade secrets while in Pennsylvania to support its claim that "all unlawful activities complained of have taken place, in whole or in part, " within Pennsylvania. The company's change of situs does not diminish the ability of plaintiff to invoke the employment agreement to safeguard the information it was designed to protect. While it is true, as defendants assert, that to the extent defendants are breaching the agreement they are doing so in New Jersey, any harm to be suffered by plaintiffs will be felt in Pennsylvania. Therefore, jurisdiction over defendant Winters in New Jersey is proper based on the "effects" of his New Jersey conduct in Pennsylvania. *Calder v. Jones,* 465 U.S. 787, 789-790 (1984).

Finally, this court finds defendant Winters's acts in Pennsylvania were substantial enough to make this court's exercise of jurisdiction over him reasonable. The record reveals that he worked at the Allentown location for over one year. Accordingly, this court concludes that it can exercise *in personam* jurisdiction over defendant Winters.

While the court can exercise jurisdiction over defendant Winters, the record does not support the conclusion that we can exercise jurisdiction over defendant Engineering. To support its argument that this court can exercise jurisdiction over defendant Engineering, plaintiff offers the Sachev affidavit which states as follows: 1) defendant Engineering advertises in the Thomas Register, a national trade publication; 2) defendant Engineering has sold and continues to sell its product to purchasers in Pennsylvania; and, 3) over the past fifteen years, defendant Engineering has purchased seven to eight pieces of heavy equipment used in the manufacture of plastic balls from a Philadelphia company at a cost of approximately $30,000 each. Daniel Mason, president and chief executive officer of Engineering Labs, Inc. has submitted two affidavits which offer amplification of several of the statements made in

the Sachdev affidavit. In particular, defendant Engineering states the following: 1) all of the plastic balls manufactured at defendant company are solid; the company is not now nor has it ever been engaged in the manufacture of plastic hollow balls; 2) defendant Winters has not shared any trade secrets and his work with defendant Engineering is wholly unrelated to the developments he was involved with at plaintiff company; 3) defendant Engineering has only purchased five Lapping machines from a Philadelphia company over the past fifteen to twenty years; 4) defendant Engineering has never directly or indirectly solicited business in Pennsylvania or elsewhere; 5) the six small accounts defendant Engineering has in Pennsylvania were all acquired prior to the employment of defendant Winters and defendant Engineering sells to them occasionally at their request; and, 6) total sales to these Pennsylvania accounts during defendant Winters's tenure at defendant company (six months at the time the affidavit was executed) equal $51,000 or 2.7% of defendant Engineering's total $1.9 million sales volume. Applying the aforementioned principles to the question of specific jurisdiction as to defendant, this court finds that we cannot assert specific jurisdiction.

**\*4** While it is undisputed that defendant Engineering maintains six accounts with Pennsylvania interests. it cannot be found that defendant Engineering "purposefully availed" itself of the privileges of conducting business in Pennsylvania as defendant Engineering's affidavits establish it did not actively solicit that business.

The touchstone of specific jurisdiction is that its exercise must be confined to causes of actions which arise from the non-resident corporate defendant's contacts with the forum state. That condition is not satisfied by the facts of this case. Because the existence of the six accounts *predated* defendant Winters's arrival at Engineering Labs, Inc., the present cause of action cannot arise from these contacts as neither plaintiff nor defendant Winters were parties to their creation. Plaintiff argues that the "effects" theory bolsters a finding of specific jurisdiction as the harm felt by the breach would be felt in Pennsylvania, possibly becoming

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                      Page 4

Not Reported in F.Supp., 1995 WL 118461 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

manifest through the aforementioned six accounts. While plaintiff's argument has merit, it is not sufficient to support a finding of specific jurisdiction.

Failing to establish the ability of this court to assert specific jurisdiction over defendant Engineering, we must now determine if we can assert general jurisdiction. As previously stated, general jurisdiction focuses on whether the non-resident defendant has "continuous and systematic" contacts with the forum state. This type of jurisdictional basis generally is found where the defendant " makes a substantial number of direct sales in the forum, solicits business regularly and advertises in a way specifically targeted at the forum market." *Strick,* 532 F.Supp., at 956. An additional consideration is whether defendant's contacts with the forum state were "central to the conduct of its business." *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 438 (3d Cir.).

Plaintiff has failed to show defendant Engineering specifically targeted the Pennsylvania market as the mere fact that it advertises in a national trade journal which circulates in Pennsylvania is not enough. *Id.,* at 957. Likewise, plaintiff has failed to establish that defendant Engineering regularly solicits business in Pennsylvania. While the record reveals defendant Engineering does business in Pennsylvania, defendant Engineering has proffered affidavits which establish that it did not solicit or otherwise act to attract that business. In addition, the purchase of five machines from a Pennsylvania business spread out over a fifteen to twenty year period does not demonstrate "continuous and systematic" contacts with Pennsylvania. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.W. 408, 418 (1984). Moreover, defendant Engineering did not make a substantial number of direct sales to Pennsylvania as only $51,000 of defendant's $1.9 million total sales were generated from Pennsylvania contacts. Finally, defendant's sales to Pennsylvania are not central to its business of producing precision plastic balls. While it cannot be denied that the desired end result of production is to sell the product, the type of activity contemplated by the "central to the conduct of its business" language is the day to day operation of

defendant's business, not the resultant sales. *See Provident Nat. Bank,* 819 F.2d at 438. Therefore, based on the foregoing, this court concludes that it cannot exercise general jurisdiction over defendant Engineering.

**\*5** In opposition to this court's finding that jurisdiction cannot be asserted against defendant Engineering, plaintiff urges the court to dismiss the Motion to Dismiss as the "record is incomplete." Plaintiff relies on the Third Circuit Court of Appeals decision in *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283 (3d Cir.1994) to support its position. The *Renner* court, in reliance on several cases in which the right of plaintiffs to conduct discovery before dismissal for lack of personal jurisdiction was recognized, held that "under the circumstances" of that case the district court should have permitted discovery before ruling on the motion to dismiss. The *Renner* case involved a Hong Kong based corporate defendant about whom plaintiffs lacked crucial information needed to withstand a motion to dismiss. This court finds that the circumstances present in *Renner* are not present in the instant case. Accordingly, the motion will not be dismissed as premature to permit discovery.

Turning now to defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404[FN1], this court finds that venue properly has been laid in this district and that defendants have not sufficiently demonstrated cause to transfer the case and override plaintiff's choice of forum. *Cain v. DeDonatis,* 683 F.Supp. 510, 512 (E.D.Pa.1988)(outlining factors to be considered in motion to transfer). Accordingly, defendants' Motion to Transfer is denied. However, because this court lacks personal jurisdiction over defendant Engineering, defendant Engineering is dismissed as a party to the present action.

An order follows.

