IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROQUETTE FRERES,<br><br>Plaintiff,<br><br>v.<br><br>SPI PHARMA, INC. and DRYTEC LTD.,<br><br>Defendants. | Civ. Action No. 06-540 (***)<br><br>**REDACTED VERSION** |

**DEFENDANT DRYTEC LTD.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

YOUNG CONAWAY STARGATT & TAYLOR LLP
John W. Shaw, Esq. (No. 3362)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Drytec Ltd.*

OF COUNSEL:
Brian P. Murphy, Esq.
Oren D. Langer, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Dated: February 16, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. SUMMARY OF ARGUMENT ..... 1

III. ARGUMENT ..... 2

A. Drytec Ltd. Is Not Amenable to Personal Jurisdiction Under the Delaware Long-Arm Statute ..... 2

1. Drytec Ltd. Does Not Transact Any Business or Perform Any Character of Work or Service in the State of Delaware ..... 3

a. SPI's Grand Haven, Michigan Plant ..... 3

b. [redacted] ..... 4

2. Drytec Ltd. Never Sold Spray-Dried Mannitol to SPI ..... 6

a. [redacted] ..... 7

b. Drytec Ltd. and Drytec CP Are Wholly Separate Corporate Entities ..... 8

3. Drytec Ltd. Does Not Regularly Conduct or Solicit Business in Delaware ..... 11

B. This Court Lacks Constitutional Power To Exercise Personal Jurisdiction Over Drytec ..... 11

IV. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
772 F. Supp. 1458 (D. Del. 1991)........ 4, 9, 10, 11

*Helicopteros Nacionales de Columbia v. Hall*,
466 U.S. 408 (1984)........ 11

*Monsanto Co. v. Syngenta Seeds, Inc.*,
Civ. No. 04-305-SLR, 2006 U.S. Dist. LEXIS 54534 (D. Del. Aug. 4, 2006) .... 6, 9, 11

*Moore v. Little Giant Industries, Inc.*,
513 F. Supp. 1043 (D. Del. 1981)........ 4

*Sears, Roebuck & Co. v. Sears plc*,
774 F. Supp. 1289 (D. Del. 1990)........ 4

*Telcordia Technologies, Inc. v. Alcatel S.A.*,
Civ. No. 04-874 GMS,
2005 U.S. Dist. LEXIS 10194 (D. Del. May 27, 2005)........ 2, 6, 10, 11

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) ........ 11

*United States v. Bestfoods*,
524 U.S. 51 (1998)........ 10

**Statutes**

10 Del. C. § 3104(c)(1) ........ 3

35 U.S.C. § 271 (a)-(c)........ 4

## I. INTRODUCTION

Plaintiff Roquette Freres ("Roquette" or "plaintiff") has answered Drytec Ltd.'s opening brief in support of its motion to dismiss for lack of personal jurisdiction. ("Ans. Br.") (D.I. 27). Defendant Drytec Ltd. submits this reply memorandum in response to plaintiff's answering brief and in further support of its motion to dismiss. In support of its reply memorandum, Drytec Ltd. relies on the accompanying Declaration of Colleen Blackney.[1]

## II. SUMMARY OF ARGUMENT

Plaintiff's answering brief fails to present evidence sufficient to meet its burden of establishing that this Court may exercise personal jurisdiction over Drytec Ltd. Plaintiff relies on legally irrelevant facts regarding the relationship between the two co-defendants in this case, which has nothing to do with plaintiff's allegations of patent infringement. [redacted] In an effort to cure this error in bringing suit against the wrong party, plaintiff relies on an agency theory to connect Drytec Ltd. to a third-party corporate entity that has never had an agency relationship with Drytec Ltd.

Drytec Ltd. does not transact any business or perform any character of work or service in Delaware. Drytec Ltd. does not manufacture and has never manufactured the

[1] "Blackney Decl." refers to The Declaration of Colleen Blackney In Support of Defendant Drytec Ltd.'s Motion To Dismiss submitted herewith.

accused mannitol product for SPI. Even after deposing the Managing Director of Drytec Ltd., plaintiff has not adduced any evidence to show the necessary minimum contacts with the State of Delaware for this Court to exercise personal jurisdiction over Drytec Ltd. The case law and underlying evidence makes plain that Drytec Ltd. never availed itself of personal jurisdiction in Delaware through the use of an agent company and never purposefully directed its activities at residents of Delaware. Drytec Ltd., therefore, respectfully requests this Court to grant its motion to dismiss for lack of personal jurisdiction.

## III. ARGUMENT

### A. Drytec Ltd. Is Not Amenable To Personal Jurisdiction Under the Delaware Long-Arm Statute

Plaintiff's answering brief cites legally irrelevant facts and fails to cite sufficient evidence to meet its burden of proof. *Telcordia Technologies, Inc. v. Alcatel S.A.*, Civ. No. 04-874 GMS, 2005 U.S. Dist. LEXIS 10194,[2] at *5-*6 (D. Del. May 27, 2005) (plaintiff bears burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction...To meet this burden, plaintiff must adduce facts which "establish with reasonable particularity" that jurisdiction over defendant exists.). The jurisdictional discovery taken by plaintiff, which included deposing the managing director of Drytec Ltd., Paul C. Kennet, could not be clearer that Drytec Ltd. has no business relationship with SPI for the manufacture of any mannitol product accused of infringing plaintiff's

[REDACTED] Finally, Drytec Ltd. is

[2] This and all other unreported decisions are attached to this brief as Exhibit 1.

not the agent of, or affiliated with, any other company such that it may be subject to jurisdiction in Delaware resulting from the actions of other, wholly separate, corporate entities.

**1. Drytec Ltd. Does Not Transact Any Business or Perform Any Character of Work or Service in the State of Delaware**

**a. SPI's Grand Haven, Michigan Plant**

Contrary to plaintiff's assertions, Drytec Ltd. does not transact any business or perform any character of work or service in the State of Delaware that would subject it to personal jurisdiction under 10 Del. C. § 3104(c)(1). Plaintiff's sole evidentiary basis for alleging that Drytec Ltd. transacts business in Delaware

Delaware. Plaintiff, in a footnote, makes passing mention that the SPI plant is in Michigan, all provided by SPI in Delaware. But no evidence is cited, and when questioned, Mr. Kennet specifically stated that all meetings between Drytec Ltd. and SPI personnel "would have happened at Drytec CP's – Drytec's offices. I've never met anybody – I've never been to SPI Pharma, I've never been to the States and met anybody there, they would have all occurred at Drytec's offices in [the UK]." (Kennet Dep.[3] p. 36:3-8).

3 "Kennet Dep." refers to the deposition of Paul C. Kennet taken in this matter January 16, 2007.

Specific jurisdiction pursuant to subsection (c)(1) of the Delaware long-arm statute requires that "some act must have actually occurred in Delaware, and that the causes of action asserted by [Roquette] must have arisen from the Delaware conduct." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991). Plaintiff cites to no evidence that any alleged act of patent infringement arises from conduct by Drytec Ltd. in Delaware, [REDACTED] contract occurred in Delaware. Moreover, under Delaware law, the "shipment of goods into a state by common carrier, without more, does not constitute 'transaction of business' " under Section 3104(c)(1). *Id.* at 1467 (*quoting Moore v. Little Giant Industries, Inc.*, 513 F. Supp. 1043, 1046 (D. Del. 1981)); *see also Sears, Roebuck & Co. v. Sears plc*, 774 F. Supp. 1289, 1294 (D. Del. 1990) (the mere shipment of goods into Delaware did not constitute transacting business within the meaning of subsection (c)(1)). [REDACTED] under Delaware's long-arm statute. Plaintiff has failed to meet its burden of proving that personal jurisdiction exists over Drytec Ltd. Drytec Ltd. respectfully requests that its motion to dismiss be granted.

[REDACTED]

Patent Infringement requires the manufacture, use, sale or offer for sale in the United States, or importation into the United States, of the product accused of infringement. 35 U.S.C. § 271 (a)-(c). Drytec Ltd. has never been involved in making the accused mannitol product for SPI, nor has it ever used or sold the accused product, offered it for sale or imported it into the United States. In a deposition that lasted only

one hour, Mr. Kennet made it a point on at least six different occasions to state that Drytec Ltd. has no business relationship with SPI related to the manufacture of mannitol:

> Q. SPI Pharma certainly believes that it is purchasing Mannogem EZ spray dry Mannitol form Drytec Limited, does it not?
> ...
> A. I do not believe that Drytec Limited, whose activities is purely the design and supply of spray drying equipment, had any Mannitol production contract or obligation, whatever you want to
>
> (Kennet Dep. p. 29:4-17) (attorney colloquy omitted).
>
> Q. ...Isn't it correct that Drytec Limited has derived revenue from SPI Pharma Inc. in Delaware?
> A. I do not believe that Drytec Limited has. I do not believe any invoicing has been issued by Drytec Limited to SPI Pharma directly, since they did not manufacture anything for SPI, any material.
> (*Id.* at 30:17 – 31:2).
>
> Q. So you're saying that there is no piece of paper exchanged directly between Drytec Limited and SPI Pharma Incorporated?
> A. That is my understanding.
> Q. Not that they have not done business?
> A. Well, as a contracted business, there needs to be a piece of paper, presumably. There needs to be a formal contract to do business and I do not believe there is any formal contract between SPI Pharma and Drytec Limited to produce mannitol.
> (*Id.* at 31:12 – 32:1).
>
> Q. ...At the time you said that, I take it you were unaware of the Piers report, and page 4, I believe it is, showing Drytec Limited as the exporter?
> A. I was unaware of the document, but I still stand by that statement. Drytec [Limited] has never sold any Mannitol product in the United States, which we have not, nor has it imported any Mannitol product into the United States....
> (*Id.* at 33:6-14).

