IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROQUETTE FRÈRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-540 (***) |
| | ) | |
| SPI PHARMA, INC. and DRYTEC LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ROQUETTE FRERES' MOTION FOR LEAVE
TO AMEND ITS PLEADINGS TO JOIN ADDITIONAL PARTIES**

Plaintiff Roquette Frères ("Roquette") moves for leave to amend its pleadings in the form attached in order to add Drytec Contract Processing Ltd., Anhydro U.K. Ltd. and Anhydro Holding A/S ("Anhydro A/S") as defendants.

Drytec, Ltd., an English company, is alleged in the complaint to have sold infringing MANNOGEM™ EZ Spray Dried Mannitol to SPI Pharma in the United States. Drytec Ltd. filed a motion to dismiss for lack of jurisdiction which is pending.

Jurisdictional discovery concerning Drytec Ltd.'s motion to dismiss the complaint showed through U.S. import reports that Drytec Ltd. sold the accused Mannogem to SPI in the United States. However, additional import reports disclosed another seller of the accused Mannogem, namely Drytec Contract Processing. Drytec Ltd. and Drytec Contract Processing are sister companies commonly owned (at least in 2006) by Drytec Holdings Ltd.

Drytec Contract Processing and Drytec Ltd. share a common facility and have the same managing director, Mr. Paul Kennet. Mr. Kennet testified that <u>both</u> Drytec Ltd. and Drytec Contract Processing are capable of and pursue contract drying of spray dried mannitol at the

commonly occupied English facility. (Kennet Deposition, Exh. A hereto, at 20:12 – 21:6, and 21:22 – 22:20).[1]

In 2006 and early 2007, Mr. Kennet was managing director of Drytec Ltd; Drytec Contract Processing Ltd; and their common parent Drytec Holdings, Ltd., all based in the common English facility. The parent of Drytec Holdings was Anhydro Holdings A/S in Denmark. (Exh. A at 16:11 – 17:10).

Thus at the end of 2006, both Drytec Ltd. and Drytec Contract Processing had the ability to spray dry Mannogem. U.S. import statistics indicate that both Drytec Ltd. and Drytec Contract Processing imported significant quantities of MANNOGEM™ EZ Spray Dried Mannitol to the account of SPI Pharma. Another U.S. import report shows another large quantity purchased by SPI Pharma from an entity identified merely as "Drytec".

In early 2007, the parent corporation integrated all of the former Drytec entities into "one single entity" which it described as "The new ANHYDRO" or "the Anhydro Group". (see http://www.drytecdryers.com, Exh. B hereto). Headquarters was described as Anhydro Holding A/S. (Exh. B). The former Drytec entities in England (the U.K.) now were listed solely as Anhydro U.K. Ltd. (Exh. B), consistent with Mr. Kennet's statement that Drytec Ltd. as of January 1, 2007 formally became Anhydro U.K. Ltd. (Exh A at 8:15-21).

As set forth in the web announcement:

As of January 1, 2007, all of the member companies of the Anhydro Group as well as our regional sales companies assumed the Anhydro name and became part of one single entity known as Anhydro. (Exh. B).

---

[1]     We cite to Exh. A by page and line number of Mr. Kennet's deposition as "page:line".

In attempted support of its motion to dismiss, Drytec Ltd. took the position that <u>it</u> was not the Drytec company which sold the MANNOGEM™ EZ Spray Dried Mannitol to SPI Pharma. Rather, Drytec Ltd. asserted that it was only its sister company Drytec Contract Processing Ltd. (notwithstanding the import data which unequivocally showed that <u>both</u> Drytec entities had sold the accused product). Drytec Ltd. attempted to disclaim the overlapping, indeed the essentially identical, relationship of the commonly owned, sited and managed Drytec companies.

Now, it is evident that <u>all</u> of these entities operate and are managed as a common group. The assets and liabilities of both Drytec Ltd. and Drytec Contract Processing have been amalgamated in Anhydro UK Ltd. which is under the operating control and management of Anhydro A/S.

Under these circumstances, it is unavailing for Drytec Ltd. to maintain the pretense of uninvolvement. Since there are two Anhydro entities which have assumed responsibility for <u>all</u> Drytec entities, they are proper and logical defendants. Relevant information regarding the infringing activity is spread with this "group", as is the flow of proceeds from these activities.

