# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JULIA HEANEY
302 351 9221
302 425 3004 FAX
jheaney@mnat.com

June 11, 2007

**BY E-FILING and HAND DELIVERY**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
844 King Street
Wilmington, DE 19801

> Re:    *Roquette Freres v. SPI Pharma, Inc.*
> C.A. 06-540 (***)

Dear Judge Thynge:

We write to request limited discovery regarding contradictory assertions and inconsistent and incomplete information tendered by defendants SPI Pharma, Inc. and Drytec Ltd. in their opposition to Roquette's Motion to Amend the Complaint. This discovery is relevant and important in order for plaintiff Roquette Freres, S.A. to reply to Defendants' brief opposing the designation of additional Drytec defendants.

In early 2007 (subsequent to Drytec Ltd.'s motion to dismiss for lack of personal jurisdiction) several Drytec entities merged and consolidated into a unified entity which they call "the new Anhydro". Because these now-consolidated companies dealt interchangeably and under common management with SPI regarding the manufacture and sale of the accused product, it is necessary to amend the complaint to ensure that the newly formed organization including former members thereof remain defendants in this action. Otherwise, there is a high degree of risk that infringing activities will be concealed and that discovery will be avoided through artificial claims that Drytec Ltd. is not responsible for or cannot provide discovery regarding the infringing activities of its closely affiliated companies.

By way of background, SPI sells Mannogem EZ accused of infringing Roquette's U.S. Patent No. 5,573,777. Mannogem EZ is produced through Roquette's patented atomized spray drying process and both the process and the product are covered by the '777 Patent.

The Honorable Mary Pat Thynge
June 11, 2007
Page 2

       Drytec Ltd. is an English company. It was named as a defendant following the written assertion of Colleen Blackney, SPI's Marketing Manager, that Mannogem EZ is manufactured exclusively for SPI by Drytec Ltd. Moreover, reports of Piers Import Services which monitors U.S. Customs declarations identified imports of Mannogem EZ <u>from Drytec Ltd.</u>; <u>from another</u> entity identified as Drytec Contract Processing ("Drytec CP"), and, <u>a third entity</u> identified merely as "Drytec". Despite these documents and other evidence, Drytec Ltd. filed a motion to dismiss the complaint for lack of personal jurisdiction and disclaimed involvement in infringing activity.

       In January 2007, Roquette took the deposition for jurisdictional purposes of Paul Kennet, Managing Director of Drytec Ltd. in London. Mr. Kennet is also the Managing Director of Drytec CP which occupies the same quarters as Drytec Ltd. Both companies were wholly owned subsidiaries of Drytec Holdings Ltd. which also occupies the same site and of which Mr. Kennet is also Managing Director. In 2006 Drytec Holdings was a subsidiary of Anhydro A/S.

       During his deposition Mr. Kennet at first denied, then later admitted that Drytec Ltd. has facilities for atomized spray drying of the accused Mannogem EZ. However, he claimed that it was Drytec CP (a non-defendant) which manufactured the Mannogem EZ which was then shipped to SPI. He produced no documentary information regarding payment, shipping details or any underlying contacts between SPI and any of the overlapping, commonly owned, managed and commonly sited Drytec companies.

       In their Reply to Roquette's Opposition to Drytec Ltd.'s motion to dismiss, Drytec Ltd. and SPI, 1) reneged on Ms. Blackney's written identification of Drytec Ltd. as SPI's supplier, claiming it was a mistake and that Drytec CP was the manufacturing entity; and 2) supplied <u>for the first time</u> a Commercial Letter Agreement between SPI and Drytec CP for the manufacture of Mannogem EZ. Roquette has had no discovery with respect to the new documents produced in Drytec Ltd.'s Reply Brief to its motion to dismiss.[1]

       Thus, at the end of 2006 Drytec Ltd. and Drytec CP had the ability to spray dry Mannogem and U.S. Imports Statistics indicated that <u>both</u> companies shipped significant quantities to SPI Pharma. As is apparent Roquette has had no discovery of Drytec CP nor the common parent Drytec Holdings Ltd. (same location, management, and ownership) or the parent company Anhydro Holding A/S. In 2006, Drytec Ltd., Drytec CP and Drytec Holdings Ltd. were all members of "the Anhydro Group". <u>However, in early 2007 Anhydro A/S integrated all of the former Drytec entities into what it described as "one single entity" known as "the new</u>

---

[1]     The tardy production is troublesome since the parties had agreed to exchange documents upon which they would rely on the jurisdictional issues in advance of Mr. Kennet's deposition. Moreover, during his deposition Mr. Kennet admitted that he had searched for relevant documents. He testified that he had not been able to locate any documents. Now, on two subsequent occasions Defendants have submitted documents pertaining directly to the import of Drytec-produced Mannogem EZ. Even these documents have been self-servingly selected. See attached deposition pages, 8-10 (Tab A).

The Honorable Mary Pat Thynge
June 11, 2007
Page 3

ANHYDRO".   Headquarters was described as Anhydro Holding A/S.   The former Drytec
entities in England (the U.K.) now were listed solely as Anhydro U.K. Ltd.

