IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROQUETTE FRERES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-540-*** |
| | ) | |
| SPI PHARMA, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF DEPOSITION**
**PURSUANT TO FED. R. CIV. P. 30(b)(6)**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, commencing on September 17, 2007 at 9:30 a.m. in the offices of Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801, or at such other mutually agreeable time and place, defendant SPI Pharma, Inc. will take the deposition of plaintiff Roquette Freres ("Roquette"), by and through one or more officer(s), director(s), managing agent(s), or other person(s) designated to testify on its behalf as a knowledgeable person(s) regarding the topics set forth in the attached Schedule A. The deposition will continue from day-to-day until completed.

Roquette is required to identify each person designated to testify regarding each of the topics in Schedule A at least five (5) business days before the deposition begins. The deposition(s) will be taken before a Notary Public or other person authorized to administer oaths, and will be recorded by stenographic and videographic means. You are invited to attend and cross-examine.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

_/s/ Jeffrey T. Castellano_
--------------------------------
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 3847)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com
*Attorneys for Defendants*

OF COUNSEL:
Brian P. Murphy
Daniel P. Murphy
Oren D. Langer
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Dated: August 9, 2007

## SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

A. As used herein, the term "plaintiff" or "Roquette" refers to the named plaintiff Roquette Freres, and includes any parents, predecessors, subsidiaries, divisions or associated or affiliated organizations, including officers, directors, trustees, employees, staff members, agents or representatives, including counsel.

B. "Patent-in-Suit" means United States Patent No. 5,573,777, which is assigned to Roquette.

C. "Covered Product" means any current or former product manufactured by or for Roquette or sold by or for Roquette covered by the claims of the Patent-in-Suit.

D. As used herein, the term "defendant" or "SPI Pharma" refers to the named defendant SPI Pharma, Inc.

E. As used herein, "prior art" is used in the same sense that it is used in 35 U.S.C. § 102 or 103, and includes any patent, printed publication, prior knowledge, prior use, prior sale or offer for sale, or other act or event defined in 35 U.S.C. § 102, taken singly or in combination.

F. The use of the singular form of any word shall include the plural, and vice versa.

G. The present tense of any verb shall be construed to include the past tense, and vice versa, as necessary to bring within the scope of a topic all responses that might otherwise be construed to be outside of its scope.

H. As used herein, the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the topic all responses that might otherwise be construed to be outside its scope.

I. As used herein, the term "any" shall be read to mean each and every, as well as any particular one.

J. If a privilege is claimed in response to any topic, state the nature of the privilege claimed, indicate as to the information requested whether (a) any documents exist, or (b) any oral communications took place, and describe the privileged material with sufficient particularity as required by Rule 26(b)(5), Fed. R. Civ. P., to identify the nature of the material, including, without limitation, its general subject matter, custodian, author, all recipients, and date of origination.

K. The inclusion of any topic within a subject heading should not be viewed as a limitation on the information sought or on the use of any such information obtained.

# TOPICS

I. **Roquette Patent-in-Suit**

1. Conception and reduction to practice, and corroboration of conception and reduction to practice, of the alleged invention of each claim of the Patent-in-Suit, including but not limited to written descriptions, testing and analysis.

2. The specification and claims of the Patent-in-Suit, including the intrinsic and extrinsic evidence relevant to the construction of any asserted claim and claim term that Roquette contends should not be construed in accordance with its ordinary meaning.

3. The utility of the Patent-in-Suit, including all benefits of practicing the alleged inventions of the Patent-in-Suit over non-infringing alternatives.

4. Secondary considerations or other objective indicia of nonobviousness of the Patent-in-suit, including, *inter alia*, any alleged long felt, but unmet need; any industry recognition; any alleged "commercial success"; and any alleged "failure of others" to arrive at the subject matter described.

II. **Prosecution of the Roquette Patent-in-Suit**

1. The preparation and prosecution of the application or applications leading to the Patent-in-Suit, and foreign counterparts thereof, including but not limited to communications to and from: (a) the U.S. Patent Office, (b) the Attorney(s) of record, and (c) any other attorney or agent.

2. Each continuation, continuation-in-part, divisional, or other patent application claiming priority from any of the applications for the Patent-in-suit, including foreign-filed counterpart applications, whether any of the foregoing have been abandoned or not.