ORDER

AND NOW, this 21st day of March, 1995, upon consideration of defendants' Motion to Dismiss for Lack of Jurisdiction and for Improper Venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3),

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 118461 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

respectively, and, alternatively to Transfer Venue to the District of New Jersey and plaintiff's response thereto, it is hereby ORDERED that:

1) defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to defendant Engineering Labs, Inc. is GRANTED and defendant is dismissed as a party to this suit;

2) defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to defendant Howard Winters is DENIED;

3) defendants' Motion to Dismiss for Improper Venue is DENIED;

4) defendants' Motion to Transfer Venue is DENIED.

> FN1. 28 U.S.C. § 1404(a) provides that " [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

E.D.Pa. 1995
Orange Products, Inc. v. Winters
Not Reported in F.Supp., 1995 WL 118461 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:94cv06004 (Docket) (Oct. 03, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 1984 WL 247023 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

▷
Ramada       Inns,       Inc.       v.
DrinkhallDel.Super.,1984.Only       the       Westlaw
citation is currently available.
UNPUBLISHED  OPINION.  CHECK  COURT
RULES BEFORE CITING.
Superior Court of Delaware, New Castle County.
RAMADA INNS, INC., Hotel Ramada of Nevada,
Adamar of New Jersey, Inc., and Ramada Hotel
Operating Company, Plaintiffs,
v.
James A. DRINKHALL, John Andrew and Dow
Jones & Company, Defendants.
**Civ. A. No. 83C-AU-56.**

Submitted: March 5, 1984.
Decided: May 17, 1984.

On Motion Of Defendants James A. Drinkhall And
John Andrew To Dismiss For Lack Of Personal
Jurisdiction.

Thomas C. Green (argued) of Sharp, Green &
Lankford, Washington, DC, of Counsel; F. Alton
Tybout of Tybout, Redfearn, Casarino & Pell,
Wilmington, for plaintiffs.
Susan E. Weiner (argued) and Gregory L. Diskant
of Patterson, Belknap, Webb & Tyler, New York
City, of Counsel; Edmund N. Carpenter, II and
James T. McKinstry of Richards, Layton & Finger,
Wilmington, for defendants.
TAYLOR, Judge.
**\*1** This is a libel suit against Dow Jones &
Company [corporate defendant], publisher of the
Wall Street Journal [Journal], and individual
defendants James A. Drinkhall [Drinkhall] and John
Andrew [Andrew]. The alleged libel occurred in
two articles which appeared in the Journal relating
to the conduct of plaintiffs' business activities. One
article was written by Drinkhall and the other
written   by   Andrew.   Plaintiffs   are   four
corporations, the two corporations whose names
commence   with   the   name   "Ramada"   are

incorporated in Delaware, one of the others is
incorporated in New Jersey and the other in
Nevada. The corporate defendant is incorporated
in Delaware. Neither individual defendant is a
Delaware resident. Defendant Drinkhall was and is
a citizen of California. Defendant Andrew was a
citizen of California until January, 1984.

Service   was   undertaken   upon   the   individual
defendants in accordance with 10 *Del.C.* § 3104.
Service was made upon the corporate defendant by
serving its registered agent in Delaware. The
individual defendants have moved to dismiss for
lack of jurisdiction over the person.

I

10 *Del.C.* § 3104 in its present form was enacted by
61 *Del.Laws* Ch. 471 which became effective July
11, 1978. The alleged libelous publications
occurred August 17, 1981 and August 20, 1981, and
this suit was filed August 16, 1983. Therefore, the
current § 3104 determines the circumstances under
which personal jurisdiction can be exercised in this
State over the individual defendants in this suit.

Plaintiffs assert that jurisdiction exists over the
individual defendants by virtue of 10 *Del.C.* §
3104(c)(3) and § 3104(c)(4), which apply to a
non-resident who:
(3) Causes tortious injury in the State by an act or
omission in this State; [or]
(4) Causes tortious injury in the State or outside of
the State by an act or omission outside the State if
he regularly does or solicits business, engages in
any other persistent course of conduct in the State
or derives substantial revenue from services, or
things used or consumed in the State.

Plaintiffs have cited *Waters v. Deutz Corp.*,
Del.Super., 460 A.2d 1332 (1983) in support of the
proposition that an expansive approach should be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1984 WL 247023 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

taken interpreting long arm statutes as coextensive with constitutional limitations. *Waters,* after noting that the Supreme Court had declared in *Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175 (1980), that the language of 10 *Del.C.* § 3104 had its inception in § 1.03. of the *Uniform Interstate and International Procedure Act,* 13 *ULA,* p. 466 stated:
Derived from the Illinois Long Arm Statute the Delaware statute may be similarly construed by recourse to the legislative and decisional law of Illinois.

That statement in *Waters* was made focusing on § 3104(c)(1) which gives long arm personal jurisdiction over a non-resident who:Transacts any business or performs any character of work or service in the State.

**\*2** Since that paragraph parallels the Illinois statute (except for the inclusion of the words "or performs any character of work or service"), the quotation from *Waters* was correct in the context of that case. However, *Waters* did not address the paragraphs which plaintiffs rely on here. Therefore, *Waters'* reliance on Illinois decisions does not make Illinois decisions controlling here. It appears from a search of its legislative history that the present Delaware long arm statute was drawn in substantial part from the Maryland long arm statute. Cf. *Annotated Code of Maryland* (1974), Courts and Judicial Proceedings, § 6-103 et seq. In turn, the Maryland long arm statute is reputed to have been "patterned after" the *Uniform Interstate Procedure Act.* Cf. 24 *A.L.R.3d* 532, 623. § 3104(c) tracks with some variation subsection (a) of the *Uniform Act.* Ibid p. 554.

The Illinois statute, *Ill.Stat.Ann.* c. 110, § 17(1), which plaintiffs refer to as the progenitor of 10 *Del.C.* § 3104, contains a paragraph which provides that a person who commits "a tortious act within this State," submits to jurisdiction in the State. Cf. *Gray v. American Radiator & Standard Sanitary Corp.,* Ill.Supr., 176 N.E.2d 761 (1961). That paragraph of the Illinois statute does not appear in § 3104. Conversely, paragraphs (3) and (4) of § 3104 do not appear in the Illinois statute. Therefore, the Delaware statute and the Illinois statute differ materially in their treatment of the subject under

consideration here.

It appears that of the various long arm statutes greater coverage is accorded to statutes which refer to tortious acts, tortious conduct or tortious injury with minimum qualifying language. Cf. 24 *A.L.R.3d* 532, 567-9.

Where qualifying language is used, the Court should not ignore that language out of a desire to afford maximum jurisdictional coverage.