Drytec Ltd. is not even in the business of manufacturing chemical materials. Rather, "Drytec Limited designs, supplies, installs and commissions drying equipment."

(Kennet Dep. p. 13:5-6). Based on the jurisdictional evidence, plaintiff has not established with reasonable particularity that sufficient minimum contacts have occurred between Drytec Ltd. and the state of Delaware that could in any way form the basis of an allegation of patent infringement against Drytec Ltd. *Monsanto Co. v. Syngenta Seeds, Inc.*, Civ. No. 04-305-SLR, 2006 U.S. Dist. LEXIS 54534, at *16 (D. Del. Aug. 4, 2006); *Telcordia*, 2005 U.S. Dist. LEXIS at *6. Drytec Ltd.'s motion to dismiss should therefore be granted.

**2. Drytec Ltd. Never Sold Spray-Dried Mannitol to SPI**

6). Plaintiff's First Amended Complaint (D.I. 9) alleges that Drytec Ltd. is and has been importing the EZ product into the United States. Plaintiff erroneously filed suit against Drytec Ltd., a party having nothing to do with the instant litigation, and is now attempting to correct its oversight by arguing that "Drytec [Ltd.] and Drytec Contract Processing Are, Essentially, the Same Company." (Ans. Br. p. 13). Because Drytec Ltd. has never contracted to supply services or things in the State of Delaware, Section 3104(c)(2) of the Delaware long-arm statute is inapplicable.

4 Plaintiff alleges that SPI's EZ product infringes the claims of plaintiff's U.S. Patent No. 5,573,777 ("the '777 patent").

5 Nothing in this brief is to be construed as an admission that this Court has personal jurisdiction over Drytec CP.



Drytec Ltd. "does not dry Mannitol." (*Id.* at 21:8-9). When questioned on the specifics of Drytec CP's business in relation to this matter, Mr. Kennet readily



Plaintiff's reliance on a SPI letter authored by Ms. Blackney which states that Drytec Ltd. is the exclusive manufacturer of SPI's EZ product is misplaced. (Ans. Br.



addition to not having the necessary contacts with the State of Delaware, Drytec Ltd. is completely removed from plaintiff's underlying cause of action alleging patent infringement. Drytec Ltd.'s motion to dismiss should therefore be granted.

**b. Drytec Ltd. and Drytec CP Are Wholly Separate Corporate Entities**

Plaintiff argues, incorrectly, that for purposes of satisfying the Delaware long-arm statute, the actions of Drytec CP are attributable to Drytec Ltd. under the legal theory of agency. Plaintiff relies on two facts to prove its assertion: (i) both share the same address and (ii) both have identical management personnel.

The agency theory examines the degree of control which one company exercises over another. *Applied Biosystems*, 772 F. Supp. at 1463. The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. *Id.* "No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant." *Id.* Moreover, the mere existence of an agency relationship is not sufficient to confer jurisdiction. *Monsanto*, 2006 U.S. Dist. LEXIS at *20; *Telcordia*, 2005 U.S. Dist. LEXIS at *9.

In *Applied Biosystems*, also cited to by plaintiff, defendants Cruachem Holdings Ltd. ("Holdings") and Cruachem Ltd. ("Limited") are both Scottish corporations with principal places of business in Scotland. *Applied Biosystems*, 772 F. Supp. at 1460-61. Holdings owns 100% of the stock in both Limited and Cruachem, Inc. ("Inc."), a Delaware corporation. *Id.* at 1461. "Limited operates in Scotland, where it manufactures and sells instruments and reagents used in the chemical synthesis of DNA…Inc. serves as the US distributor of these products; it purchases the reagents and synthesizers from Limited in Scotland and imports them to the US for resale." *Id.* The three corporations have shared several common officers and directors. *Id.* In addition, employees of each corporation have performed services for the others, the sales between Limited and Inc. are recorded on intercorporate accounts, and "[t]he corporations have also advertised together, holding themselves out to the public simply as Cruachem…" *Applied Biosystems*, 772 F. Supp. at 1461. Given these facts, which illustrate a significantly greater affiliation than the one posited by Roquette in this case, the Court found that:

> It is true that the relationships among Inc., Limited, and Holdings are close. Considering the extent of overlap of officers, directors, and personnel, as well as the joint advertising, shared finances, and general intercorporate structure, we agree with [plaintiff] that in many circumstances Inc. acts as the agent of Limited and Holdings, and consequently a limited agency relationship has been created. However, we reject the argument that an agency relationship with a Delaware corporation is alone sufficient to confer jurisdiction, so that it is unnecessary to meet the terms of the long-arm statute.

*Id.* at 1464. In addition to the fact that there is no corporate affiliation between Drytec CP and Drytec Ltd., plaintiff merely relies on the overlapping of management and identical addresses. (Ans. Br. p. 14). The law is not on plaintiff's side. It is entirely appropriate for the directors of one company to serve as directors of a second affiliated company, and that fact alone may not serve to expose the first company to liability for the second company's acts. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998); *Telcordia*, 2005 U.S. Dist. LEXIS at *12. Both cases relied upon by plaintiff to illustrate the supposed agency theory between Drytec CP and Drytec Ltd, namely *Applied Biosystems* and *Wesley-Jessen* (Ans. Br. p. 14), involve a Delaware corporation as the alleged agent. Neither Drytec CP nor Drytec Ltd. are Delaware corporations. They are both U.K. companies having principal places of business in England with different certificates of incorporation and separate corporate identification numbers. (See Exhibit 2 attached). Given the relative weakness of the evidence that plaintiff proffers in this case as compared to evidence of an agency relationship in *Applied Biosystems*, where an assertion of personal jurisdiction was rejected, Drytec Ltd. submits that there is insufficient evidence to confer personal jurisdiction over Drytec Ltd.

**3. Drytec Ltd. Does Not Regularly Conduct or Solicit Business in Delaware**

Section 3104(c)(4) of the Delaware long-arm statute provides for general jurisdiction if Drytec Ltd. "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." *See Monsanto*, 2006 U.S. Dist. LEXIS at *28. Drytec Ltd. is not a Delaware company and has made no sales in Delaware, therefore, this court would be hard pressed to find that Drytec Ltd. engaged in a "persistent course of conduct" in Delaware. *See Applied Biosystems*, 772 F. Supp. at 1469. Additionally, " 'the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conduct activity in the forum, knowingly interacting with residents of the forum state via its web site.' " *Telcordia*, 2005 U.S. Dist. LEXIS at *23-*24 (*quoting Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Here, as in *Telcordia*, plaintiff has not adduced evidence to support a finding that Drytec Ltd.'s web site was intended to reach customers in Delaware. In light of the aforementioned, Drytec Ltd. has not availed itself of general jurisdiction in the State of Delaware.

**B. This Court Lacks Constitutional Power To Exercise Personal Jurisdiction Over Drytec**

Plaintiff has not shown that Drytec Ltd. has sufficient contacts with the State of Delaware required to establish general personal jurisdiction under the Due Process Clause. It is undisputed by plaintiff that Drtyec Ltd.'s lack of contacts with Delaware clearly does not rise to the level of "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 416 (1984). It is

undisputed that Drytec Ltd. does not maintain an office, place of business, factory, showroom, mailing address or telephone listing in the State of Delaware; Drytec Ltd. has no officers, employees, agents or other representatives having an office or workplace in the State of Delaware; Drytec Ltd. is not authorized, registered or qualified to do business in the State of Delaware; and Drytec Ltd. does not have an agent for service of process in the State of Delaware. (Ans. Br. p. 3; see also Declaration of Paul C. Kennet In Support of Defendant Drytec Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Kennet Decl.") ¶¶ 5-8, 11 (D.I. 21)). Additionally, the implicit notions of fair play and substantial justice embodied in the Due Process Clause do not permit Drytec Ltd. to be summoned into this litigation.

## IV. CONCLUSION

For the reasons set forth above, defendant Drytec Ltd. respectfully requests the Court to dismiss it from this action for lack of personal jurisdiction.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

[signature]

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com
*Attorneys for Drytec Ltd.*

OF COUNSEL:
Brian P. Murphy
Oren D. Langer
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Dated: February 16, 2007

**CERTIFICATE OF SERVICE**

I, Jeffrey T. Castellano, hereby certify that on February 26, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Mary B. Graham, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

I further certify that on February 26, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

Douglas V. Rigler, Esquire
Young & Thompson
745 South 23rd Street, Suite 200
Arlington, VA 22202

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com
*Attorneys for SPI Pharma, Inc. and Drytec Ltd.*

# EXHIBIT 1

LEXSEE 2006 U.S. DIST. LEXIS 54534

**MONSANTO COMPANY, et al., Plaintiffs, v. SYNGENTA SEEDS, INC., et al., Defendants.**

**Civ. No. 04-305-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2006 U.S. Dist. LEXIS 54534**

**August 4, 2006, Decided**

SUBSEQUENT HISTORY: As Amended November 14, 2006.
Motion granted by: Motion denied by Monsanto Co. v. Syngenta Seeds, Inc., 2006 U.S. Dist. LEXIS 84963 (D. Del., Nov 8, 2006)

PRIOR HISTORY: Monsanto Co. v. Syngenta Seeds, Inc., 2006 U.S. Dist. LEXIS 54515 (D. Del., Aug. 4, 2006)

COUNSEL: [*1] For Monsanto Company, Plaintiff: Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE.; John H. Bogart, John J. Rosenthal, Sean P. Beaty, Pro Hac Vice.

For Monsanto Technology LLC, Plaintiff: Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE.; John J. Rosenthal, Pro Hac Vice.

For DeKalb Genetics Corp, Plaintiff: David Ellis Moore, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For Syngenta Seeds Inc., Syngenta Biotechnology, Defendants: John W. Shaw, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.; Seth Jason Reidenberg, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE.