Drytec Contract Processing, which admittedly manufactured MANNOGEM™ EZ Spray Dried Mannitol and sold it to SPI is also named as a defendant in the proposed amended complaint, notwithstanding its proclaimed amalgamation into Anhydro UK Ltd. and Anhydro A/S. This is a precautionary measure made to preclude any later contention that the infringing entities are no longer accused or that its documents are immune from discovery.

Pursuant to D. Del. LR 15.1, attached hereto are two copies of Roquette's proposed Second Amended Complaint (Exh. C) and a copy of the Second Amended Complaint indicating the

respects in which it differs from Roquette's First Amended Complaint (Exh. D). Roquette respectfully requests that the Court grant its motion for leave to file the Second Amended Complaint, as set forth in the attached proposed Order.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney (#3052)*
Mary B. Graham (#2256)
Julia Heaney (#3052)
Benjamin J. Schladweiler (#4601)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
    Attorneys for Plaintiff Roquette Frères

OF COUNSEL:

Douglas. V. Rigler
Andrew J. Patch
YOUNG & THOMPSON
745 South 23rd Street, Suite 200
Arlington, VA 22202
(703) 521-2297

May 21, 2007

832637

4

## RULE 7.1.1 CERTIFICATE

Pursuant to D. Del. L.R. 7.1.1, this is to certify that counsel for plaintiff has discussed the subject matter of this motion with counsel for defendants and counsel for defendants stated that they cannot consent to the motion at this time.

*/s/ Julia Heaney (#3052)*
Julia Heaney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROQUETTE FRÈRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-540 (***) |
| | ) | |
| SPI PHARMA, INC. and DRYTEC LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR
LEAVE TO AMEND ITS PLEADING TO JOIN ADDITIONAL PARTIES**

Whereas, Plaintiff Roquette Frères has moved for leave to file a Second Amended Complaint, and the Court having considered the motion and all papers, argument and other matter submitted in support of and in opposition of the motion,

IT IS HEREBY ORDERED THAT:

1.  Plaintiff's Motion for Leave to Amend Its Pleading To Join Additional Parties is hereby GRANTED.  Plaintiff's Second Amended Complaint shall be deemed filed as of the date of this Order.

2.  Defendants shall file an answer to the Second Amended Complaint within 10 days of this Order.

IT IS SO ORDERED.


Dated: _____          _____
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 21, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

John W. Shaw
YOUNG, CONAWAY, STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on May 21, 2007 upon the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**

John W. Shaw
YOUNG, CONAWAY, STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

**BY E-MAIL**

Brian P. Murphy
Oren D. Langer
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178

*/s/ Julia Heaney (#3052)*
Julia Heaney (#3052)
jheaney@mnat.com

# EXHIBIT A

Page 1

1           IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE
2                       Civ No 06-540

3    ─────────────────────────────────────────

     ROQUETTE FRERES,
4
                                 Plaintiff,
5    v SPI PHARMA, INC., and DRYTEC LTD.,

6                                 Defendants.

7    ─────────────────────────────────────────

8           ORAL DEPOSITION OF PAUL KENNET

9    Taken at Morgan Lewis & Bockius,
     2 Gresham Street, London EC2V 7PE, England,
10   on Tuesday 16 January 2007 at 12.00 pm

11   Reported by Mrs. Claire Hill.

12

13

14

15

16

17

18

19

20

21

22

## Capital Reporting Company

Page 6

1    Q   What was the nature of the litigation?

2    A   It was confidentiality of technical data.

3    Q   And were you personally a defendant in

4  the action?

5    MS. HOLTHAM:  Objection, the scope of this

6  deposition is limited to the facts and matters set out

7  in Mr. Kennet's statement.

8    MR. RIGLER:  I'm aware that this is a

9  jurisdictional deposition; nonetheless, I'm entitled to

10  inquire into the background of the witness, with respect

11  to any prior litigation in which he has been a party.

12    Q   You may answer.

13    A   I wasn't personally a defendant, no.

14    Q   A company with which you were associated

15  was accused of violating a confidentiality agreement?

16    A   The company that I was working for was

17  named as a defendant, not me personally, I was defending

18  the company, representing the company.

19    Q   What company was that, please?

20    A   It was Drytec.

21    Q   Who was the other party to the

22  litigation?

Page 7

1    A   The other party was -- the plaintiff, you

2  mean?

3    Q   Yes.

4    A   The plaintiff was Borozene (?) Inc.

5    Q   And can you tell me the year in court?

6    A   The year was -- that the deposition was

7  made, or that the file was suited, the litigation was

8  filed?  The litigation was filed in 2006.