As set forth in the web announcement:

As of January 1, 2007, all of the member companies of the
Anhydro Group as well as our regional sales companies assumed
the Anhydro name and became part of one single entity known as
Anhydro.

Based, *inter alia*, on these significant developments and Mr. Kennet's testimony,
Roquette moved to amend its complaint to add the now-consolidated Drytec/Anhydro companies
and to ensure that discovery regarding infringing activities will not be avoided through a
contention that the information belongs to a non-defendant (but commonly controlled affiliate).
SPI and Drytec Ltd. opposed the amendment.  In their opposition brief they attached additional
documentary exhibits and, for the first time, argued that chain-of-title contentions foreclose
personal jurisdiction.   Roquette had not had any discovery regarding the new documents
produced by Defendants on June 5, 2007.[2]

Defendants refuse to consent to additional discovery to be conducted in England
regarding either the corporate consolidation and the effects thereof or the body of new and
contradictory documents and assertions they have made.   Accordingly, Roquette requests
permission to conduct discovery on these issues and to reset the date of its Reply Brief until
completion of discovery.

Respectfully,

*Julia Heaney*

Julia Heaney

cc:    Dr. Peter Dalleo, Clerk (By e-filing)
       John W. Shaw (By e-mail)
       Oren D. Langer (By e-mail)

---

[2]    Defendants also argued that amendment is futile because they will prevail on an ultimate
issue.   This self-serving (and inaccurate) argument is not a ground for denial of the
amendment of the complaint or denial of discovery.

TAB A

## Capital Reporting Company

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE
 2                   Civ No 06-540

 3      ─────────────────────────────────────────

        ROQUETTE FRERES,
 4
                             Plaintiff,
 5      v SPI PHARMA, INC., and DRYTEC LTD.,

 6                           Defendants.

 7      ─────────────────────────────────────────

 8           ORAL DEPOSITION OF PAUL KENNET

 9      Taken at Morgan Lewis & Bockius,
        2 Gresham Street, London EC2V 7PE, England,
10      on Tuesday 16 January 2007 at 12.00 pm