3. Prior art to the alleged inventions claimed, disclosed or considered for disclosure by Roquette in the prosecution of the Patent-in-Suit and any application from which the Patent-in-Suit claims priority, and foreign counterparts thereof, and any information disclosure statements submitted to the Patent Office during prosecution of the Patent-in-Suit, including but not limited to how and when Roquette became aware of prior art references cited in such information disclosure statements.

4. Any changes to inventorship during prosecution of the Patent-in-Suit, including but not limited to, (1) the identity of any person(s) who determined inventorship at the time of filing; (2) the reasons for any change in inventorship; (3) the identity of the person(s) who determined that a change in inventorship was appropriate and determined which inventors to retain and delete; (4) the process by which any change in inventorship was verified with the originally named inventors; and (5) the existence and content of all documents relating thereto.

**III.** **Roquette Covered Products and SPI Pharma's Accused Product**

1. The design, development, testing, manufacture and operation of any Covered Product, including, but not limited to, the development of and final specifications and test methodologies for said Covered Product.

2. Roquette's first manufacture, public use, demonstration, advertisement, offer for sale and sale in the United States of any Covered Product, and any patent marking of such Covered Product.

3. Roquette's products covered by relevant prior art references, e.g., FR 2,571,045, FR 2,571,046 or their United States counterparts.

4. Any Roquette claim of notice to SPI Pharma concerning the Patent-in-Suit and the basis for Roquette's claim that SPI Pharma's Mannogem™ EZ Spray Dried Mannitol infringes any claim of the Patent-in-Suit, including but not limited to any testing or analysis by Roquette, or at the direction of Roquette, of SPI Pharma's Mannogem™ EZ Spray Dried Mannitol.

**IV.** **Roquette's Corporate Organization, Document Collection, Document Policies and Procedures**

1. The corporate organization of Roquette, including, but not limited to, the identification of all departments, groups and/or individuals involved with the development, testing, manufacture, marketing and sales of any Covered Product.

2. The search, collection and identification of documents and files relating to Roquette's responses to SPI Pharma's written discovery requests, including SPI Pharma's Interrogatories and Requests for Production of Documents.

3. Roquette's document retention policies, procedures and/or practices.

**V.** **Damages Related Topics**

1. Financial information regarding any Covered Product, including, but not limited to:

    a. the unit volume of each Covered Product sold in the United States, its territories or possessions from the date of its first sale;

    b. the gross revenues received per annum as a result of the sales in (a) above;

    c. the net profits before taxes per annum recorded as a result of the sales in (a) above and the method of calculation of such net profit;

    d. the portion of any profit on any Covered Product attributable to the alleged invention claimed in the Patent-in-Suit;

    e. any royalties paid related to the sale of the Covered Product;

    f. the actual or potential effect of the sales of the Covered Product on the sales of any other product by Roquette;

    g. the pricing of the Covered Product, including any analysis of pricing and market share;

    h. the unit volume of each Covered Product manufactured from the date of its first manufacture; and

    i. the manufacturing costs per annum of the Covered Product.

2. Market research, business plans, and/or financial projections related to and/or considered by Roquette with regard to any Covered Product, including information related to the projected or actual market share of any Covered Product, the identification of competitive products, and the market share of such competitive products.

3. The marketing, promotion, advertising, and sale of any Covered Product, including, but not limited to advertisements, brochures, manuals, and other documents which describe the product to customers and the advantages and disadvantages of the product over other spray-dried mannitol products.

4. Any licensing agreements offered or entered into by Roquette in connection with the Patent-in-Suit, including any royalties received by Roquette.

5. The presence or absence of non-infringing alternatives to any Covered Products.

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, hereby certify that on August 9, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Mary B. Graham, Esquire
> Julia Heaney, Esquire
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street
> Wilmington, DE 19801

I further certify that on August 9, 2007, I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record and on the following in the manner indicated:

> **BY E-MAIL AND FEDERAL EXPRESS**
>
> Douglas V. Rigler, Esquire
> Young & Thompson
> 745 South 23rd Street, Suite 200
> Arlington, VA 22202

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Jeffrey T. Castellano_
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com

*Attorneys for Defendants*