II

Plaintiffs argue that 10 *Del.C.* § 3104(c)(3) only requires injury within Delaware in order to acquire long arm jurisdiction. The cases which plaintiffs cite in support of that proposition generally involve statutes which are patterned after the Illinois statute. These refer either to tortious act or tortious injury, but do not separately mention both injury and act as qualifying elements. Plaintiffs' argument rests on the proposition that all that is required under paragraph (3) is a "tortious act within the state"-as is the Illinois requirement. This argument overlooks the Delaware language, "tortious injury in the State by an act or omission within this State". Literally, Delaware law requires both a tortious act within the State and an act or omission within the State. The dual reference to "within the State" indicates that the draftsman intended that there be two separate events, each within the State. This is inconsistent with the rationale of the "tortious act" states which apply the reasoning that a tort which produces injury within the state is in itself an act within the state.

**\*3** The Supreme Court in *Eudaily v. Harmon,* supra, noted that 10 *Del.C.* § 3104 had its inception in § 1.03. of the *Uniform Interstate and International Procedure Act.* § 3104(c)(3) follows, with only slight modification, § 1.03.(1)(3). The Commissioners' Comment which follows § 1.03. of the *Uniform Act,*[FN1] 13 *ULA* 466, states (at page 468):
Section 1.03(1)(3) may have a narrower range of application than statutes which base jurisdiction upon the "commission of a tortious act" within the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1984 WL 247023 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

state (see, e.g., Ill.Stat.Ann. c. 110, § 17(1)(b); Mc.Rev.Stat.Ann. c. 112, § 21(I)(B); N.Y.C.P.L.R. § 302(a)(2) (effective Sept. 1, 1963); N.C.Gen.Stat. §§ 55-145(4), or upon the commission of a tort "in whole or in part" in the state. See, e.g., Minn.Stat.Ann. § 303.13(3); Vt.Stat.Ann. tit. 12, § 855. Some of these statutes have been interpreted to cover acts or omissions outside the state.

This Comment makes it clear that where more specific language than that of the Illinois statute was used it was intended to be applied literally and not to be given the broad brush scope given the Illinois type statute. In the light of this background cases which have applied statutes patterned after the Illinois statute such as the following cases are not of assistance in interpreting paragraph (3): Cf. *Thiry v. Atlantic Monthly Company,* Wash.Supr., 445 P.2d 1012 (1968); *Rebozo v. Washington Post Company,* 5 Cir., 515 F.2d 1288 (1975); *Ammon v. Kaplow,* D.Kans., 468 FS 1304 (1979); *Buckley v. New York Post Corp.,* 2 Cir., 373 F.2d 175 (1967); *Manqual v. General Battery Corp.,* 1 Cir., 710 F.2d 15 (1983); *Novel v. Garrison,* N.D.Ill., 294 F.Supp. 825 (1969); *Process Church of the Final Judgment v. Sanders,* N.D.Ill., 338 F.Supp. 1396 (1972). Similarly, cases involving statutes which extend jurisdiction to cover "torts, in whole or in part, in the state involving residents of the state" are distinguishable. *Edwards v. Associated Press,* 5 Cir., 512 F.2d 258 (1975); *McBride v. Owens,* S.D.Tex., 454 FS 731 (1978); *Brown v. Flowers Ind., Inc.,* 5 Cir., 688 F.2d 328 (1982).

Turning to cases which have discussed language similar to that in § 3104(c)(3), the scope of that portion of the Maryland long arm statute when applied to a suit for libel was considered in *Zinz v. Evans and Mitchell Industries,* Md.Spec.App., 324 A.2d 140 (1974). The Court stated:
The appellant relies primarily on subsection (a)(3). That subsection consists of two distinct elements. There must be 1) "a tortious injury in this State" which is caused by 2) "an act or omission in this State." The appellees concede that the "tortious injury," if any, took place in Maryland. They strenuously assert, however, that the "act or omission" causing the tortious injury did not occur in Maryland. The causal act is separated from the

resulting injury. Both elements must be present before personal jurisdiction will be inferred. We find persuasive the case of Margoles v. Johns, 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973). In that case, an allegedly defamatory phone call was placed from Wisconsin to Washington, D.C. The injury occurred in Washington. The Court of Appeals said, at 1217-1218:
*4 The "act," of course, is the act of the alleged tortfeasor-here that act, uttering defamatory statements, occurred in Wisconsin. Nothing can change that fact. The additional facts that other third party acts were necessary to consummate the tort, or that the injury itself took place within the District, cannot under our reading of the Uniform Act grant jurisdiction that is otherwise lacking.
Unless we wish to delve into a magical mystery tour of "projecting presences," we must find that no jurisdiction can be afforded by virtue of section (a)(3).
The District of Columbia's "Long Arm" Statute was "purposely" similar to Maryland's and the law there announced was "completely in accord with the currently prevailing case law in Maryland." 483 F.2d at 1220.

*Zinz* was followed in *Craig v. General Finance Corp. of Illinois,* D.Md., 504 F.Supp. 1033 (1980). *St. Clair v. Richter,* W.D.Va., 250 F.Supp., 148 (1966), applying the Virginia statute which contained provisions similar to § 3104(c)(3) & (4), reached the same result as *Zinz.*

On the other hand, some statutes containing language similar to paragraphs (3) and (4) have given that language an expanded meaning. *Murphy v. Erwin-Wasey, Inc.,* 1 Cir., 460 F.2d 661 (1972) held that under the Massachusetts statute sending a false statement into Massachusetts with the intent that it should be relied upon to the injury of a resident of the state was a qualifying act, with a footnote observation that the Court was not persuaded that the word "act" is strictly limited to physical acts. See also, *Escude Cruz v. Ortho Pharmaceutical Corp.,* 1 Cir., 619 F.2d 902 (1980). Similarly, without analyzing the statutory wording, *Carter v. Houston Chronicle Pub. Co.,* W.D.Okl., 514 F.Supp. 12 (1980) found that language in the Oklahoma statute similar to that of paragraphs (3)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and (4) of § 3104(c) extends the jurisdictional long arm to the outer limits of the constitution. In *Anselmi v. Denver Post,* 10th Cir., 552 F.2d 316 (1977) the provision comparable to paragraph (3) of § 3104(c) was interpreted to require only a tortious injury in the state which requirement was satisfied by the sending of defamatory material into the state. It is noted the United States District Court in Wyoming reached a contrary conclusion involving a similar statute in *Whitaker v. Denver Post, Inc.,* D.Wyo., 401 F.Supp. 60 (1975).

10 *Del.C.* § 3104(c)(3) has been the subject of decision in the United States District Court in Delaware in *Moore v. Little Giant Indus., Inc.,* D.Del., 513 FS 1043 (1981), aff'd. In rejecting a contention that a tortious injury occurring in Delaware satisfied the requirement that an act must occur in Delaware, the District Court stated:
Plaintiffs' suggestion that the "tortious act" should be deemed to have occurred where the injury took place would eviscerate the distinction between subsections (c)(3) and (c)(4) of the statute, and must therefore be rejected under generally accepted principles of statutory construction. See Mergenthaler v. State, 239 A.2d 635 (Del.1968).