For Garst Seed Company, Golden Harvest Seeds, Inc., Defendants: John W. Shaw, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Syngenta Seeds Inc., Syngenta Biotechnology, Counter Claimants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Monsanto Company, Monsanto Technology LLC, Counter Defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For Garwood Seed Co., Golden Seed Company, LLC, [*2] Sommer Bros. Seed Company, Thorp Seed Co., JC Robinson Seeds, Inc., Defendants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Advanta USA Inc, Syngenta Corporation, Syngenta Participations AG, Counter Defendants: John W. Shaw, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Garst Seed Company, Syngenta AG, Golden Harvest Seeds, Inc., Syngenta Corporation, Counter Defendants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

JUDGES: Sue L. Robinson, Chief Judge.

OPINION BY: Sue L. Robinson

OPINION:

MEMORANDUM OPINION

Dated: August 4, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

I. INTRODUCTION

On July 28, 2004, Syngenta Seeds, Inc. filed this antitrust action against Monsanto Company and Monsanto Technology LLC (collectively called "Monsanto"), alleging that Monsanto has monopolized the markets for glyphosate-tolerant corn ("GA21 corn") traits and European corn borer-tolerant corn traits and has attempted to monopolize the foundation corn seed market. Monsanto filed an amended answer with counterclaims against Syngenta AG, Syngenta Participations AG, Syngenta Corporation, Syngenta Seeds, [*3] Inc., Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Co., and Golden Harvest Seed Inc. n1 In its counterclaims, Monsanto alleges that counterclaim defendants misappropriated Monsanto's GA21 event and are improperly selling Monsanto's event as their own. The counterclaims include: (1) Reverse passing off under the Lanham Act; (2) False advertising under the Lanham Act; (3) Violations of the Delaware Deceptive Trade Practices Act; and (4) Tortious interference with a contract. (D.I. 77)

n1 Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Co., and Golden Harvest Seeds, Inc., together with Syngenta Seeds, Inc., are collectively referred to as the "Syngenta U.S. Companies".

Before the court is a motion to dismiss by Syngenta AG and Syngenta Participations AG ("Participations") for lack of personal jurisdiction. n2 (D.I. 169)

n2 If the motion is denied, Syngenta AG and Participations also move for dismissal for failure to state a claim upon which relief can be granted, adopting the arguments advanced by the Syngenta U.S. Companies in their motion. (D.I. 132)

[*4]

II. BACKGROUND

**A. The Business of Syngenta AG and Participations**

Syngenta AG is a holding company located in Basel, Switzerland, formed in 1999 under the laws of Switzerland. (D.I. 171 at P 3) Syngenta AG became a public company in November 2000. (Id.) Syngenta AG has no employees and its business consists primarily of owning shares in companies in the agriculture, seeds and chemicals businesses. (Id.)

Syngenta AG owns Syngenta Corporation, the parent company to all of the other Syngenta U.S. Companies engaged in the distribution, marketing and sale of genetically modified corn seeds. (D.I. 185 at P 5)

Participations is a Swiss company, located in Basel, Switzerland, which is a wholly owned subsidiary of Syngenta AG. (D.I. 171 at P 4) Like Syngenta AG, Participations is a holding company with no employees. (Id.) Participations owns interests in companies located outside of Switzerland that are in the agriculture, seeds and chemicals businesses. (Id.) Participations also owns intellectual property rights, which it licenses principally to affiliated companies. (Id.)

**B. Business of the Sygnenta U.S. Companies**

Syngenta Corporation is a Delaware [*5] corporation with its principal place of business in Wilmington, Delaware. (D.I. 172 at P 3) It is a holding company that owns, either directly or indirectly, Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., and Garst Seed Company. n3 (Id.) Syngenta Corporation is a wholly-owned subsidiary of Participations and it is only one of more than 100 subsidiaries worldwide ultimately owned by Syngenta AG. (D.I. 171 at P 18)

n3 The other Syngenta U.S. Companies are majority owned, directly or indirectly, by GH Holding, Inc., a wholly-owned subsidiary of Participations. (D.I. 172 at P 18)

Syngenta Seeds, Inc. was formed under the laws of Delaware and is headquartered in Golden Valley, Minnesota. (D.I. 172 at P 5) It is engaged, among other things, in the production, marketing and sale of commercial seeds, including hybrid corn seeds. (Id.)

**C. Contacts With Delaware**

Syngenta AG's Executive Committee is based at corporate headquarters in Basel, Switzerland. (D.I. 185 at ex. 8) The Executive Committee is [*6] "responsible for the operational management of the Company." (Id.) The

Executive Committee consists of a Chief Executive Officer ("CEO"), the Chief Operating Officers ("COO") of the Crop Protection and Seed business, and the heads of Syngenta AG's global functions. (Id.) Individual members of the Executive Committee include: (1) Michael Mack, who is based in Basel and is Chairman and President of Syngenta Corporation in Delaware and the COO of Syngenta Seeds in Minnesota; (2) Jeff Beard, who is the COO of Syngenta Seeds; (3) John Atkin, who is the COO of Syngenta Corporation in Delaware and the COO of Syngenta Crop Protection in North Carolina; (4) David Lawrence, who is the head of Research and Technology for Syngenta AG and sits on the board of directors of Syngenta Biotechnology, Inc.; (5) Richard Steiblin, a former member of the Executive Committee, who also served as a board member of Syngenta Corporation in Delaware. (Id. at exs. 8, 9, 11, 12, 14, 15)

Each of the Syngenta U.S. Companies has its own board of directors, which is separate from the boards of Syngenta AG and Participations, as well as from the Syngenta AG Executive Committee. (D.I. 171 at P 21; D.I. 172 [*7] at P 12) There are no overlapping members on the boards of Syngenta AG and the Syngenta U.S. Companies. (D.I. 171 at P 21) A few of the Participations directors and some Executive Committee members serve on the boards of certain of the Syngenta U.S. Companies. (D.I. 171 at ex. B) The board of directors of Syngenta AG has its own meetings, at times and locations separate and apart from the meetings of any Syngenta U.S. Companies' boards and the board of directors of Participations generally acts by written consent. (D.I. 171 at P 12, 21)

Syngenta AG and Participations are not authorized to, and do not, direct the day-to-day operations of the Syngenta U.S. Companies. (D.I. 171 at P 19) The Syngenta U.S. Companies are managed by their own officers and employees, who have responsibility for the day-to-day operation of the business. (D.I. 172 at P 10) For example, Syngenta Seeds, Inc. and its United States affiliates in the seeds business develop and implement the United States sales and marketing strategy for GA21 corn seed. (Id.) These companies make the day-to-day decisions on what, where, when, and how to sell GA21 corn seed. (Id.) They hire and fire their own sales forces, [*8] adopt their own branding strategies, set their own prices, run their own promotions, and decide on their own which customers to target. (Id.)

The Syngenta U.S. Companies maintain office, production, research, sales and distribution facilities in the United States, separate from the operations of Syngenta AG and Participations, neither of which has any facilities in the United States. (D.I. 171 at P 22; D.I. 172 at P 11) Syngenta Corporation and its subsidiaries also maintain their own books and records and prepare their own financial statements. (D.I. 171 at P 24; D.I. 172 at P 13) Syngenta Corporation files its own United States tax returns. (D.I. 172 at P 13) In accordance with Swiss law and international accounting standards, Syngenta AG does prepare a consolidated financial statement for it and its subsidiaries, which includes the results of Syngenta Corporation and its subsidiaries. (D.I. 171 at P 24) However, Syngenta Corporation and its U.S. affiliates are responsible for preparing their own financial statements, which are then consolidated with Syngenta AG's results. (D.I. 171 at P 24; D.I. 172 at P 13)

**D. Syngenta AG and Participations' Strategy to Misappropriate [*9] GA21 for Sale in the United States**

A four day meeting was held in Washington, D.C. to orchestrate a "strategy for bringing Syngenta branded GA21 to the [U.S.] market." (D.I. 185 at ex. 1) The meeting was attended by Adrian Dubock, the head of mergers and Acquisitions for Participations in Basel; Marian Flattery, the head of Global IP and Licensing for Participations in Basel; Ed Resler, Vice President and General Counsel, Plant Science, of Syngenta Seeds, Inc. in Minnesota; Jeff Stein, Regulatory Director at Syngenta Biotechnology, Inc. in North Carolina; and Erik Dunder, Regulatory Manager for GA21 for Syngenta Biotechnology, Inc. (D.I. 185 at ex. 1)

To implement its strategy, Syngenta AG assembled a unit called the Corn Business Team. (D.I. 185, ex. 16 at 17) Until 2004, the Corn Business Team was formally a part of Syngenta AG and reported directly to Syngenta AG's Business Development Leadership and Technical Review Committees. (D.I. 185, ex. 16 at 152) The Corn Business Team was comprised of employees from Syngenta AG, Syngenta International AG, Syngenta Seeds, Syngenta Crop Protection, Syngenta Biotechnology, and Syngenta Corporation. n4 (D.I. 185, ex. 32 at 3, 5.1) The [*10] Corn Business Team required Syngenta AG's approval for important business decisions, such as deciding on a logo for the Agrisure trademark. (D.I. 185, ex. 37 at 3)

n4 One member, Bill Dickheiser, was located in Delaware. (D.I. 185 at ex. 32)