9    Q   And the court was?

10    A   It's still proceeding, the litigation.

11    Q   Can you tell me a little bit about your

12  background, what is your educational background?

13    A   I am a chartered engineer, a graduate

14  chemical engineer, and a member of the Institute of

15  Chemical Engineers in the U.K.

16    Q   May I ask which universities?

17    A   Which universities?

18    Q   Yes, please.

19    A   University of Cape Town, which is not in

20  America.

21    Q   And not in any great detail, but can you

22  briefly tell me about your employment history?

Page 8

1    A   Certainly, I have worked for a number of

2  -- only in the U.K., for a number of U.K. companies,

3  always in engineering.  In the last company I worked

4  for, I was initially senior process engineer, and then

5  rose to sales director, transferred in 2001 to Drytec as

6  sales director, and became managing director in 2004.

7    Q   Do you have any other employment?

8    MS. HOLTHAM:  Objection, question vague as to

9  form.

10    A   Any other employment, you say?

11    Q   Yes.

12    A   Other than with Drytec?  No, I don't.

13    Q   I notice on your card that your card says

14  Anhydro.

15    A   Anhydro, yes.  Drytec Limited changed its

16  name as of 1 January to Anhydro U.K. Limited, so the

17  card's not even right, it was done by our parent

18  company, Anhydro, in Denmark.  They jumped the gun

19  slightly.  But formally, Drytec Limited is -- as of 1

20  January this year, is Anhydro U.K. Limited.  No other

21  changes have been effected.

22    Q   Did you bring any documents with you

Page 9

1  today?

2    A   I have not brought any documents with me

3  today.

4    Q   Were you asked to search for any

5  additional documents?

6    A   I was requested to bring some documents,

7  if I could find any, yes.

8    Q   Were you able to locate any documents?

9    A   No.

10    Q   I won't clutter up the record with

11  needless paper, since this is before the court, but let

12  me show you the declaration of Paul C. Kennet and ask if

13  you recognize this document. (Handed).

14    A   Yes.

15    Q   And you read it and subscribed to it?

16    A   I have and do.

17    Q   And I take it you had the assistance of

18  counsel when the document was prepared?

19    A   Yes, I did.

20    Q   Were you asked to search for any

21  documents in connection with the declaration you signed

22  in this action?

3 (Pages 6 to 9)

# Capital Reporting Company

Page 14

1  the deposition is limited to the matters stated in Mr.
2  Kennet's statement.
3      MR. RIGLER: I'm sorry?
4      MS. HOLTHAM: The scope of the deposition is
5  limited to the matters in Mr. Kennet's statements.
6      MR. RIGLER: Are you instructing him not to
7  answer?
8      MS. HOLTHAM: No. You may answer.
9      Q   Could you read the question back, please?
10         (Read back)
11     A   The materials do not currently
12  include Mannitol.
13     Q   What about Mannogem EZ?
14     A   They do not currently include
15  Mannogem EZ.
16     Q   And we're speaking of Drytec
17  Contract only?
18     A   We are.
19     Q   With the recent name change of
20  Drytec Limited, was there any amalgamation with
21  any other company?
22     A   No, no other change except the name

Page 16

1  it was provided?
2      A   As confirmation of the scope of
3  supply that the Americans were obligated to
4  provide.
5      Q   Because Drytec Limited had some
6  responsibility in connection with that --
7      A   Because Drytec Limited would be
8  asked to supply one key component.
9      Q   Which it did?
10     A   Which it did, as I understand, yes.
11     Q   Is it correct that you are
12  a managing director and the director of sales for
13  Drytec Limited?
14     A   I am managing director responsible
15  for all commercial and fiscal matters of Drytec
16  Limited.
17     Q   Is it correct that you are the
18  managing director and director of sales for Drytec
19  Contract Processing Limited?
20     A   I am managing director of Drytec
21  Contract Processing Limited.
22     Q   Is it correct that you are managing

Page 15

1  change.
2      Q   How did you come, how did Drytec
3  Limited come to have the document beginning at
4  D 11 through D 35 in its files?
5      A   We were sent it, I understand, from
6  our American colleagues.
7      Q   For what purpose?
8      A   The purpose for information to have
9  on file, that's all.
10     Q   Why would the American company send
11  you that information?
12     MS. HOLTHAM: Objection, the question is
13  plainly not within Mr. Kennet's own knowledge.
14     MR. RIGLER: It's a document that was
15  submitted by Drytec, I'm certainly entitled him to
16  question him about a document which he produced in
17  respond to the dispute with respect to the
18  jurisdiction.
19     MS. HOLTHAM: The question invites
20  speculation as to why the American company
21  provided it.
22     Q   What is your understanding of why