11      Reported by Mrs. Claire Hill.

12

13

14

15

16

17

18

19

20

21

22
```

# Capital Reporting Company

**Page 6**

1 Q What was the nature of the litigation?
2 A It was confidentiality of technical data.
3 Q And were you personally a defendant in
4 the action?
5 MS. HOLTHAM: Objection, the scope of this
6 deposition is limited to the facts and matters set out
7 in Mr. Kennet's statement.
8 MR. RIGLER: I'm aware that this is a
9 jurisdictional deposition; nonetheless, I'm entitled to
10 inquire into the background of the witness, with respect
11 to any prior litigation in which he has been a party.
12 Q You may answer.
13 A I wasn't personally a defendant, no.
14 Q A company with which you were associated
15 was accused of violating a confidentiality agreement?
16 A The company that I was working for was
17 named as a defendant, not me personally, I was defending
18 the company, representing the company.
19 Q What company was that, please?
20 A It was Drytec.
21 Q Who was the other party to the
22 litigation?

**Page 7**

1 A The other party was -- the plaintiff, you
2 mean?
3 Q Yes.
4 A The plaintiff was Borozene (?) Inc.
5 Q And can you tell me the year in court?
6 A The year was -- that the deposition was
7 made, or that the file was suited, the litigation was
8 filed? The litigation was filed in 2006.
9 Q And the court was?
10 A It's still proceeding, the litigation.
11 Q Can you tell me a little bit about your
12 background, what is your educational background?
13 A I am a chartered engineer, a graduate
14 chemical engineer, and a member of the Institute of
15 Chemical Engineers in the U.K.
16 Q May I ask which universities?
17 A Which universities?
18 Q Yes, please.
19 A University of Cape Town, which is not in
20 America.
21 Q And not in any great detail, but can you
22 briefly tell me about your employment history?

**Page 8**

1 A Certainly, I have worked for a number of
2 -- only in the U.K., for a number of U.K. companies,
3 always in engineering. In the last company I worked
4 for, I was initially senior process engineer, and then
5 rose to sales director, transferred in 2001 to Drytec as
6 sales director, and became managing director in 2004.
7 Q Do you have any other employment?
8 MS. HOLTHAM: Objection, question vague as to
9 form.
10 A Any other employment, you say?
11 Q Yes.
12 A Other than with Drytec? No, I don't.
13 Q I notice on your card that your card says
14 Anhydro.
15 A Anhydro, yes. Drytec Limited changed its
16 name as of 1 January to Anhydro U.K. Limited, so the
17 card's not even right, it was done by our parent
18 company, Anhydro, in Denmark. They jumped the gun
19 slightly. But formally, Drytec Limited is -- as of 1
20 January this year, is Anhydro U.K. Limited. No other
21 changes have been effected.
22 Q Did you bring any documents with you

**Page 9**

1 today?
2 A I have not brought any documents with me
3 today.
4 Q Were you asked to search for any
5 additional documents?
6 A I was requested to bring some documents,
7 if I could find any, yes.
8 Q Were you able to locate any documents?
9 A No.
10 Q I won't clutter up the record with
11 needless paper, since this is before the court, but let
12 me show you the declaration of Paul C. Kennet and ask if
13 you recognize this document. (Handed).
14 A Yes.
15 Q And you read it and subscribed to it?
16 A I have and do.
17 Q And I take it you had the assistance of
18 counsel when the document was prepared?
19 A Yes, I did.
20 Q Were you asked to search for any
21 documents in connection with the declaration you signed
22 in this action?

3 (Pages 6 to 9)

# Capital Reporting Company

Page 10

1  MS. HOLTHAM: Objection, the instructions and
2  interaction between Mr. Kennet and counsel are
3  privileged.
4  MR. RIGLER: I agree with that, I just asked
5  if he was asked to search for any documents.
6  A  I was asked to search for some documents,
7  yes.
8  Q  I would like to have the reporter mark as
9  Drytec exhibit 1 a cover letter of December 27, 2006,
10  from Mr. Langer at Morgan Lewis, and it is followed by
11  documents with the series of numbers which we refer to
12  in America as Bates numbers, and this goes with a series
13  commencing 1 through 35.
14  (Exhibit Drytec 1 marked for identification)
15  Q  Were those the documents which you
16  located in response to the search request?
17  A  No, I have not located those documents.
18  Q  You have not seen these documents
19  previously?
20  A  I have seen the documents -- sorry, let
21  me correct that. The last of the documents I located
22  and submitted, which is this, from D 11 onwards. The

Page 11

1  remainder were obtained elsewhere, I had no involvement
2  in those.
3  Q  Tell me what the document beginning at
4  page D 11 and continuing through D 35 is, please.
5  A  It is a quotation submitted through our
6  North American office for equipment supply, key parts
7  and engineering equipment supply for spray dryer system.
8  Q  And who was the intended customer?
9  A  SPI were, Pharma.
10  Q  SPI Pharma Inc.?
11  A  I believe so, yes. (Pause). Yes, in
12  Grand Haven.
13  Q  Grand Haven is merely a manufacturing
14  location of SPI Pharma Inc., correct?
15  A  It is a manufacturing location.
16  Q  But it is not the exclusive location in
17  the United States of SPI Pharma?
18  A  I believe not.
19  Q  What was the purpose of the estimate?
20  A  The purpose of the estimate was to
21  provide SPI Pharma with information, sufficient
22  information in order for them to purchase the key parts

Page 12

1  and engineering of that spray drying system, as a
2  competitive bid, as a competitive quotation.
3  Q  Was the quotation accepted?
4  A  It was.
5  Q  Was the installation made?
6  A  I believe it was, yes.
7  Q  You're not sure?
8  A  I am not sure, I have never been there,
9  and it was done exclusively through our American company
10  at the time, so I understand it has been installed, yes.
11  Q  Where was the equipment manufactured?
12  A  The equipment was manufactured at various
13  locations in Europe and in America, and supplied through
14  our Drytec North America.
15  Q  Was any of the equipment manufactured in
16  the U.K.?
17  A  I believe it was.
18  Q  Which components and where, please?
19  A  I don't know where, generally. Which
20  components, I believe it was only the atomizer assembly.
21  Q  Which parties executed the contract?
22  A  Drytec North America.

Page 13

1  Q  So this is not a contract between Drytec
2  Limited and SPI Pharma?
3  A  No, it's not.
4  Q  What is the business of Drytec Limited?
5  A  Drytec Limited designs, supplies,
6  installs and commissions drying equipment.
7  Q  Did I understand correctly that your only
8  employment is as the managing director of Drytec
9  Limited?
10  A  It's not only Drytec Limited, no.
11  Q  What other companies?
12  A  Drytec Contract Processing Limited and
13  Drytec Holdings Limited.
14  Q  And what are the activities of each of
15  those companies?
16  A  Drytec Holdings Limited is purely an
17  administrative holding company for Drytec Limited and
18  Drytec Contract Processing. Drytec Contract Processing
19  Limited spray dries -- toll spray dries various
20  materials for clients.
21  Q  Do those materials include Mannitol?
22  MS. HOLTHAM: Objection, again, the scope of

4 (Pages 10 to 13)

## Capital Reporting Company

Page 42

1    CERTIFICATE OF COURT REPORTER

2         I, Claire G. Hill, LiveNote Accredited

3    Reporter of London, England, hereby certify that the

4    foregoing testimony was recorded by me stenographically

5    and thereafter transcribed by me; and that the foregoing

6    transcript is a true and accurate verbatim record of the

7    said testimony.

8         I further certify that I am not a relative,

9    employee or counsel of any of the parties of the within

10   cause, nor am I an employee or relative of any counsel

11   for the parties, nor am I in any way interested in the

12   outcome of the within cause.

13

14

15         *Claire G. Hill*

16         Claire G. Hill

17   Dated  Friday 19 January 2007

18

19

20

21

22