**\*5** In the light of the above considerations, I conclude that the specific language used in paragraph (3) of § 3104(c), 10 *Del.C.,* requires that both a tortious injury and an act (or omission) causing the injury must occur in Delaware and that the causative act (or omission) in Delaware be distinct from the injury. In view of the evolutionary history of long arm statutes and the well established legislative and judicial precedents which existed prior to enactment of the Delaware statute, including the precedents in the neighboring state of Maryland from which this provision came, it would be inappropriate to ignore the statutory wording in favor of a broad brush rationalization that the paragraph was intended to utilize the due process standard to the utmost.

Turning to the limited facts which plaintiffs have presented in this case which might shed light upon the individual defendants' connection with Delaware, the articles in question were written outside Delaware for their employer, the corporate

defendant, and were edited and published by and presumably distributed by the employer. What control, if any, the individual defendants had over the publication and distribution has not been stated, and it must be assumed that they had none. Upon this state of facts that individual defendants were not present in Delaware nor anyone acting on their behalf, I am unable to attribute a vicarious or fictional presence in Delaware which could satisfy the requirement that an act or omission must have occurred in Delaware. Accordingly, I find that under the facts presented 10 *Del.C.* § 3104(c)(3) does not provide support for personal jurisdiction over defendants Drinkhall and Andrew.

### III

The second paragraph of § 3104(c) which plaintiff relies upon to support Delaware jurisdiction over the individual defendants is paragraph (4). This extends personal jurisdiction over (1) a non-resident who causes tortious injury, (2) where the injury occurred in or outside of Delaware, (3) and was caused by an act or omission outside Delaware, if the non-resident either (a) regularly does or solicits business, or (b) engages in any other persistent course of conduct in Delaware, or (c) derives substantial revenue from services or things used or consumed in Delaware. First of all, in applying this paragraph I take the reasonable literal analytical approach and not merely the broad brush approach.

The Commissioners' Comment pertaining to Section 1.03.(a)(4) of the *Uniform Act,* 13 *ULA* 466,[FN2] which is the same as paragraph (4) of § 3104(c) (except that the Delaware paragraph also covers tortious injury outside of Delaware) states (at page 468):
Section 1.03(a)(4) authorizes the exercise of jurisdiction when the tortious act or omission takes place without the state but the injury occurs within the state and there is some other reasonable connection between the state and the defendant.

... the regular solicitation of business or the persistent course of conduct required by section

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1984 WL 247023 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

1.03(a)(4) need have no relationship to the act or failure to act that caused the injury. No distinctions are drawn between types of tort actions.

**\*6** ... It is not necessary that this activity amount to the doing of business.

This is an alleged tortious injury in that as alleged it is injury resulting from a tort; cf. *Magid v. Marcal Paper Mills, Inc.,* D.Del., 517 F.Supp. 1125 (1981); the alleged tortious injury occurred in Delaware, and it has been determined above the tortious injury was caused by act of the individual defendant outside of Delaware.

With respect to the alternative conditions which must be met in order to qualify under paragraph (4), each individual defendant has submitted an affidavit indicating isolation from Delaware in various respects, including lack of personal presence in Delaware. Plaintiffs have not presented countering facts. Two of the three alternatives relate not to physical presence but to a business or financial relationship to Delaware and do not call for consideration here. The remaining alternative refers to "persistent course of conduct" in Delaware.

With respect to the "persistent course of conduct" alternative, it will be noted that unlike other portions of paragraphs (3) and (4) it makes no reference to an "act" in Delaware. The limitations implicit in § 3104(c)(4) have not been so clearly defined by decision nor so sharply distinguished from the Illinois type reasoning as have been those applying to § 3104(c)(3).

If long arm jurisdiction is to reach individual defendants, plaintiffs must present detailed facts concerning the nature and extent of activities of these defendants conducted within and directed toward this state to assist in applying not only the statutory standard but also the due process standard. Cf. *Waters v. Deutz Corp.,* supra; *Fischer v. Hilton,* D.Del., 549 F.Supp. 389 (1982); *Plumb v. Cottle,* D.Del., 492 F.Supp. 1330 (1980); *Keeton v. Hustler Magazine,* --- U.S. ----, --- S.Ct. ----,

---L.Ed.2d ----, (Slip Opinion, March 20, 1984); *Calder v. Jones,* --- U.S. ----, ---S.Ct. ----, ---L.Ed.2d ---- (Slip Opinion, March 20, 1984); *Thiry v. Atlantic Monthly Company,* supra.

Plaintiffs will be afforded a reasonable time to present facts bearing upon individual defendants' qualification under § 3104(c)(4). Plaintiffs' attorney shall submit a proposal giving course of action and time requirements.

> FN1. (3) causing tortious injury by an act or omission in this state;
>
> FN2. § 1.03.(a)(4) reads:
> (4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; [or]

Del.Super.,1984.
Ramada Inns, Inc. v. Drinkhall
Not Reported in A.2d, 1984 WL 247023 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                      Page 1

Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

**H**
Red Sail Easter Ltd. Partners, L.P. v. Radio City
Music Hall Productions, Inc.Del.Ch.,1991.Only the
Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware, New Castle County.
RED SAIL EASTER LIMITED PARTNERS, L.P.,
a Delaware limited partnership, Delphi Easter
Partners Limited Partnership, a New York limited
partnership, Plaintiffs,
v.
RADIO CITY MUSIC HALL PRODUCTIONS,
INC., a Delaware corporation, Rockefeller Group,
Inc., a New York corporation, Spectacular Partners,
Inc., a Delaware corporation, Easter Show Limited
Partnership, a Delaware limited partnership,
Defendants.
**Civ. A. No. 12036.**

Submitted: June 12, 1991.
Decided: July 10, 1991.

William Prickett, and Ronald A. Brown, Jr. of
Prickett, Jones, Elliott, Kristol & Schnee,
Wilmington, for plaintiffs.
William D. Johnston, and Melanie K. Sharp of
Young, Conaway, Stargatt & Taylor, Wilmington (
Ronald S. Rauchberg, Esquire, and Michael D.
Povman of Proskauer Rose Goetz & Mendelsohn,
New York City, of counsel), for defendants Radio
City Music Hall Productions, Inc., Rockefeller
Group, Inc. and Spectacular Partners, Inc.
Joseph A. Rosenthal of Morris, Rosenthal, Monhait
& Gross, P.A., Wilmington, for Easter Show
Limited Partnership.

*MEMORANDUM OPINION*
ALLEN, Chancellor.
**\*1** This is an action by the limited partners of a
Delaware limited partnership against the
partnership, its corporate general partner, and the
corporate parent and grandparent of the general

partner. The allegation is that defendants have
breached duties arising out of the limited
partnership agreement and certain ancillary
agreements between the limited partners and the
general partner and its parent. Pending is a motion
of the corporate grandparent-Rockefeller Group,
Inc.-to dismiss the complaint for lack of personal
jurisdiction.