E. Syngenta AG's Control Over Business Decisions n5

1. Delaware meeting

A meeting took place in May of 2002 in Wilmington, Delaware. (D.I. 310, ex. A at 1) David Jessen did not attend the meeting, but testified regarding a Power Point presentation given at the meeting. (D.I. 310, ex. A at 1) In attendance and participating in the meeting were members of Syngenta AG's management and various employees of the Syngenta U.S. Companies. (D.I. 310, ex. A at 1) The goal of the meeting was to "gain a better understanding of the competitive threat we face from [the Monsanto product]." (Id.) The presentation sets forth other specific goals of the meeting, including: (1) Review a number of short-term actions that Syngenta n6 can take to reduce the penetration of Monsanto's [*11] product; (2) Consider the long term strategic options available to Syngenta to redefine its competitive position in the marketplace; and (3) Discuss obstacles to impact, how to overcome these obstacles, and next steps. (D.I. 310, ex. A at 2) The "Five Pillars" of the meeting were discussed: (1) "Create doubt about claims - Syngenta disputing Monsanto's claims about the performance and safety of its Roundup Ready trait;" (2) "Offer compelling alternatives -Syngenta offering its conventional seed along with its selective herbicide rather than Monsanto's Roundup Ready trait along with Roundup;" (3) "Drive up switching costs - Syngenta offering its customers financial incentives not to switch to Roundup Ready;" (4) "Non-market activities - Syngenta initiating legal action to impede Roundup Ready's growth;" and (5) "Redefine the playing field - Syngenta would counter Monsanto's and Pioneer's strategy of marketing their products as a complete package." (D.I. 407, ex. 1 at 10) A Steering Committee was set up to "provide overall direction" and "make decisions" regarding the project. (D.I. 310, ex. A at 2) A number of Syngenta AG employees attending the Delaware meeting are on the Steering [*12] Committee. (D.I. 310, ex. A at 2)

n5 The court denies Monsanto's request for jurisdictional discovery due to its two supplemental record submissions and the extensive discovery already performed. However, the court will consider the supplemental record produced and, therefore, grants Monsanto's two motions to supplement the record. (D.I. 310, 407)

n6 The record is unclear as to whether the presentation was directed to Syngenta AG or the Syngenta U.S. Companies. The facts were derived from a business presentation and there is no clarification from Monsanto regarding what entities are encompassed by the term "Syngenta."

2. Syngenta AG's Executive Committee

Syngenta AG's Executive Committee had the "final say" over whether a product was commercialized. n7 (Id. at 7) Approval was also required before going forward in a development stage. (Id.) The final budget for a product required approval from the Executive Committee of Syngenta AG. Before Syngenta Seeds could invest in a capital item or commit [*13] to a capital item, it had to get the approval of the Executive Committee in Switzerland. (D.I. 310, ex. A at 8) The CEO of Syngenta AG and the Executive Committee also made decisions regarding the acquisition of Garst and Golden Harvest. (D.I. 310, ex. A at 9, 10)

n7 However, related specifically to GA21, the approvals in place were not addressed in the testimony. (D.I. 310, ex. A at 7)

Syngenta AG's Executive Committee was allegedly involved in the development, approval and execution of a strategy to: (1) Acquire certain rights to GA21 from Bayer AG; (2) Acquire seed companies (Garst and Golden Harvest) with access to Monsanto's GA21; (3) Obtain Monsanto GA21 from those seed companies; and (4) Sell the Monsanto GA21. (D.I. 407, ex. 1 at 2) Various Syngenta AG employees including David Jones (member of Syngenta AG's Executive Committee), Adrian Dubock (head of Mergers and Acquisitions for Syngenta AG), and Marian Flattery (head of Global IP and Licensing for Participations) participated in internal meetings leading [*14] up to the Bayer AG agreement. (D.I. 407, ex. 1 at 4-5) Furthermore, Syngenta AG had ultimate approval over the acquisition and licensing of Bayer's GA21 rights. Syngenta AG signed the Agreement for Scientific Evaluation of Transgenic Material transferring certain GA21 material to Syngenta AG, and

Participations' Marian Flattery and Adrian Dubock signed the Acquisition Agreement with Bayer AG relating to certain rights in GA21 owned by Bayer AG. (D.I. 407, ex. 1 at 5) Mr. Dubock and Ms. Flattery also executed the subsequent Amendment to the Agreement for Scientific Evaluation of Transgenic Materials with Bayer AG. (D.I. 407, ex. 1 at 5) Syngenta AG was involved in the communications surrounding the public announcement of the Agreement. (D.I. 407, ex. 1 at 6)

Dr. Sorenson, head of Syngenta's n8 United States corn and soybean business, reported directly to Syngenta AG Executive Committee member Jeff Beard and his successor Michel Mack on many issues, including marketing strategy and financials of the business. (D.I. 407, ex. A1, 113-14) Dr. Sorenson spoke to Mr. Beard (and later Mr. Mack) an average of once a week or once every two weeks. (D.I. 407, ex. A1 at 115) Dr. Sorenson provided [*15] the Executive Committee with regular written reports on the United States corn seed business. (D.I. 407, ex. A1 at 138-39) Dr. Sorenson would fly to Switzerland to have in-person meetings to discuss, among other things, the strategy to enter into the glyphosate tolerant seed business. (D.I. 407, ex. A1 at 115-16)

n8 Again, due to the excerpting of the deposition testimony, the record is unclear as to what entity "Syngenta" encompasses in this context.

Dr. Sorenson made several presentations to Syngenta AG's Executive Committee regarding the United States corn and soy business, the Garst and Golden Harvest acquisitions, possibilities of joint ventures, and five year business plans, including one for the United States corn seed business. n9 (D.I. 407, ex. A1 at 16-7) Leadership teams with responsibilities for corn seed strategy in the United States included Syngenta AG employees. (D.I. 407, ex. A1 at 17)

n9 Tom Klevorn, head of NK Brands, made a presentation on GA21 to the Executive Committee. Jeffrey Stein, director of Regulatory Affairs for North America, made a presentation to the Executive Committee on the regulatory assessment of GA21. (D.I. 407 at 17)

[*16]

## III. STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. Provident Nat'l Bank v. California Federal Sav. & Loan Asso., 819 F.2d 434, 437 (3d Cir. 1987). To establish personal jurisdiction, a party must allege facts sufficient to satisfy two requirements, one statutory and one constitutional. See Reach & Assocs., P.C. v. Dencer, 269 F. Supp. 2d 497, 502 (D. Del. 2003). With regard to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long arm statute. Id. As for the constitutional basis, the court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. Id. In cases involving foreign parties, the Supreme [*17] Court has stated that "[g]reat care and reserve should be exercise when extending our notions of personal jurisdiction into the international field." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 115, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)

## IV. DISCUSSION

The Delaware long arm statute permits the exercise of personal jurisdiction over a nonresident who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply service or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the

> State:
> (5) Has an interest in, uses or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is [*18] made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). Pursuant to subsection (c)(1)-(3) and (5)-(6), specific jurisdiction may be established if the cause of action arises from contacts with the forum. Applied Biosystems, Inc. v. Cruachem, LTD, 772 F.Supp. 1458, 1466 (D. Del. 1991). Subsection (c)(4) provides for general jurisdiction, which requires a greater extent of contacts, but which provides jurisdiction even when the claim is unrelated to the forum contacts. Id.

It is apparent from the record that the individual conduct of Syngenta AG and Participations does not satisfy the jurisdictional requirements cited above. Syngenta AG and Participations are holding companies that do not conduct business in Delaware. They are not registered to do business in Delaware. They do not produce, market or sell corn seed or any product in Delaware. They do not have a bank account, a telephone number or an address in Delaware. They do not have "contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim. [*19] " Red Sail Easter Ltd Partners, L.P. v. Radio City Music Hall Productions, Inc., 1991 Del. Ch. LEXIS 113, *8, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991).

The only personal contact these parties have had with Delaware is the meeting that took place in this State in May 2002. Certainly such a limited activity is insufficient to establish general jurisdiction. Likewise, this court cannot assert specific jurisdiction over Syngenta AG and Participations based on their conduct at the 2002 meeting. Although general marketing strategies were discussed, there is no record evidence that the acts identified in Monsanto's counterclaims took place in Delaware at that meeting.

The question remains whether the Syngenta U.S. Companies should be considered "agents" of Syngenta AG and Participations and, if so, whether the activities of the Syngenta U.S. Companies within the State of Delaware satisfy the requirements of the Delaware long arm statute.

**A. Agency**

Monsanto asserts that the Syngenta U.S. Companies are general agents of Syngenta AG and Participations and, therefore, their acts confer personal jurisdiction in Delaware. As explained in Applied Biosystems, Inc. v. Cruachem, LTD, 772 F.Supp. 1458 (D. Del. 1991), [*20] the agency theory

> examines the degree of control which the parent exercises over the subsidiary. . . . The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant. . . .
>
> If any agency relationship is found to exist, courts will not ignore the separate corporate identities of parent and subsidiary, but will consider the parent corporation responsible for specific jurisdictional acts of the subsidiary.

Id. at 1463. "An agency relationship alone, however, is not sufficient to confer jurisdiction. Rather, the result of finding such an agency relationship is simply that we may attribute certain of [the Syngenta U.S. Companies'] acts to [Syngenta AG and Participations] in assessing whether the requirements of the Delaware long-arm statute have been satisfied." Id. at 1464.

Monsanto relies on several aspects of the relationship between [*21] the parties to establish that the Syngenta U.S. Companies are general agents of Syngenta AG and Participations. More specifically, Monsanto asserts that there is: (1) An overlap of some officers and directors; (2) Transferring of employees; and (3) Syngenta AG's involvement in formulating and approving strategic policy (e.g., meetings with the Executive Committee

regarding the United States strategy and budgetary issues), major capital expenditures (e.g., acquiring GA21 rights), and key decisions (e.g., the Garst and Golden Harvest acquisitions).

Under Delaware case law, however, the facts asserted by Monsanto are not sufficient to establish an agency relationship. See Akzona Inc. v. E.I. Du Pont Nemours & Co., 607 F.Supp. 227 (D. Del. 1984); n10 Sears, Roebuck & Co v. Sears, 744 F.Supp. 1297 (D. Del. 1990). n11 The facts of record do not reflect a situation where the parent company is involved in manufacturing or production activities and the subsidiary is acting as the parent's distributor or sales agent. See C.R. Bard Inc. v. Guidant Corp, 997 F.Supp. 556, 561 (D. Del. 1998). The Syngenta U.S. Companies make their own decisions [*22] about day-to-day activities, and design, manufacture, market and distribute the GA21 corn. See Akzona Inc., 607 F.Supp. at 238. n12 No agency relationship has been demonstrated.