Page 17

1  director of Drytec Holdings Limited?
2      A   I am.
3      Q   Have either Drytec Holdings Limited
4  or Drytec Contract Processing Limited had any
5  change in name or affiliation in the past year?
6      A   That is correct, they have not had
7  any change in name.
8      Q   Who is the parent of Drytec
9  Holdings Limited?
10     A   Anhydro Holdings A.S. in Denmark.
11     Q   Is that a recent name change?
12     A   No, it's not. I don't think so.
13     Q   Who is Dedert Europe Holding B.V.?
14     A   Dedert was the previous owner, from
15  2001 to 2004, as I understand it. I'm not privy
16  to the legal aspect of the corporate structure.
17     Q   Was that a name change in 2004 from
18  Dedert to Anhydro, or was it the sale of
19  a business?
20     A   No, the name change from Dedert to
21  Anhydro occurred on 1 January this year, at the
22  same time as Drytec Limited changed its name to

5 (Pages 14 to 17)

## Capital Reporting Company

Page 18

1  Anhydro U.K. Limited, as part of Anhydro's efforts
2  to unify the world market or world representation.
3      Q   So there has been no actual sale of
4  any of these companies or their assets?
5      MS. HOLTHAM:  Objection, this is way
6  beyond the scope of the jurisdiction, I'm
7  instructing you not to answer.
8      MR. RIGLER:  I am going to ask you to
9  reconsider, because this kind of thing I'll take
10 to the court.  You're going to be able to make
11 your instructions today, and the witness, I'm
12 sure, will follow your instructions, but
13 ultimately the issue is going to be decided before
14 the judge in the United States, and I'm trying to
15 confine my questions to what I consider to be
16 relevant, and I think the court is going to agree
17 with me.  Now do you wish to maintain your
18 instruction?
19     MS. HOLTHAM:  In relation to specific
20 questions that are focused on the corporate
21 identities, you may answer.
22     A   Could you repeat the question? (Read

Page 19

1      back)
2      A   The sale of any of the companies
3  that we have been discussing or naming, no, that
4  is correct, there been no sales of those
5  companies.
6      Q   And is it correct that the ultimate
7  parent corporation is named Dedert Corporation,
8  and that is an entity formed under the laws of the
9  State of Illinois in the United States?
10     A   I believe the ultimate owning
11 company is Anhydro Holding A.S. in Denmark, but
12 I'm not privy to the legal structure, that's as
13 I understand it, Anhydro Holdings A.S. owns
14 100 percent of all Anhydro companies, which
15 includes Dedert, now Anhydro Inc., it includes
16 Drytec Limited, which is now Anhydro U.K. Limited
17 as well as other companies.
18     Q   Do you know who the ultimate
19 managing director of the group of companies is, at
20 highest holding company level?
21     A   Yes, I know both the CEO and the
22 chairman of the board; the chairman of the board,

Page 20

1  whose name I can't remember, but the CEO I do.
2  I only know his nickname.
3      Q   Which is?
4      A   His nickname is Ziggy somebody or
5  other, bizarre as it may seem, but the CEO is
6  Allan Jorgensen, who is chairman of the Drytec
7  board as well.
8      Q   What is the role of Mr. Dedert?
9      A   I don't know what the role of
10 Mr. Dedert is, he's a shareholder of Anhydro
11 Holdings.  More than that, I don't know.
12     Q   Does Drytec Limited have any drying
13 facilities?
14     A   No.
15     Q   Does it hold itself out as willing
16 to do drying projects in support of either sales
17 or to accommodate its clients on a short-term
18 basis?
19     A   It does have the ability to
20 undertake small scale drying trials, and in that
21 respect, we have a number of test facilities only,
22 so I correct my previous statement.