Plaintiffs, Red Sail Limited Partners, L.P., and
Delphi Easter Partners Limited Partnership, are the
only limited partners of Easter Show Limited
Partnership. The principal defendants are: the
general partner, Spectacular Partners, Inc.; its sole
stockholder, Radio City Music Hall Productions,
Inc.; and Rockefeller Group, Inc., the sole
stockholder of Radio City. Easter Show is a
Delaware limited partnership, and Spectacular
Partners and Radio City are both Delaware
corporations. Rockefeller Group is a New York
corporation.

Rockefeller Group has moved for dismissal under
Rule 12(b)(2) and (5). It claims that no facts exist
that would justify the assertion of personal
jurisdiction over it by this court because it was not a
party to the partnership agreement or any of the
other agreements at issue; it does no business in
Delaware; and it has done no act in Delaware
related to this transaction. It affirms that it did
cause the incorporation of Radio City Music Hall
Products, Inc., as a Delaware corporation (as well
as certain other subsidiaries), and it acknowledges
that that required a filing in Delaware, but it asserts
that that act was years ago and has no relationship
whatsoever with the claims that plaintiffs would
require it now to defend in this jurisdiction. This
sole contact, unrelated to the facts alleged to
constitute a wrong, is, it says, insufficient under the
*International Shoe* line of cases [FN1] to support this
court's exercise of personal jurisdiction over it.

Plaintiffs respond that, in *Sternberg v. O'Neil,*
Del.Supr., 550 A.2d 1105 (1988), the Delaware

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                              Page 2

Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)
(Cite as: Not Reported in A.2d)

Supreme Court interpreted *International Shoe* and its progeny to permit the courts of this state to exercise personal jurisdiction over the parent of a wholly-owned subsidiary incorporated in Delaware on any cause of action arising out of the operation of that subsidiary.[FN2]

Rockefeller Group's principal place of business is New York City. Its principal activity is developing, owning, and operating real estate. The record contains no evidence that Rockefeller Group owns real estate in Delaware or that it otherwise conducts business in Delaware. The only acts in Delaware that Rockefeller Group has done involve filings necessary to form and to merge several wholly-owned subsidiaries. Neither the formation nor the merger of any of those corporations constitute any part of the facts alleged in the complaint as a wrong. The record establishes that, before April of 1984, Rockefeller Group created four Delaware subsidiaries and caused two of those subsidiaries to merge into one of the other two. One of these two remaining Delaware subsidiaries is Radio City, the other is not a party to this litigation or otherwise associated with the agreements at issue.

**\*2** The record also contains evidence of activity in Delaware by subsidiaries of Rockefeller Group. In April of 1984 a subsidiary of Rockefeller Group registered to do business in Delaware. This subsidiary, however, is in no way involved in this case.

The question whether to exercise personal jurisdiction over a non-resident defendant involves a two part inquiry: (1) may the defendant constitutionally be required to litigate the plaintiff's claim in this jurisdiction given the defendant's conduct, its relationship with the forum and the claims sought to be adjudicated; and (2) does the Delaware statutory law authorize exercise of the constitutional power (if it exists in the circumstances) to compel such adjudication in the courts of this state.

I need not express an opinion on the constitutionality of requiring one in the position of Rockefeller Group to defend litigation of this sort in Delaware since I am firmly of the view that the language of the statutory enactment plaintiffs invoke to justify service of process-Section 3104 of Title 10 of the Delaware Code-cannot be stretched to cover this case without breaking the necessary connection between statutory words and common usage of the English language. *See Trans-Americas Airlines, Inc. v. Kenton,* Del.Supr., 491 A.2d 1139, 1142-43 (1985).

Plaintiffs invoke three subsections of Section 3104(c) as authorizing service of process on Rockefeller Group in this case. The pertinent statutory language is as follows:

(c) As to a cause of action brought by any person *arising from any of the acts enumerated in this section,* a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. (emphasis added)

Application of these words to the acknowledged facts of Rockefeller Group's involvement with the alleged wrongs does not require great subtlety or the recitation of legal precedent. It is rather straight-forward.

In organizing subsidiary corporations in Delaware, Rockefeller Group has transacted business in this state (subsection (c)(1)), but the claims sought to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

litigated here-breach of contract and breach of alleged fiduciary duties, or wrongful participation or conspiracy in either-in no sense relates to those activities in Delaware. *Compare Papendick v. Bosch,* Del.Supr., 410 A.2d 148 (1979), *cert. denied,* 446 U.S. 909 (1980). Section 3104 expressly requires that where substituted service is employed under its terms, the wrong alleged must arise from the "acts enumerated." As the wrongs here alleged do not arise from the business that Rockefeller Group transacted in Delaware, subsection (c)(1) of Section 3104 does not authorize service of process upon it in this case.

**\*3** Subsection (c)(3) authorizes service of process when there is a tortious injury in the state by an act or omission in this state. Since the only act in Delaware that Rockefeller Group can be said to have done is to cause the formation and merger of its subsidiaries, and since those acts themselves are no part of any wrong (in this state or outside of it), this subsection offers plaintiffs no ground to require Rockefeller Group to appear in this action. [FN3]

These two sub-sections address specific personal jurisdiction-that is, jurisdiction to adjudicate a specific claim that itself is associated in some way with the forum jurisdiction. Subsection (c)(4) addresses a situation in which a defendant is generally affiliated with the forum jurisdiction. That is, subsection (c)(4) will apply when a defendant has had contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim even when that claim arose outside of this state and causes injury outside of this state. *See Sternberg v. O'Neil,* 550 A.2d at 1117; *Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1297, 1302-04 (D.Del.1990) . Plainly, the minimal connection that Rockefeller Group has had with this state would be insufficient to predicate service of process on Section 3104(c)(4). There is here no "persistent course of conduct in the State" nor is there any suggestion that Rockefeller Group "derives substantial revenue from services, or things used or consumed in the State." Therefore, subsection (c)(4) is unavailing to plaintiffs.

I conclude therefore that Section 3104 does not authorize this court to exercise jurisdiction over Rockefeller Group. This conclusion is not inconsistent with the holding in *Sternberg v. O'Neil,* Del.Supr., 550 A.2d 1105 (1988). That case addressed the constitutional issue that questions of personal jurisdiction over non-resident defendants inevitably raises. It did not concern the separate question whether Delaware law authorized service of process, since the defendant there had appointed an agent and so was "present" in the state. *Id.* at 1109 (citing *Pennsylvania Fire Ins. Co. v. Gold Issue Mining and Milling Co.,* 243 U.S. 93, 95 (1917).[FN4]

In *Sternberg,* the Delaware Supreme Court held that it was consistent with traditional notions of fair play and substantial justice-that is, it was constitutional-to require a foreign corporation that had long owned all of the stock of a Delaware corporation to appear and defend a double derivative suit charging the directors of the Delaware company and its parent with breach of fiduciary duty.