N10 The Akzona court found no agency relationship between a parent and its wholly owned subsidiary, where there was some overlap between the board of directors, references to subsidiaries as divisions of the parent in the annual report, requirement that parent approve capital expenditures by subsidiaries exceeding $ 850,000, references in board meetings and reports to the development of products as the parent company's "decision" or "project," parent company taking credit for the product project in its annual report, parent company's negotiation with an agency of the Dutch government to set up a joint venture, parent company's guarantee of 50% of the Dutch government loans to the subsidiaries, and parent company's participation in the decision to bring a declaratory judgment.

n11 The Sears court found no agency relationship when there was no evidence that the subsidiary could enter into negotiations or binding agreements for the parent or act for the parent in any other way in Delaware.

[*23]

n12 The meeting in Delaware is the only event that could arguably reflect an agency relationship if, at that meeting, the details of the alleged misappropriation plan were explored. As noted above, the record is devoid of any evidence that suggests the participants at the Delaware meeting discussed a misappropriation plan or any actions that are alleged to constitute the misappropriation.

### B. Delaware Long Arm Statute

Even if an agency relationship were shown, Monsanto has not carried its burden to demonstrate that the activities directed or controlled by Syngenta AG and Participations are the jurisdictional acts of Syngenta AG and Participations. n13 See C.R. Bard Inc, 997 F.Supp. at 560 ("The agency theory requires not only that the precise conduct shown to be instigated by the parent be attributable to the parent, but also that such conduct satisfy § 3104(c)(1)."). "When applying the agency theory, a court should focus its inquiry on the arrangement between the parent and the subsidiary, the authority given in that arrangement, and the relevance of that arrangement [*24] to the . . . claim." Id. at 560. The counterclaims at issue are: (1) Reverse passing off under the Lanham Act; (2) Violations of the Delaware Deceptive Trade Practices Act; (3) False advertising under the Lanham Act; and (4) Tortious interference with a contract.

n13 For this reason, the court need not reach the constitutional analysis.

#### 1. Specific Jurisdiction § 3104(c)(1), (2), (3)

Jurisdiction under § 3104(c)(1) or (2) can be obtained if, through the Syngenta U.S. Companies, Syngenta AG and Participations have conducted any business or contracted to supply services or things in Delaware. Section 3104(c)(3) provides for jurisdiction when a nonresident or its agent has caused tortious injury in Delaware by an act or omission that occurred in this State. Applied Biosystems, 772 F.Supp. at 1467.

It is established that the incorporation of the Syngenta U.S. Companies in Delaware would provide specific jurisdiction over any tort causes of action related to the act of incorporation. [*25] See Applied Biosystems at 1467. However, "the mere fact that a

non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent." Ace & Co. v. Balfour Beatty PLC, 148 F.Supp.2d 418, 422-23 (D. Del. 2001). None of the counterclaims rise from the act of incorporation.

The reverse passing off claim and deceptive trade practices claim are based on the sale and marketing of GA21 corn seed without acknowledging Monsanto as the source of the GA21 event. There is no evidence that Syngenta AG and Participations direct or control sales or marketing in Delaware. To the contrary, the evidence that the Syngenta U.S. Companies report to and update the Executive Committee regarding these decisions tends to substantiate the opposite conclusion. The 2002 meeting is equally unavailing to establish jurisdiction. The 2002 meeting in Delaware is not related to and does not give rise to any of the counterclaims. In fact, the meeting took place several years prior to the relevant time period of the counterclaims. Finally, the tortious interference claim is based on a contract between [*26] Syngenta Seeds, Inc. and Advanta USA, Inc. and has no relationship to Delaware, as it was neither negotiated nor signed in Delaware.

Monsanto also asserts a stream of commerce theory, citing A.V. Imports, Inc. v. Col De Fratta, 171 F.Supp.2d 369 (D.N.J. 2001). n14 However, as the court in A.V. Imports clearly states, "the mere placement of a product into the stream of commerce with an awareness that it may end up in a specific state is not enough to establish minimum contacts." Id. at 372 (citing Asahi Metal Industry Co., 480 U.S. at 107). Monsanto has produced no evidence that Syngenta AG or Participations, or any of the Syngenta U.S. Companies, "purposefully availed" themselves of the forum state.

> n14 The court is not confident this precedent is applicable to the case at bar, but need not decide this issue as there is no showing that Delaware was in any way targeted, as is required under this theory.

Press releases and similar communications do not give [*27] rise to personal jurisdiction unless they are "expressly aimed" at the relevant forum. See IMO Indus. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998). Syngenta International AG issued a press release on May 12, 2004 from its Swiss headquarters, but it was not "specifically directed toward Delaware residents" nor was it "part of a 'sustained promotional campaign'" in Delaware. Applied Biosystems, 772 F.Supp. at 1467; Virgin Wireless, Inc. v. Virgin Enters., Ltd., 201 F. Supp. 2d 294, 299 (finding a single press release attributed to English company cannot justify personal jurisdiction in Delaware).

Finally, Monsanto asserts that the filing of the antitrust litigation in Delaware serves as a basis for personal jurisdiction. The court finds this argument unpersuasive. The holding in Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., 833 F.Supp. 437 (D. Del. 1993), establishes that the filing of a lawsuit may be relevant to establishing jurisdiction when the claim at issue is sham litigation. Again, the filing of the lawsuit bears no relevance to the counterclaims at issue and, therefore, cannot serve as a basis for personal jurisdiction.

2. General [*28] Jurisdiction § 3104(c)(4)

Section 3104(c)(4) provides for general jurisdiction in tort cases. Jurisdiction is authorized if Syngenta AG or Participations, through its agents, "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State."

That the subsidiaries are incorporated in Delaware is not imputed to Syngenta AG and Participations. See Applied Biosystems, 772 F.Supp. 1458, 1469. The act of incorporating a subsidiary in Delaware is not enough to confer general jurisdiction in this instance because it does not appear that Syngenta AG and Participations have engaged in a pattern of corporate dealings under Delaware law. See Sears, 744 F.Supp. at 1306 (finding that the defendant only owned one Delaware subsidiary and had not engaged in a pattern of corporate dealings in Delaware). In Altech Indus., Inc. v. Al Tech Specialty Steel Corp., 542 F.Supp. 53 (D. Del. 1982), the court held it could exercise jurisdiction over a non-Delaware corporation under § 3104(c)(4) where: (1) The defendant owned eighty-two [*29] subsidiaries and a "vast majority" of these were incorporated in Delaware; and (2) The defendant had "utilized the benefits of the Delaware corporation law in various ways," including conducting mergers and acquisitions with, and amending the articles of incorporation of, its many subsidiaries. Id. at 55. The court does not find that Syngenta AG and Participations

have availed themselves of the general jurisdiction of Delaware.

C. Fed. R. Civ. P. 4(k)(2)

When a foreign defendant does not have sufficient minimum contacts with any single forum to comport with due process, Rule 4(k)(2) allows an alternate jurisdictional basis to pursue a claim arising under federal law, where defendant has sufficient nationwide contacts.

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service of process is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. (4)(k)(2) [*30] . The court must first determine that: (1) The case arises under federal law, and is not pending before the court pursuant to the court's diversity jurisdiction; and (2) The foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction there. United States v. International Bhd. of Teamsters, 945 F. Supp. 609, 617 (D. Del. 1997). The court can then ascertain whether plaintiff has demonstrated that defendant has sufficient aggregate contacts with the United States to comport with constitutional notions of due process. Id.

The court's analysis stops at the first step. The court finds that Monsanto has not satisfied its burden of proving the lack of state-specific contacts. See CFMT, Inc. v. Steag Microtech, Inc., 965 F. Supp. 561, 1997 WL 313161 (D. Del. 1997). Rule 4(k)(2) "provides a narrow exception which may subject an alien defendant to a federal court's personal jurisdiction." Id. at *7. "To satisfy this requirement, plaintiffs are required to make an affirmative representation that the defendant is not subject to the general jurisdiction of any state court." Id.; Telcordia Techs. v. Alcatel S.A., 2005 U.S. Dist. LEXIS 10194, *17, 2005 WL 1268061, [*31] at *5 (D. Del. May 27, 2005)("The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that [the plaintiff] bears the burden of demonstrating that [the defendant] is not subject to jurisdiction in any state."). While Monsanto asserts that it can argue Rule 4(k)(2) in the alternative of arguing that Delaware has personal jurisdiction, the court finds that Monsanto has not affirmatively represented that Syngenta AG and Participations are not subject to the jurisdiction of any state. Instead, Monsanto has tried only to shift the burden to Syngenta AG and Participations by arguing that, if the court finds no jurisdiction lies in Delaware, then no jurisdiction lies in any other state and Rule 4(k)(2) applies. See In re Lupron Marketing & Sales Practices Litig., 245 F. Supp. 2d 280, 302-03 (D. Mass. 2003). The only basis asserted by Monsanto that no jurisdiction lies in any other state is that Monsanto is unable to find any basis for jurisdiction through review of the discovery record and publicly available sources. Unfortunately, Monsanto does not elaborate on these bald assertions. Furthermore, since the filing [*32] of its original brief, Monsanto has submitted two motions to supplement the record with extensive deposition testimony. Yet, no evidence was presented in furtherance if its argument that Syngenta AG and Participations are not subject to jurisdiction in any state. Rather, Monsanto has extensively asserted that jurisdiction is proper in Delaware. Monsanto has also produced some tangential evidence that meetings have taken place in the United States other than Delaware, offices exist in states other than Delaware, and the GA21 corn is sold in the United States other than Delaware. The court is unwilling to merely take Monsanto's assertion that if jurisdiction does not lie in Delaware, jurisdiction does not lie anywhere else in the country. Monsanto has not fulfilled its burden in showing this element of Rule 4(k)(2); as a result, the court need not perform further analysis.