Page 21

1      Q   And that would include the ability
2  to dry Mannitol products, would it not?
3      A   Depending on your definition of it,
4  Drytec Limited has the ability to design spray
5  dryers for the production of Mannitol, yes, or to
6  test the drying of Mannitol.
7      Q   So physically, it dries Mannitol?
8      A   Drytec Limited does not dry
9  Mannitol, no.
10     Q   And that ability would also apply
11 to Mannogem EZ, would it not?
12     A   It would.
13     Q   What is the relationship between
14 Drytec Limited and SPI Pharma Incorporated?
15     A   There's no direct association or
16 relationship.
17     Q   What is the indirect association?
18     A   We have supplied through Drytec
19 North America L.L.C. key parts for spray drying
20 for -- spray drying system for Mannitol, or
21 Mannogem, whatever it's called.
22     Q   Drytec Contract Processing dries

6 (Pages 18 to 21)

## Capital Reporting Company

Page 22

1  both Mannitol and Mannogem EZ, correct?
2      A    It doesn't currently dry either of
3  those products, but has in the past.
4      Q    In the recent past?
5      A    It depends on your definition of
6  recent.
7      Q    Give me a timeframe, please.
8      A    In the past, it has, in the recent
9  past it has.
10      Q    Do you know if there are any
11  customers in the United States for either of those
12  products?
13      A    Do I know if there are customers in
14  the United States?
15      Q    Yes, you are the managing director
16  of the company, right?
17      A    I am indeed the managing director
18  of the company, we have established that.
19  I believe there are customers in the United States
20  for those products.
21      Q    And the products are dried here in
22  the U.K. and then imported by the customer or

Page 23

1  exported by Drytec to the United States, correct?
2      MS. HOLTHAM:  Objection, question vague
3  and compound.
4      Q    Do you need it broken down?  I'm
5  happy to do it in parts, but I thought it was
6  fairly straightforward.
7      A    Drytec Contract Processing has in
8  the past manufactured Mannitol based products
9  under strict instructions of clients, clients
10  prescribing every aspect of the process.
11      Q    And those products have been
12  shipped to the United States?
13      A    I believe Drytec haven't shipped
14  any products, but I understand products have been
15  ultimately despatched by someone to the
16  United States.
17      Q    By whom?
18      A    Normally by our clients, Drytec
19  doesn't normally get involved in shipping of
20  products.
21      Q    Let's mark as Drytec exhibit 2 four
22  pages which are from a compilation by Piers

Page 24

1  Imports, they have been marked confidential
2  because although the information is public, it's
3  an import record, the company that accumulates the
4  information has proprietary interest in the
5  report.  I'm certainly free to give it to you, but
6  I do remind you that they --
7      A    It's under confidentiality.
8      MS. HOLTHAM:  I'd like to make
9  an objection certainly for the record at least,
10  I'm not going to instruct Mr. Kennet not to look
11  at these documents, but in the confidentiality
12  agreement pursuant to which disclosure of these
13  documents was made, you specifically agreed that
14  the documents were not to be disclosed if marked
15  confidential, as they had been by you, to Drytec's
16  personnel.
17      That agreement was on letter from Morgan
18  Lewis dated December 21st 2006, and specifically
19  provides:
20      "Outside counsel for Roquette and Drytec
21  agree to hold the confidential information in the
22  strictest confidence and not disclose it or

Page 25

1  otherwise permit it to become available to any
2  person, including but not limited to Roquette and
3  Drytec personnel."
4      MR. RIGLER:  Yes, and now I was the
5  producing party, or Roquette, the plaintiff, was
6  the producing party, and it is willing to waive
7  that confidentiality.  The only reason it was
8  marked confidential is because of the proprietary
9  interest in the accumulation.  This is not even
10  a full accumulation, and I believe that this is
11  within the legitimate scope of the information,
12  and since my client is the one who produced,
13  I believe that I can waive that confidentiality.
14      (Exhibit Drytec 2 marked for identification)
15      MS. HOLTHAM:  Would you give Mr. Kennet
16  a moment to look through the document?
17      MR. RIGLER:  Sure. (Pause).
18      Q    Have you seen Drytec exhibit 2
19  previously?
20      A    No, I have not.
21      Q    I see it has no Bates numbers.  May
22  I have it, please?

7 (Pages 22 to 25)

# EXHIBIT B





# The new Anhydro

*January 31, 2007*

As of January 1, 2007, all of the member companies of the Anhydro Group as well as our regional sales companies assumed the Anhydro name and became part of one single entity known as Anhydro. By uniting under a single name, we will underline the reach and strength of Anhydro as global supplier who can focus the sum of its worldwide resources on the individual needs of its customers.

This re-branding process is supported by our new company logo and a new web site with a fresh, dynamic design and strong customer focus.

**Centres of Excellence**
Re-branding is also about the way we see ourselves and the way we work together to provide even faster and more effective solutions to our customers all over the world. It is about leveraging the synergies within the new organization, not only in the solutions and processes we develo but also in the way we work.