Plaintiffs argue that, after *Sternberg,* this court must be authorized to exercise jurisdiction under Section 3104 over an out-of-state parent of a Delaware corporation because Section 3104 has been " construed to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B, S.p.A. v. Bowe Co., Inc.,* Del.Supr., 513 A.2d 764, 768 (1988). In my opinion, the Supreme Court did not intend in *LaNuova* to direct the trial court to ignore the specific words of Section 3104 and to henceforth analyze all questions arising under Section 3104 only in the broad terms of fundamental fairness that guide determination of the constitutional question. The Supreme Court commands that this statute be given a liberal construction so that its purpose is achieved, but it has not directed that the application of statutory words to the facts in hand be slighted.

**\*4** Nor on the current record can the activities of Rockefeller Group's subsidiaries in Delaware be attributed to Rockefeller Group.[FN5] Courts in Delaware will ignore the separate corporate existence of a subsidiary and attribute its activities

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in Delaware to the parent only if the subsidiary is the alter ego or a mere instrumentality of the parent, or if the subsidiary acts as the agent of the parent. *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* Del.Supr., 154 A.2d 684 (1959); *Sears, Roebuck & Co.,* 744 F.Supp. at 1304; *Mobile Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 265-72 (D.Del.1989). The record contains no evidence that either basis for imputing the acts of the subsidiary to the parent apply to Radio City or to the Rockefeller Group subsidiary that registered to do business here.

Finally, plaintiffs assert personal jurisdiction over Rockefeller Group based on a conspiracy theory of jurisdiction. It cites *Istituto Bancario Italiano SpA v. Hunter Eng. Co., Inc.,* Del.Supr., 449 A.2d 210 (1982), but that case too dealt with the constitutional fairness issue, not with statutory construction. In all events, the claim is that Rockefeller Group conspired with its wholly owned subsidiary to breach the partnership agreement and the ancillary agreements, and that the formation of Spectacular Partners and Easter Show were acts in Delaware in furtherance of that conspiracy.

A theory of personal jurisdiction based upon an alleged conspiracy between a foreign corporation and its wholly owned Delaware subsidiary is very close to being merely another way to assert that a controlling shareholder may always be sued in Delaware on any claim made against the subsidiary. A controlling shareholder does by definition control (or have the power to control) the acts of its subsidiary. Thus, an attempt to apply a conspiracy theory to parent-subsidiary corporations in order to extend the reach of Section 3104 raises particular concerns. I need not address those concerns, however, because, assuming that Rockefeller Group may be subjected to the compulsion of legal process under Section 3104 if any party with whom it is in conspiracy could be served under Section 3104, still plaintiffs have failed to show that any of the defendants could be served under the terms of that statute. In other words, if the conspiracy theory means Rockefeller Group may be sued in any jurisdiction in which an act in furtherance of the

conspiracy occurred, plaintiffs have failed to make a *prima facie* case that the only Delaware acts-filing of the Spectacular Partners incorporation document and of the limited partnership documents-were part of a conspiracy to breach duties created by the funding of the limited partnership obligations. It is not enough to sustain service of process under Section 3104 when challenged on a motion under Rule 12(b)(2) or (5) that plaintiffs might imagine that an act in Delaware might possibly be related to the wrong alleged and that a non-resident defendant might possibly have participated in some way in that action ("conspired"). Plaintiffs' obligation is to come forward with some evidentiary support for such speculation. *See Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.,* Del.Ch., C.A. No. 11514, Allen, C. (Feb. 13, 1991). Here they have not done so.

**\*5** The motion to dismiss is therefore GRANTED.

> FN1. *See, e.g.. International Shoe Co. v. Washington,* 326 U.S. 310 (1945); *Shaffer v. Heitner,* 433 U.S. 186 (1977); *Burger King v. Rudzewicz,* 471 U.S. 462 (1985); *Burnham v. Superior Court of California,* 110 S.Ct. 2105 (1991).

> FN2. This principle is breath-taking in scope. It would apply for example to support jurisdiction over a New York corporation that owned a Delaware subsidiary whose employee was involved, during the course of his employment, in an intersection collision in Los Angeles.

> FN3. In so concluding I need not express any view on the question whether a financial impact on a Delaware corporation (arising for example from the misappropriation of trade secrets) is "tortious injury in the State" within the meaning of this section.

> FN4. The present case is also different in this respect from *In re USACafes, L.P. Lit.,* Del.Ch., Cons. C.A. 11146, Allen. C. (June 7, 1991), where the directors of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

> Delaware corporation were subject to
> service of process under the director's
> longarm statute, 10 *Del.C.* § 3114.
>
> FN5. Indeed, the record does not disclose
> any such activities in Delaware, except the
> filing by Radio City of the incorporation
> documents of Spectacular Partners and the
> filing by Spectacular Partners of the
> limited partnership documents. Thus,
> while those Rockefeller Group subsidiaries
> are plainly "present" in Delaware by
> reason of their incorporation, they do not
> do business generally in this state for
> purposes of Section 3104(c).

Del.Ch.,1991.
Red Sail Easter Ltd. Partners, L.P. v. Radio City
Music Hall Productions, Inc.
Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 of 1 DOCUMENT

**SAFT AMERICA, INC., Plaintiff, v. OVONIC BATTERY COMPANY, INC., and ENERGY CONVERSION DEVICES, INC., Defendants and Counterplaintiffs, v. SAFT AMERICA, INC., SAFT, S.A., GS-SAFT, SOCIETE DE SERVICES DE PROPRIETE INDUSTRIELLE, and JAPAN STORAGE BATTERY COMPANY, INC., Counterdefendants.**

**Civil Action No. 95-430-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1996 U.S. Dist. LEXIS 5068*

**March 25, 1996, Dated**

**NOTICE: [*1]**  NOT FOR PUBLICATION

**DISPOSITION:** Counterdefendant SOSPI's motion to dismiss for lack of personal jurisdiction will be granted.

**COUNSEL:** Bruce M. Stargatt, Esquire, Josy W. Ingersoll, Esquire, and John W. Shaw, Esquire, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, Attorneys for Counterplaintiffs. Of Cousel: Chester T. Kamin, Esquire, David J. Bradford, Esquire, Terri L. Mascherin, Esquire, and Paul T. Whitcombe, Esquire of Jenner & Block, Chicago, Illinois; Lawrence G. Norris, Esquire, of Rothwell, Figg, Ernst & Kurz, Washington, D.C.; and Marvin S. Siskind, Esquire, Vice President/Patent Counsel, Energy Conversion Devices, Inc., Troy, Michigan.