V. CONCLUSION

For the reasons discussed above, Syngenta AG and Syngenta Participations AG's motion to dismiss for lack of personal jurisdiction is granted. An order consistent with this memorandum opinion shall issue.

ORDER

At Wilmington this 4th day of August, [*33] 2006, consistent with the memorandum opinion issued this same date:

IT IS ORDERED that:

1. Syngenta's motion to dismiss (D.I. 132) is granted

Page 10

2006 U.S. Dist. LEXIS 54534, *33

with respect to counterclaims I and III.

2. Syngenta's motion to dismiss (D.I. 132) is denied with respect to counterclaim II.

United States District Judge

Sue L. Robinson

LEXSEE 2005 U.S. DIST. LEXIS 10194

**TELCORDIA TECHNOLOGIES, INC., Plaintiff, v. ALCATEL S.A. and ALCATEL USA, INC., Defendants.**

**Civil Action No. 04-874 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2005 U.S. Dist. LEXIS 10194**

**May 27, 2005, Decided**

COUNSEL: [*1] For Telcordia Technologies Inc., Plaintiff: Steven J. Balick, John G. Day, Ashby & Geddes, Wilmington, DE.

For Alcatel S.A., Defendant: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Alcatel USA Inc., Defendant: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE; Kevin M. Baird, Connoly Bove Lodge & Hutz, Wilmington, DE.

For Alcatel USA Inc., Counter Claimant: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE; Kevin M. Baird, Connoly Bove Lodge & Hutz, Wilmington, DE.

For Telcordia Technologies Inc., Counter Defendant: Steven J. Balick, Ashby & Geddes, Wilmington, DE.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINION BY: Gregory Moneta Sleet

OPINION:

MEMORANDUM

I. INTRODUCTION

On July 16, 2004, the plaintiff, Telcordia Technologies, Inc. ("Telcordia"), filed this patent infringement action against Alcatel S.A. ("Alcatel S.A.") and Alcatel USA, Inc. ("Alcatel USA"). Presently before the court is Alcatel S.A.'s motion to dismiss for lack of personal jurisdiction. For the following reasons, the court will grant the motion.

II. BACKGROUND

Alcatel S.A. is a French corporation [*2] with its principal place of business in Paris, France. Alcatel S.A. is the parent company of Alcatel USA, a Delaware corporation with its principal place of business in Plano, Texas. (D.I. 18 Ex. 2 PP 2-3.). It is a holding company that does not manufacture, sell, advertise, offer to sell, trade or import any goods or services in the United States or anywhere in the world. (*Id.* PP 3-5.) It does not maintain any offices or other facilities in Delaware, or the United States. (*Id.* P 7.) It neither owns nor leases any real property in Delaware or the United States, but it does own United States patents. (*Id.* P 8.) Alcatel S.A. does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. (*Id.* PP 9-10.)

Telcordia, a Delaware Corporation with its principal place of business in Piscataway, New Jersey, is the assignee and owner of the patent-in-suit, U.S. Patent No. 4,893,306 (the "'306 patent"). n1 The '306 patent relates to a method and apparatus for multiplexing circuit and packet traffic. The patent discloses a data transmission technique, [*3] or Dynamic Time Division Multiplexing ("DTDM"), that is compatible with the digital circuit transmission format, as well as the packet transmission format, thereby providing "a flexible migration strategy between present circuit networks and future broadband packet networks." (U.S. Patent No. 4,893,306 Abstract.) The complaint alleges that Alcatel S.A. and Alcatel USA have infringed, induced infringement of, and/or

contributorily infringed one or more claims of the '306 patent by making, using, offering for sale, selling and/or importing into the United States communication network products embodying the patented invention. (D.I. 1 PP 13-14.)

n1 The '306 patent was issued on January 9, 1990 and assigned to Bell Communications Research, Inc. ("Bellcore"), which became Telcordia in 1999.

III. STANDARD OF REVIEW

Alcatel S.A. moves to dismiss the complaint for lack of personal jurisdiction over the defendant. "Rule 12(b)(2) of the Federal Rules of Civil Procedure [*4] requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D.Del.2000). In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aereos de Angola v. Ronair, Inc.*, 544 F. Supp. 858 at 864-65 (D. Del. 1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elecs.*, 948 F. Supp. 338, 342 (D. Del. 1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions [*5] of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) (citation omitted). Specifically, Telcordia must show that Alcatel S.A. "purposefully availed itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108-09, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-15, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984).

In determining the jurisdictional question, the court must accept as true the allegations in the complaint. *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.*, 542 F. Supp. 53, 55 (D. Del. 1982). However, Telcordia, the plaintiff, bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Alcatel S.A. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001). [*6] To meet this burden, Telcordia must adduce facts which "'establish with reasonable particularity'" that jurisdiction over Alcatel S.A. exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.*, 936 F. Supp. 177, 193 (D. Del. 1996)).

IV. DISCUSSION

A. Delaware's Long-Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del. Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over Alcatel S.A. Alcatel S.A. contends that the court has no basis to assert jurisdiction, while Telcordia maintains that the conduct of Alcatel S.A. satisfies the requirements of subsections (c)(1) and (c)(3) of the long-arm statute.

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident or agent of a nonresident who "transacts any business or performs any character of work or service in the State." DEL. CODE ANN. tit. 10 § 3104(c)(1). Subsection (c)(3) gives the court the authority to exercise jurisdiction over a nonresident or agent of a nonresident who "causes tortious injury in the State by an act or omission [*7] in this State." DEL. CODE ANN. tit. 10 § 3104(c)(3). Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997). The Delaware Supreme Court has interpreted subsections (c)(1) and (c)(3) as specific jurisdiction provisions that require a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for

jurisdiction. *See La Nuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). In order to meet the requirements of subsections (c)(1) and (c)(3), Alcatel S.A.'s actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. v. Micron Technology*, 821 F. Supp. 272, 274 (D. Del. 1993).

Telcordia asserts that the court should exercise jurisdiction under § 3104(c)(1) and/or (c)(3) because Alcatel S.A.'s contacts with Delaware are attributable to its subsidiary, Alcatel USA, under the principles of [*8] agency. n2 The principles of agency allow a court to establish jurisdiction over the parent based upon its jurisdiction over a subsidiary. Under the agency theory, "the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction." *C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559 (D. Del. 1998) (citing *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Sup. 260, 266 (D. Del. 1989)). Thus, the agency theory "examines the degree of control which the parent exercises over the subsidiary." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991). The factors relevant to the court's examination include: (1) "the extent of overlap of officers and directors"; (2) "methods of financing"; (3) "the division of responsibility for day-to-day management"; and (4) "the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant." *Id.* If the court determines that an agency relationship exists, it may attribute certain [*9] actions of the subsidiary, Alcatel USA, to the parent corporation, Alcatel S.A., in assessing whether Telcordia has satisfied the requirements of the long-arm statute. *See id.* However, the mere existence of an agency relationship is not sufficient to confer jurisdiction. The court must still apply the Delaware long-arm statute. *See id.* at 1465 ("[A] finding of agency does not render the long-arm statute inapplicable, but simply implicates its 'or through an agent' provision.")

n2 Delaware law provides two theories that allow a court to exercise jurisdiction over a parent corporation based on its jurisdiction over a subsidiary: the alter ego theory and the agency theory. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991). Under the alter ego theory, the party showing jurisdiction must show fraud or inequity in the use of the corporate form for a court to "pierce the corporate veil," or attribute the actions of a subsidiary to the parent corporation. *Id.*; *see Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 266 (D. Del. 1989). Telcordia has neither asserted the existence of any fraud in the corporate structure of Alcatel S.A. and Alcatel USA nor introduced evidence that would support a finding of fraud. Accordingly, the court will not address this jurisdictional theory.

[*10]

Telcordia contends that Alcatel S.A. should be subject to jurisdiction under the agency theory because "Alcatel S.A. and Alcatel USA are closely knit together, effectively operating as one." (D.I. 20, at 10.) Telcordia alleges the following to support its contention of an agency theory of jurisdiction: (1) Alcatel S.A. makes it abundantly clear that the United States market is very important to it and raises funds in the United States; (2) it owns patents, *i.e.* property, in the United States; (3) it fails to distinguish among its multinational subsidiaries - that is, it consolidates descriptions of its activities with those of its subsidiaries; (4) it chose to incorporate Alcatel USA in Delaware; (5) its Senior Vice President, Mike Quigley ("Quigley") is the CEO of Alcatel USA; and (6) its website solicits requests for information concerning its products, including allegedly infringing products from Delaware residents. (*Id.* at 3-5, 10.) Telcordia further contends that, "at the very least," Alcatel USA has offered to sell in Delaware products accused of infringing the '306 patent and, therefore, transacts business in the state. In addition, because Alcatel USA committed these [*11] acts as Alcatel S.A.'s agent, they are attributable to Alcatel S.A. (D.I. 20, at 10.)

Before the court can determine whether it should attribute Alcatel USA's alleged acts in Delaware to Alcatel S.A., it must determine whether an agency relationship exists between the two corporations. As previously stated, in order to make this determination, the court must consider the extent of overlap of officers and directors between Alcatel USA and Alcatel S.A., the methods of financing with respect to the two corporations, the division of responsibility for day-to-day management between the two, and the process by which each corporation obtains its business. After having

considered these factors, the court concludes that Telcordia has not carried its burden. As to the first factor, Telcordia points to one overlap in officers between the two corporations: Quigley is Senior Executive Vice President of Alcatel S.A. and CEO of Alcatel USA. According to Alcatel S.A., there is a second overlap between the two corporations: its President and COO, Philippe Germond, is a member of the Board of Directors of Alcatel USA. (D.I. 23, at 3; D.I. 22 P 6.) This minor overlap, however, is not dispositive, [*12] as "it is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods*, 524 U.S. 51, 69, 141 L. Ed. 2d 43, 118 S. Ct. 1876 (1998) (citations omitted) (noting that it is "well established principle . . . that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"). As such, this factor does not weigh in favor of a finding of agency.