Our new customer-focused organization is based on three Centres of Excellence - Dairy & Food, Starch & Ethanol, and Industrial & Pharma. Ea of these centres unites the relevant technologies, expertise and competences within the organization, directing them specifically at customer ne in the industries they serve.

Supporting these three Centres of Excellence is a fourth Centre of Excellence, Parts & Service, that provides customer service to all of our customers around the world.

**Platform for growth**
2006 was a year in which we experienced significant growth driven by increased market awareness of the benefits we have to offer in terms of solutions and expertise. While our new brand will reinforce this awareness, our new organization will deliver the promise in terms of our own awareness of and focus on the individual needs of our customers.

Adapting to major changes always presents challenges. I am convinced, however, that our new identity and organization are the platform we ne to launch Anhydro into the future and that we stand on the threshold of a new era for Anhydro as a company and as a successful and inspiring place to work.

Allan Jørgensen
President & CEO



# Contact Us

Anhydro has companies in Europe, the USA, South America and Asia as well as sales offices, agents and distributors all over the wor

There is someone at Anhydro who can help you and is no farther away than an e-mail or phone call. You may also contact the Anhydro sales off agent or distributor nearest to you.

Use the details below to contact us.

*Head Quarter:*
*Anhydro Holding A/S*
*Oestmarken 7*
*DK-2860 Soeborg*
*Denmark*
*Tel: +45 70 278 222*
*Fax: +45 70 278 223*
*E-mail: anhydro@anhydro.com*

*Africa:*
*South Africa*
*Protherm Systems (Pty) Ltd*
*4 Vintech Park 45 4th St,*
*Wynberg, Sandton*
*South Africa*
*Tel.: +27 (0)11 786 0652*
*Fax: +27 (0)11 786 1301*
*sales@protherm.co.za*

*Asia:*
*Bangladesh*
*Santek Agencies & Services Limited*
*9/6 Eastern Plaza, 8th floor*
*Hatirpool*
*Dhaka-1205*
*Bangladesh*
*Tel.: +880 2 8620678*
*Fax: +880 2 9672430*
*santek@bdmail.net*

*China*
*Anhydro China*
*13th floor, Wangjiao Plaza*
*175 Yan An Road*
*Hunagpu*
*200002 Shanghai*
*China*
*Tel.: +65 68 36 0770*
*Fax: +65 68 36 0550*

*India*

hemitek@hemitek.com.tr

**United Kingdom**
**Anhydro UK Limited**
46 Morley Road
Tonbridge, Kent TN9 1RA
UK
Tel.: +44 (0)1732 362611
Fax: +44 (0)1732 770776
anhydroUK@anhydro.com

**Middle East:**
**Iran**
**Intercool - Iran**
289, Avenue Nejatollahi (Ex Villa)
Tehran / Iran
Tel.: +98 21 88905370
Fax: +98 21 88909630
intercool@hoornet.com

**Israel**
**Hirshberg Bros & Co**
**Machinery Ltd**
18 Galgalei Haplada Street
Industrial Zone Herzliya
Israel 46301
Tel.: +972-(0)9-9521666
Fax: +972-(0)9-9543654
hbm@hb.co.il

**Pakistan**
**Manstock Engineering Company (Pvt.) Ltd.**
11/A (Commercial)
2nd Floor, Sector XX
Khayaban-e-Iqbal
Phase 3, D.H.A., Lahore
Cantt.-54792 Pakistan
Tel.: +92 42 572 5985
+92 42 574 9351
Fax: +92 42 572 3157
info@manstock-engg.com

**North America:**
**USA**
**Anhydro Inc.**
20000 Governors Drive
Olympia Fields, IL 60461
United States of America
Tel.: +1 708 747 7000
Fax: +1 708 755 8815
anhydroinc@anhydro.com

**Oceania:**
**New Zealand**
**International Process Systems Ltd**
127 Collingwood Street
Hamilton
New Zealand
Tel.: +64 7 838 2082
Fax: +64 7 838 2091
Wilma@ipsdairytech.com