Thomas R. Hunt, Jr., Esquire, Jack B. Blumenfeld, Esquire, and Karen Jacobs Louden, Esquire, of Morris, Nichols, Arsht & Tunnell, Attorneys for Counterdefendants Societe de Services de Propriete Industrielle, Saft America, Inc., and Saft, S.A., Of Counsel: Neil B. Siegel, Esquire, David J. Cushing, Esquire, and Mark Boland, Esquire, of Sughrue, Mion, Zinn, MacPeak & Seas, Washington, D.C.

**JUDGES:** Sue L. Robinson, District Judge

**OPINION BY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: March 25, 1996

Wilmington, Delaware

ROBINSON, [*2]  District Judge

**I. INTRODUCTION**

SAFT America, Inc. filed this action against Ovonic Battery Company, Inc. ("Ovonic") and Energy Conversion Devices, Inc. ("ECD") on September 8, 1995. SAFT America seeks a declaration that defendants' patent on a certain nickel metal hydride battery technology is invalid and that SAFT America has not infringed. In their answer and counterclaim, defendants sought to add several counterdefendants, including the Societe de Services de Propriete Industrielle ("SOSPI"), a French corporation. SOSPI, like SAFT America and SAFT, S.A. ("SAFT"), is a subsidiary of the French conglomerate Alcatel Alsthom.

Currently before the court is SOSPI's motion to dismiss the counterclaims against it for lack of personal jurisdiction. SOSPI contends that none of the provisions of Delaware's long arm statute apply to it, and that it has not had sufficient contacts with the State to permit the exercise of personal jurisdiction over it by this court. Counterplaintiffs assert that jurisdiction may be premised on SOSPI's actions as an agent of SAFT America and on SOSPI's independent tortious actions within the State. Alternatively, counterplaintiffs argue that because [*3]

1996 U.S. Dist. LEXIS 5068, *3

the jurisdictional issue is inextricably entwined with the merits of the case, the court should reserve the issue for trial. For the reasons explained below, counterdefendant's motion will be granted.

## II. BACKGROUND

For the purposes of this motion, the court must view the facts in the light most favorable to the nonmoving party. The court, therefore, finds the following facts relevant to this inquiry:

In 1989, representatives of SAFT, Ovonic, and ECD held discussions in Troy, Michigan for the purpose of exploring a possible business relationship. (D.I. 51 at Ex. A) In the course of those discussions, Ovonic disclosed confidential business and technical information pursuant to a confidentiality agreement it had formed with SAFT. Mr. M. Dalsace, Director of SOSPI, participated actively in these meetings as SAFT's patent agent. (D.I. 51 at Ex. A) A representative of SAFT confirmed that SOSPI, as a sister company and patent agent of SAFT, would be bound by the confidentiality agreement. (D.I. 51 at Ex. A)

Counterplaintiffs believe that SAFT, with SOSPI's help, improperly utilized Ovonic's confidential information to further its own research and attack Ovonic's patents. (D.I. [*4] 12 at P 24) According to counterplaintiffs, SOSPI prepared nullity actions which SAFT filed against Ovonic patents in Germany and France (D.I. 12 at P 27); served as SAFT's patent agent on an application before the European Patent Office using Ovonic's confidential information (D.I. 12 at P 25); and filed an opposition to counterplaintiff ECD's application for a patent. (D.I. 12 at P 26) According to counterplaintiffs' affidavits, it also "appears that this action to attack the validity of Ovonic's U.S. Patent No. 4,623,597 was prepared and filed with the participation of and/or at the direction of SOSPI, and with the benefit of confidential information that Saft and SOSPI agreed not to use for these purposes." (D.I. 51 at Ex. A) Counterplaintiffs support this allegation by noting SOSPI's participation, on SAFT's behalf, in settlement negotiations relating to the present case which took place in Paris before SOSPI was named as a counterdefendant. (D.I. 51 at Ex. B)

Counterplaintiffs do not contend that any of SOSPI's alleged activities took place in Delaware. SOSPI asserts, and counterplaintiffs do not dispute, that SOSPI does not

have any offices, employees, real estate or other [*5] assets in Delaware, nor has it ever derived revenues from or consumed things or services in the State.

## III. DISCUSSION

SOSPI contends that this court lacks personal jurisdiction over it and accordingly moves for dismissal under Fed. R. Civ. p 12(b)(2). To defeat a 12(b)(2) motion to dismiss, counterplaintiffs bear the burden of demonstrating through sworn affidavits or other competent evidence that jurisdiction exists. *Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir.), cert. denied, 498 U.S. 812, 112 L. Ed. 2d 24, 111 S. Ct. 48 (1990),* citing *Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n. 9 (3d Cir. 1984).* Once counterplaintiffs have made out a prima facie case, the burden passes to counterdefendant to "present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Grand Entertainment Group v. Star Media Sales, 988 F.2d 476, 483 (3d Cir. 1993),* citing *Carteret Sav. Bank F.A. v. Shushan, 954 F.2d 141, 150 (3d Cir.), cert. denied, 506 U.S. 817, 113 S. Ct. 61, 121 L. Ed. 2d 29 (1992)* (citations omitted). As this court has held, "personal jurisdiction can be asserted over a defendant on the basis of a single act [*6] related to the state, if the claim has its basis in the asserted transaction." *Blue Ball Properties, Inc. v. McClain, 658 F. Supp. 1310, 1316 (D. Del. 1987).*

This court may assert personal jurisdiction to the extent permitted under the Delaware long arm statute, *Delaware Code Ann. Title 10, Section 3104* (1978), *Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 293 (3d Cir.), cert. denied, 474 U.S. 980, 88 L. Ed. 2d 336, 106 S. Ct. 383 (1985),* and the due process clause of the Fourteenth Amendment. *Jeffreys v. Exten, 784 F. Supp. 146 (D. Del. 1992).* In determining whether jurisdiction lies the court must apply a two step analysis: "First, [the] court must determine whether the alleged conduct of a defendant comes within one of the provisions of the long arm statute . . . . Then the court must proceed to consider whether the exercise of jurisdiction over a particular defendant violates due process interests." *Blue Ball Properties, 658 F. Supp. at 1315.*

### A. Delaware Long Arm Statute

Counterplaintiffs allege that personal jurisdiction over counterdefendant is proper under Section 3104(c)(3). This section provides that "a court may

exercise personal jurisdiction [*7] over any nonresident, or his personal representative, who in person or through an agent . . . causes tortious injury in the State by an act or omission in the State." *10 Del. C. § 3104(c)(3)*. As this court has held, this section is to be construed liberally, favoring the exercise of jurisdiction "to the 'maximum perimeters of the due process clause.'" *Mobil Oil Corp. v. Advanced Envtl. Recycling Technologies, 833 F. Supp. 437 (D. Del. 1993),* quoting *Transportes Aereos de Angola v. Ronair, Inc., 544 F. Supp. 858, 864 (D. Del. 1982).*

Jurisdiction under § 3104(c)(3) requires that the tortious act itself, and not merely the resulting harm, occur in Delaware. *Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1466 (D. Del. 1991).* This interpretation is necessary to distinguish § 3104(c)(3) from § 3104(c)(4), which provides for jurisdiction over one who

> causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .

[*8]

This latter section, known as a grant of "general jurisdiction," clearly does not require a nexus between the cause of action and a defendant's activities in the State, but does require a higher level of regular contacts in the State than do the other "specific jurisdiction" subsections. To give this subsection any meaning, the court must read § 3104(c)(3) as requiring a connection between the alleged tortious activity and counterdefendant's presence in Delaware.

### 1. Tortious Acts in Delaware

It is undisputed that SOSPI has not had any physical presence in the State of Delaware. Counterplaintiffs contend, however, that SOSPI's participation in the filing of this lawsuit forms a sufficient basis for jurisdiction under this section. As the basis for this conclusion, counterplaintiffs rely on *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies, Inc., 833 F.*

*Supp. 437 (D. Del. 1993).* In Mobil Oil, the court exercised jurisdiction over an individual defendant who had authorized, in his official capacity, the corporate act that was the subject of plaintiff's suit. The individual defendant in that case had been physically present in Delaware only once, but [*9] his presence in the State was related to the matter that gave rise to the suit. Jurisdiction was held proper despite the fact that the defendant was not physically present in Delaware when he authorized the corporate act in question. *Id. at 444-45.*

In the case at bar, however, there are two crucial distinctions. First, counterplaintiffs claim only that SOSPI assisted SAFT in filing this case, not that it authorized it. Jurisdiction was proper in Mobil Oil only because the defendant in that case had the power to cause the corporate entity to act. Id. Counterplaintiffs claim no such authority over SAFT on the part of SOSPI. Second, the defendant found subject to jurisdiction in Mobil Oil had some actual contact with the forum state. The court concluded in that case that "[defendant's] authorization of the filing of this . . . action on behalf of Mobil and his presence in Delaware as a deposition witness in connection with the lawsuit **together** create sufficient contacts with Delaware to support personal jurisdiction under subsection (c)(3)." *Id. at 444* (emphasis added). In this case, the element of actual contact with the State is missing. Therefore, this [*10] court cannot assert personal jurisdiction over SOSPI based solely on its alleged assistance in filing this suit.

### 2. Agency Theory

Counterplaintiffs contend that because SOSPI acted as an agent of SAFT America, the latter's activities can be imputed to the former. Thus, SOSPI, through its principal SAFT America, has committed a tortious act in the State of Delaware. It is true, as counterplaintiffs point out, that jurisdiction may be premised on the actions of an agent, and that an agency relationship may exist between two subsidiaries of a single parent corporation. *Applied Biosystems, 772 F. Supp. at 1463.* To impute SAFT America's actions to SOSPI, however, counterplaintiffs must show that SOSPI was the principal, and that it exerted control over SAFT America, its agent. As the court stated in Applied Biosystems:

> The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the

1996 U.S. Dist. LEXIS 5068, *10

division of responsibility for day-to-day management, and the process by which each corporation obtains its business.

Id. By this standard, counterplaintiffs have failed to allege a sufficient factual basis to establish [*11] an agency relationship. In fact, they allege not that SAFT was SOSPI's agent, but that SOSPI was SAFT's agent. As the agent, SOSPI could not have directed the alleged tortious acts, and the acts of the supposed principal cannot be imputed to it. Id. at 1467. The court, therefore, cannot take jurisdiction over counterdefendant based on a theory of agency.

### 3. Conspiracy Theory

Counterplaintiffs also maintain that SAFT America's actions may be imputed to SOSPI because both were members of a conspiracy whose goal was to undermine counterplaintiffs' patents. Under Delaware law, the actions of a conspirator may be attributed to a co-conspirator for the purposes of asserting personal jurisdiction. Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd., 611 A.2d 476, 481-82 (Del. 1992). To assert jurisdiction under this theory, counterplaintiffs must establish:

> (1) a conspiracy . . . existed; (2) the [counter] defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the [counter]defendant knew or had reason to know of the act in the forum state or that acts outside the forum [*12] state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

Id. at 482. Accord Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 157 F.R.D. 215, 863 F. Supp. 186, 189 (D. Del. 1993). In the case at bar, only one act in furtherance of the alleged conspiracy occurred in Delaware: the filing of this lawsuit. With respect to SOSPI's participation in the filing of this lawsuit, counterplaintiffs allege only that SAFT America

consulted with SOSPI before filing, and that a representative of SOSPI attended a meeting in Paris to discuss settlement. These allegations, standing alone, do not establish a basis for concluding that SOSPI participated in a conspiracy and, therefore, do not form a sufficient basis for asserting jurisdiction under a theory of conspiracy.

### B. Due Process

Even if jurisdiction over counterdefendant were found to exist under the Delaware Long Arm Statute, the requirements of the Due Process Clause of the Constitution would prevent this court from asserting jurisdiction. The Supreme Court of the United States set forth the relevant due process [*13] requirements in International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945):

> Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Milliken v. Meyer, 311 U.S. 457, 85 L. Ed. 278, 61 S. Ct. 339 ...

In Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958), the Supreme Court noted further:

> It is essential that in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

In addition, the "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).

1996 U.S. Dist. LEXIS 5068, *13

By requiring that individuals have "fair warning that a particular [*14] activity may subject [them] to the jurisdiction of a foreign sovereign," ... the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Burger King Corp., 471 U.S. at 472* (citations omitted). In a case such as the present,

> where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, ... and the litigation results from alleged injuries that "arise out of or relate to those activities ...."

*Id. at 472-73* (citations omitted). It is undisputed in this case that counterdefendant has had no contact with the State of Delaware. SOSPI maintains no offices, owns no property, has no employees, and derives no revenue from the State of Delaware. Counterplaintiffs have not alleged any act of infringement committed by SOSPI in Delaware. Counterplaintiffs have not asserted that SOSPI directed the [*15] filing of this lawsuit, or that it participated in the decision to do so as a co-conspirator. Rather, counterplaintiffs assert only that SOSPI assisted SAFT America in the preparation of the suit. Such allegations fall short of establishing that SOSPI purposely availed itself of the privileges of conducting activities in Delaware. Under these circumstances, counterdefendant SOSPI could not reasonably have anticipated being haled into court here, and to do so would violate the notion of fair play enshrined in the Due Process Clause of the Constitution.

**IV. CONCLUSION**

For the forgoing reasons, counterdefendant SOSPI's motion to dismiss for lack of personal jurisdiction will be granted. An order consistent with this opinion shall issue.