Likewise, the remaining factors do not weigh in favor of applying the agency theory in the present case. First, Alcatel S.A. is merely a holding company that does not manufacture, sell, or advertise in the United States, or anywhere in the world. (D.I. 18 PP 3-5.) Thus, this is not a case in which Alcatel S.A. manufactures a product and uses an independent distributor to sell its product. *Cf. C.R. Bard*, 997 F. Supp. at 561. In addition, Alcatel USA maintains its own executive team, which is responsible for the day-to-day management of Alcatel USA, and no employee of [*13] Alcatel S.A. is a member of the executive team of Alcatel USA. (D.I. 22 P 5.) It also maintains its own financial statements, separate from those kept by Alcatel S.A. (D.I. 22 P 10.) Alcatel USA files a consolidated United States federal income tax return that is separate from tax returns filed by Alcatel S.A. (*Id.* P 12.) Alcatel USA finances its day-to-day activities through funds generated from its business activities, including the manufacture, marketing and distribution of the accused infringing products. (*See id.* P 13.) Accordingly, the court finds that while there is a minor overlap of officers and directors between the parent and subsidiary, Telcordia has not produced sufficient evidence for the court to conclude that the specific combination of agency factors militates in favor of a finding that Alcatel USA was acting as Alcatel S.A.'s agent. Thus, sections (c)(1) and (c)(3) do not warrant the exercise of jurisdiction over Alcatel S.A. n3

n3 The court need not address whether jurisdiction in Delaware comports with the requirements of the Due Process Clause because it has no statutory authority under the Delaware long-arm statute to exercise jurisdiction over Alcatel S.A.

[*14]

**B. Federal Rule of Civil Procedure 4(k)(2)**

Telcordia next asserts that, even if the Delaware long-arm statute does not apply in the present case, the court should not grant Alcatel S.A.'s motion to dismiss because it has the authority to exercise personal jurisdiction over Alcatel S.A. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

FED. R. CIV. P. 4(k)(2). In order to establish jurisdiction pursuant to Rule 4(k)(2), (1) Telcordia's claim must arise under federal law; (2) Alcatel S.A. must lack sufficient contacts with any state to subject it to personal jurisdiction; and (3) Alcatel S.A. must have sufficient contacts with the United States [*15] as a whole to satisfy due process. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258-59 (3d Cir. 2000). Telcordia contends that all three requirements of Rule 4(k)(2) are satisfied. The court disagrees.

First, the parties do not dispute, nor could they, that Telcordia's claims arise under federal law. The complaint alleges that Alcatel S.A. has infringed, induced infringement of, and/or contributorily infringed the '306 patent. Patents and the protection of patent rights are the subject of Title 35 of the United States Code. 35 U.S.C. § 271 specifically provides the elements of patent infringement. Additionally, 28 U.S.C. § 1338 gives district courts original jurisdiction over patent actions. A patent infringement action, therefore, is one that arises

under federal law. Telcordia has thus satisfied the first requirement of Rule 4(k)(2).

Having found that the first requirement of Rule 4(k)(2) is satisfied, the court next must determine whether Alcatel S.A. is not subject to jurisdiction in any state. *See United States v. Offshore Marine Ltd.*, 179 F.R.D. 156, 160, 38 V.I. 422 (D.V.I. 1998); *Revak v. Lucatum A.B.*, 2005 U.S. Dist. LEXIS 11076, No. Civ. A. 03-4822, 2005 WL 1017771, at *2 (E.D. Pa. Apr. 28, 2005). [*16] As a preliminary matter, the court must determine whether Telcordia or Alcatel S.A. bears the burden of proving that Alcatel S.A. is not subject to the jurisdiction of any state. In *Offshore Marine Ltd.*, the United States District Court for the District of the Virgin Islands noted that "the question [of] which party bears the burden of proving. . . that the defendant is not subject to jurisdiction in any state appears to be an issue of first impression in this Court and in this Circuit, probably because it is generally the plaintiff's duty to allege and prove personal jurisdiction." *Offshore Marine Ltd.*, 179 F.R.D. at 160. Indeed, it appears that the Third Circuit has not yet addressed whether the plaintiff or defendant bears the burden of proving that the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, or what is known as the negation requirement. *See* Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 47 Fed. Appx. 73, 75 (3d Cir. 2002) (unpublished) (determining that negation issues need not be reached because the Due Process requirement of Rule 4(k)(2) was [*17] not satisfied). n4 Various district courts of the Third Circuit, however, have addressed the negation requirement and concluded that the plaintiff bears the burden of demonstrating that the defendant is not subject to jurisdiction in any state. *See Offshore Marine Ltd.*, 179 F.R.D. at 160 ("Accordingly to survive a motion to dismiss for want of personal jurisdiction, the plaintiff bears the burden to prove that [the defendant] is not otherwise subject to service of process in any state."); *see also Commissariat A L 'Energie Atomiquie v. Chi Mei Optoelectronics Corp.*, 293 F. Supp. 2d 423, 430 (D. Del. 2003), *vacated on other grounds by* 395 F.3d 1315 (Fed. Cir. 2005) (issue abandoned on appeal) ("Plaintiffs must also demonstrate that defendant is 'not subject to the jurisdiction of *any* state' under Rule 4(k)(2). Therefore, Rule 4(k)(2) "provides 'a narrow exception which may subject an alien defendant to a federal court's jurisdiction.'") The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that Telcordia bears the burden of demonstrating that Alcatel S.A. is not subject [*18] to jurisdiction in any state.

> n4 Likewise, it appears that the Federal Circuit has not had occasion to address the negation issue.

Here, Telcordia addresses the negation requirement only by asserting that, based on the information provided by Alcatel S.A. in its opening brief and the publicly available information regarding Alcatel S.A., an analysis of whether any other state has personal jurisdiction over Alcatel S.A. would not be "significantly different" from the analysis regarding Alcatel S.A.'s personal jurisdiction under the Delaware long-arm statute. (D.I. 20, at 13.) According to Telcordia, if the court cannot exercise jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute then Rule 4(k)(2) applies. (*Id.*) The court is not persuaded by this argument, however, and concludes that Telcordia's conclusory statement does not support a finding that Alcatel S.A. lacks sufficient contacts with any state to subject it to personal jurisdiction. Thus, Telcordia has not satisfied the second requirement [*19] of Rule 4(k)(2).

Even assuming Telcordia was able to show that Alcatel S.A. was not subject to jurisdiction in any other state, it cannot satisfy the third requirement of Rule 4(k)(2) because the record evidence demonstrates that Alcatel S.A. lacks sufficient contacts with the United States as a whole to satisfy due process. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.'" *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)(citations omitted). In order for the court to find that Alcatel S.A. has "minimum contacts" with the United States, Telcordia must demonstrate either specific or general personal jurisdiction. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984). The court can assert specific jurisdiction over a nonresident defendant that has "purposefully directed his activities at residents of the forum and the litigation [*20] results from alleged injuries that 'arise out of or related to' those activities."

*Burger King*, 471 U.S. at 472 (citations omitted). The court can assert general jurisdiction over a defendant when its contacts with the forum, regardless of their relation to the litigation, are "continuous and systematic." *Helicopteros Nacionales*, 466 U.S. at 416. The court will address the reasons it cannot exercise specific or general jurisdiction over Alcatel S.A. in turn.

When determining whether a defendant's contacts give rise to specific jurisdiction, "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *BP Chems.*, 229 F.3d at 259 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286). In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). [*21] Thus, a court usually must determine the character of the defendant's activity in the forum, and whether the plaintiff's claim arises out of or has a substantial connection with that activity. *See Burger King*, 471 U.S. at 475-76. In the present case, however, the court need not make this determination because Telcordia bases its argument on the specific jurisdiction subsections of the Delaware long-arm statute which, as discussed in Section IV.A., *supra*, do not warrant the exercise of jurisdiction over Alcatel S.A. because Alcatel USA is not its United States agent.

The court also concludes that Alcatel S.A.'s contacts with the United States that are unrelated to the present litigation are not "continuous and systematic" so as to give rise to general jurisdiction. Telcordia contends that general jurisdiction exists because there is "ample evidence of Alcatel S.A.'s contacts with the United States." (D.I. 20, at 12.) According to Telcordia, this evidence includes the following: (1) Alcatel S.A. is listed on the New York Stock Exchange; (2) Alcatel S.A. owns property in the United States, specifically hundreds of patents; (3) Alcatel S.A.'s website fails to distinguish [*22] among its multinational subsidiaries and uses its name in the name of its subsidiaries; (4) Alcatel S.A.'s website describes its worldwide activities, including its activities in the United States, but never discloses that its United States activities are performed by one of its subsidiaries; and (5) Alcatel S.A. incorporated its subsidiary, Alcatel USA in Delaware. The court does not find the evidence sufficient to support Telcordia's assertion.

First, as previously discussed, Alcatel S.A. is a French holding company that does not make, sell, export or import any products into the United States. Alcatel S.A. does not maintain any offices in the United States, or lease or own any real property in the United States. It does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. Alcatel S.A.'s employees also all reside outside of the United States.