**South America:**
**Brazil**
**Anhydro Indústria e Comércio Ltda**
R. João Daprat, 231-A
09600-010 São Bernardo do Campo
SP
Brazil
Tel.: +55 11 2166 4050
Fax: +55 11 2166 4070
anhydro.brazil@anhydro.com

ttp://anhydrov2.customers.composite.net/content/us/contact

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROQUETTE FRÈRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-540 (***) |
| | ) | |
| SPI PHARMA, INC. and DRYTEC LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Roquette Frères ("Roquette"), for its complaint against Defendants, SPI Pharma, Inc., Drytec Ltd., Anhydro U.K. Ltd., Drytec Contract Processing Ltd. and Anhydro Holding A/S alleges as follows:

### JURISDICTION AND VENUE

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.  Jurisdiction of this Court is conferred by 28 U.S.C. § 1338(a).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendant SPI Pharma, Inc. has its principal place of business in this District and has engaged in infringing activities within this District.  Defendants Drytec Ltd., Anhydro U.K. Ltd., Drytec Contract Processing Ltd. and Anhydro Holding A/S have engaged in infringing activities within this District.

### BACKGROUND AND PARTIES

2.      Roquette Frères is a corporation formed under the laws of France with its principal address at 62080 Lestrem, Cedex, France.

3.     Roquette is the assignee of U.S. Patent No. 5,573,777 ("the '777 patent") and holds all right, title and interest in the '777 patent.  A true and correct copy of the '777 patent is attached hereto as Exhibit A and is incorporated herein by reference.

4.     On information and belief, Defendant SPI Pharma, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 321 Cherry Lane, New Castle, Delaware.

5.     On information and belief, each of Defendants Drytec Ltd. and Anhydro U.K. Ltd. is a British corporation with its principal place of business at 46 Morley Road, Tonbridge, Kent, TN9 1RA, England.

6.     On information and belief, Defendant Drtyect Contract Processing Ltd. is a British corporation with its principal place of business at 46 Morley Road, Tonbridge, Kent, TN9 1RA, England.

7.     On information and belief, Defendant Anhydro Holding A/S is a Danish corporation with its principal place of business at Oestmarken 7, DK-2860 Soeborg, Denmark.

## INFRINGEMENT OF THE '777 PATENT

8.     Upon information and belief, Defendants are and have been infringing one or more claims of the '777 patent.   Infringing products include, without limitation, MANNOGEM™ EZ Spray Dried Mannitol.

9.     Defendants are and have been importing into the United States Mannitol products that infringe one or more claims of the '777 patent.

2

10.    Defendants are and have been importing into the United States MANNOGEM™ EZ Spray Dried Mannitol.

11.    Defendant SPI Pharma, Inc. is and has been selling and/or offering to sell in the United States, and/or actively inducing others to sell and/or offer to sell in the United States, Mannitol products that infringe one or more claims of the '777 patent.

12.    Defendant SPI Pharma, Inc. is and has been selling and/or offering to sell in the United States MANNOGEM™ EZ Spray Dried Mannitol.

13.    Defendant SPI Pharma, Inc. is and has been actively inducing others to sell and/or offer to sell in the United States MANNOGEM™ EZ Spray Dried Mannitol.

14.    At least as early as September 3, 2004, Roquette put Defendant SPI Pharma, Inc. on actual notice of its claim for infringement of the '777 patent.

15.    Defendant SPI Pharma, Inc.'s infringing activities as set forth above are and have been willful, and warrant assessment of increased damages, pursuant to 35 U.S.C. § 284, and designation of this case as exceptional, pursuant to 35 U.S.C. § 285.

## RELIEF

Wherefore Plaintiff requests this Court to enter judgment against Defendants and their subsidiaries, affiliates, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

a)    an award of damages to Roquette adequate to compensate for the infringement that has occurred, together with prejudgment interest from the date infringement of the '777 patent began;

3

b)    an accounting of Defendants' sales and profits;

c)    all other damages permitted by 35 U.S.C. § 284;

d)    a finding that this case is exceptional and an award to plaintiff of attorney's fees and costs as provided by 35 U.S.C. § 285;

e)    a permanent injunction prohibiting further infringement, inducement of infringement, and contributory infringement of the '777 patent;

f)    an accounting of Defendants' past sales infringing the '777 patent;

g)    such other relief as the Court or a jury may deem just and equitable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Roquette Frères

OF COUNSEL:

Douglas. V. Rigler
Andrew J. Patch
YOUNG & THOMPSON
745 South 23rd Street, Suite 200
Arlington, VA 22202
(703) 521-2297

May 21, 2007
832625

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROQUETTE FRÈRES,                          )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )   C.A. No. 06-540 (KAJ)
                                          )
SPI PHARMA, INC. and DRYTEC LTD.,         )
                                          )
            Defendants.                   )