Moreover, while Alcatel S.A. is listed on the New York Stock Exchange as an American Depository Receipt ("ADR"), this factor alone does not justify the exercise of jurisdiction. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 330 (S.D.N.Y. 2003); [*23] *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)("The Court is not persuaded that Congress intended for the courts to assert jurisdiction under Rule 4(k)(2) whenever a corporation lists its stock on a United States exchange."). Likewise, "ownership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state besides the District of Columbia." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 1996 U.S. Dist. LEXIS 11696, No. C-95-3577 DLJ, 1996 WL 467293, at *6 n. 5 (N.D. Cal. July 24, 1996) (citing 35 U.S.C. § 293). Furthermore, incorporating a subsidiary in the United States does not give rise to jurisdiction unless the litigation is related to the act of incorporation and, here, it is not related. *See Applied Biosystems*, 772 F. Supp. at 1468. Additionally, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conduct activity in the forum, knowingly interacting with residents of the forum state via [*24] its web site." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Here, Telcordia has not adduced evidence to support a finding that Alcatel S.A.'s web site was intended to reach customers in Delaware, or any other state in the United States. n5

n5 Telcordia asserts that there can be "no question that Alcatel S.A.'s website solicits requests for information concerning its products (including allegedly infringing products) from Delaware residents, pointing to a "website page

concerning the possible purchase of Alcatel products" with Delaware chosen as the potential buyer's state. (D.I. 20, at 5; Ex. 11.) Telcordia misses the point, however, as the record does not support any documented sales to persons in Delaware (or any other state in the United States). Nor does it support any interaction between Alcatel S.A. and Delaware residents, as the web site page, in Telcordia's own words, demonstrates only the *possible* purchase of Alcatel products.

The court also disagrees with [*25] Telcordia's assertion that Alcatel's website "never discloses that its U.S activities are performed by some entity (or entities) other than Alcatel S.A." (D.I. 20, at 4.) First, when one enters the Alcatel website and clicks on "United States" as its country region the web address changes from "www.alcatel.com" to "www.usa.alcatel.com." Further, when one clicks on the "About Alcatel" dropdown menu and selects "Alcatel in the U.S.A.," he or she is provided with information regarding Alcatel USA, including its business locations. Moreover, the web page states "it is the policy of *Alcatel USA* to satisfy the expectation of our customers." www.usa.alcatel.com/company/ausa_info.jhtml (last visited May 23, 2005)(emphasis added). Thus, the Alcatel web site does distinguish Alcatel S.A. from Alcatel USA. This fact does not support the exercise of jurisdiction over Alcatel S.A. Accordingly, Alcatel S.A.'s alleged contacts with the United States do not provide a basis for the court to conclude that it has a "continuous and systematic" presence in the United States.

Nor does the combination of Alcatel S.A.'s alleged contacts with the United States provide the court with a sufficient basis [*26] to conclude that the requirements for general jurisdiction are met. *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254 (3d Cir. 2000) is instructive on this point. In *BP Chemicals*, the Third Circuit found that a foreign defendant did not have sufficient contacts with the United States as a whole to justify the exercise of Rule 4(k)(2) jurisdiction, even though the defendant exported its products to the United States, held a small ownership interest in a Delaware corporation, and entered into contracts requiring its personnel to travel to the United States for training. *Id.* at 263. The Court of Appeals also found that the cumulative effect of the defendants contacts did not meet the requirements for general jurisdiction. In the present case, Alcatel S.A.'s alleged contacts fall short of those alleged by the plaintiff in *BP Chemicals*. As such, the court finds that there is no basis for exercising Rule 4(k)(2) jurisdiction over Alcatel S.A.

### C. Jurisdictional Discovery

Lastly, Telcordia asserts that if the court does not conclude that Alcatel S.A. "is subject to personal jurisdiction under the *Delaware long-arm statute*, [*27] " it should permit limited jurisdictional discovery rather than granting Alcatel S.A.'s motion to dismiss. (D.I. 20, at 11)(emphasis added). Telcordia asserts that its claims against Alcatel S.A. are not clearly frivolous, and that discovery is necessary due to the "limited publicly available information" that it has gathered without discovery. (D.I. 20, at 11.) Telcordia further asserts that the case will not be delayed as a result of any discovery on the personal jurisdiction issue.

Conversly, Alcatel S.A. contends that Telcordia's claims against it are clearly frivolous, because Telcordia has not carried its burden of making "a *prima facie* showing that Alcatel S.A. is subject to personal jurisdiction in Delaware." (D.I. 23, at 17.) In addition, Alcatel S.A. contends that it "strains belief that Plaintiff (1) did not know which entities in the Alcatel Family to sue, and (2) that Alcatel S.A. was not one of them." (*Id.* at 17.) According to Alcatel S.A., Telcordia has had prior business interactions with Alcatel entities regarding the patent-in-suit, as well as other communications technology. (*Id.* at 2.) Alcatel S.A. further contends that Telcordia is "arguably the most [*28] knowledgeable company in the telecommunications field with respect to what products are sold by the various players in the market." (*Id.* at 1.) Thus, it "is hard to believe that it [Telcordia] does not know exactly who the relevant players in the market are." (*Id.*) Lastly, Alcatel S.A. contends that Telcordia is engaging in a fishing expedition, noting that the United States Supreme Court has held that courts should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." (*Id* at 18-19 (citing *Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern Dist. Iowa*, 482 U.S. 522, 546, 96 L. Ed. 2d 461, 107 S. Ct. 2542 (1987)). The court is persuaded by Alcatel S.A.'s argument.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction,

courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations omitted). Thus, resolution of Telcordia's request [*29] "begins with the presumption in favor of allowing discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. Oct. 5, 1995). However, "the court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum." *Id.* at 475. For example, "a plaintiff may not rely on the bare allegations in his complaint to warrant further discovery." *Id.* at 476. Likewise, "a mere unsupported allegation that [a] defendant 'transacts business' in an area is 'clearly frivolous.'" *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997); *see B.L. Poe v. Babcock Int'l*, 662 F. Supp. 4, 7 (M.D. Pa. Mar. 14, 1985) ("Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction."). Rather, "there must be *some* competent evidence to demonstrate that personal jurisdiction [*30] over [a] defendant might exist before allowing discovery to proceed." *Hansen*, 163 F.R.D. at 475. Furthermore, "when the lack of personal jurisdiction is clear, . . . further discovery serves no purpose and should be denied." *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. Appx. 322, 338 (Fed. Cir. 2003) (unpublished).

Here, as previously discussed in Section IV.A., *supra*, the record evidence regarding Telcordia's agency theory of specific jurisdiction is insufficient to support the conclusion that Alcatel USA was acting as Alcatel S.A.'s agent. In addition, Telcordia did not assert that the court could exercise personal jurisdiction over Alcatel S.A. based on the general jurisdiction subsection of the Delaware long-arm statute. For these reasons, the court believes it is clear that it may not exercise personal jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute. Thus, further discovery would not be worthwhile. In other words, granting Telcordia's request for jurisdictional discovery would amount to allowing it to conduct a fishing expedition in order to form a basis for jurisdiction. The court, therefore, will deny [*31] Telcordia's request for jurisdictional discovery.

Dated: May 27, 2005

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Alcatel S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 17) is GRANTED.

2. Telcordia's request for jurisdictional discovery is DENIED.

Dated: May 27, 2005

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT 2

REG'D PAID £40 COMPANIES REGISTRATION OFFICE

COMPANIES REGISTRATION OFFICE 21 MAY 1986

THE COMPANIES ACT 1985

Company Number ...1994703 | 6........

SPECIAL RESOLUTION OF

..............................BRACEGALA....... LIMITED

We, the undersigned, Michael Richard Counsell and Christopher Charles Hadler, being all the Members for the time being of the above-named Company entitled to receive notice of and to attend and vote at General Meetings HEREBY PASS the following resolution as a Special Resolution and agree that the said resolution shall, pursuant to Clause 53 in Table A (which Clause is embodied in the Articles of Association of the Company), for all purposes be as valid and effective as if the same had been passed at a General Meeting of the Company duly convened and held.

It is resolved:

That the name of the Company be changed to

DRYTEC CONTRACT PROCESSING LIMITED

Dated this 28th day of April, 1986

Signed ..............................(M.R. Counsell)

..............................(C.C. Hadler)

COMPANIES REGISTRATION OFFICE L C 19 MAY 1986

JORDAN & SONS LTD.

211213 / mpt

FILE COPY

CERTIFICATE OF INCORPORATION

ON CHANGE OF NAME

No. 1994703/Y

I hereby certify that

BRACEGALA LIMITED

having by special resolution changed its name, is now incorporated under the name of

DRYTEC CONTRACT PROCESSING LIMITED

Given under my hand at the Companies Registration Office, Cardiff the 29TH MAY 1986

M Saunders

M. SAUNDERS (MRS)

an authorised officer

C.172

D 000042

IMAGEWOOD
ACC... FEE ... PAID £ 40
... 16714
SIGNED
DATE ...

Company No: 1602355 | 12

The Companies Acts 1948 to 1976

SPECIAL RESOLUTION
(pursuant to Section 141 of the Companies Act 1948)

of Imagewood Limited passed on the 8th day of March 1982.

At an extraordinary general meeting of the members of the above-named company, duly convened and held at 49a Chatterton Road, Bromley, Kent, on the 8th day of March 1982 the following Special Resolution was duly passed:

> That with the consent of the Secretary of State for Trade the name of the Company be changed to DRYTEC LIMITED.

Signed: [signature] Company Secretary

Date: 8th March 1982

COMPANIES REGISTRATION M 24 MAR 1982 C4 OFFICE

COMPANIES REGISTRATION OFFICE
25 MAR 1982
"B"

# FILE COPY

## CERTIFICATE OF INCORPORATION
## ON CHANGE OF NAME

No. 1602355/13

I hereby certify that

IMAGEWOOD LIMITED

having by special resolution changed its name, is now incorporated under the name of

DRYTEC LIMITED

Given under my hand at Cardiff the 22ND APRIL 1982

Assistant Registrar of Companies

C172

D 000044