## ~~FIRST~~SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Roquette Frères ("Roquette"), for its complaint against Defendants, SPI Pharma, Inc. ~~("SPI Pharma") and~~, Drytec Ltd. ~~("Drytec")~~, Anhydro U.K. Ltd., Drytec Contract Processing Ltd. and Anhydro Holding A/S alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. Jurisdiction of this Court is conferred by 28 U.S.C. § 1338(a). Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendant SPI Pharma, Inc. has its principal place of business in this District and has engaged in infringing activities within this District. ~~Defendant Drytec has~~Defendants Drytec Ltd., Anhydro U.K. Ltd., Drytec Contract Processing Ltd. and Anhydro Holding A/S have engaged in infringing activities within this District.

**BACKGROUND AND PARTIES**

2.      Roquette Frères is a corporation formed under the laws of France with its principal address at 62080 Lestrem, Cedex, France.

3.      Roquette is the assignee of U.S. Patent No. 5,573,777 ("the '777 patent") and holds all right, title and interest in the '777 patent.  A true and correct copy of the '777 patent is attached hereto as Exhibit A and is incorporated herein by reference.

4.      On information and belief, Defendant SPI Pharma, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 321 Cherry Lane, New Castle, Delaware.

5.      On information and belief, ~~Defendant~~each of Defendants Drytec Ltd. and Anhydro U.K. Ltd. is a British corporation with its principal place of business at 46 Morley Road, Tonbridge, Kent, TN9 1RA, England.

6.      On information and belief, Defendant Drtyect Contract Processing Ltd. is a British corporation with its principal place of business at 46 Morley Road, Tonbridge, Kent, TN9 1RA, England.

7.      On information and belief, Defendant Anhydro Holding A/S is a Danish corporation with its principal place of business at Oestmarken 7, DK-2860 Soeborg, Denmark.

**INFRINGEMENT OF THE '777 PATENT**

8.    6. Upon information and belief, Defendants are and have been infringing one or more claims of the '777 patent.    Infringing products include, without limitation, MANNOGEM™ EZ Spray Dried Mannitol.

9.    7. Defendants are and have been importing into the United States Mannitol products that infringe one or more claims of the '777 patent.

10.    8. Defendants are and have been importing into the United States MANNOGEM™ EZ Spray Dried Mannitol.

11.    9. Defendant SPI Pharma, Inc. is and has been selling and/or offering to sell in the United States, and/or actively inducing others to sell and/or offer to sell in the United States, Mannitol products that infringe one or more claims of the '777 patent.

12.    10. Defendant SPI Pharma, Inc. is and has been selling and/or offering to sell in the United States MANNOGEM™ EZ Spray Dried Mannitol.

13.    11. Defendant SPI Pharma, Inc. is and has been actively inducing others to sell and/or offer to sell in the United States MANNOGEM™ EZ Spray Dried Mannitol.

14.    12. At least as early as September 3, 2004, Roquette put Defendant SPI Pharma, Inc. on actual notice of its claim for infringement of the '777 patent.

-3-

15.    13. Defendant SPI Pharma², Inc.'s infringing activities as set forth above are and have been willful, and warrant assessment of increased damages, pursuant to 35 U.S.C. § 284, and designation of this case as exceptional, pursuant to 35 U.S.C. § 285.

## RELIEF

Wherefore Plaintiff requests this Court to enter judgment against Defendants and their subsidiaries, affiliates, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

a)    a)    an award of damages to Roquette adequate to compensate for the infringement that has occurred, together with prejudgment interest from the date infringement of the '777 patent began;

b)    b)    an accounting of Defendants' sales and profits;

c)    c)    all other damages permitted by 35 U.S.C. § 284;

d)    d)    a finding that this case is exceptional and an award to plaintiff of attorney's fees and costs as provided by 35 U.S.C. § 285;

e)    e)    a permanent injunction prohibiting further infringement, inducement of infringement, and contributory infringement of the '777 patent;

f)    f)    an accounting of Defendants' past sales infringing the '777 patent;

g)    g)    such other relief as the Court or a jury may deem just and equitable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

~~/s/ Julia Heaney (#3052)~~

Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Roquette Frères

OF COUNSEL:

Douglas. V. Rigler
Andrew J. Patch
YOUNG & THOMPSON
745 South 23rd Street, Suite 200
Arlington, VA 22202
(703) 521-2297

~~October 20, 2006~~

May 21, 2007
832625