## Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Julia Heaney
302 351 9221
302 425 3004 Fax
jheaney@mnat.com

December 18, 2007

**BY E-FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
844 King Street
Wilmington, DE 19801

    Re: *Roquette Frères v. SPI Pharma, Inc., et al.*
       C.A. 06-540 (***)

Dear Magistrate Judge Thynge:

  We write in reply to SPI's letter of December 17, 2007 (D.I. 143).

**A. Roquette Fully Complied with the Court's Order to Produce Previously Noticed High-Level Individuals in the U.S. and Now Seeks the Court's Intervention Regarding Further Depositions of Low-Level Technicians Employed by Roquette**

  During the September 14, 2007 conference, the Court ordered Roquette to produce five witnesses noticed by SPI, all of whom are management-level, in the United States. Roquette did so. At issue now are SPI's new notices of different individuals, specifically, five low-level technicians one of whom is retired.

  As to SPI's requests for available dates for Mr. LeBihan, Roquette informed SPI on November 19, 2007 that Mr. LeBihan was unavailable on SPI's proposed dates of December 4-6, that Roquette would seek alternative available dates, and that if Mr. LeBihan was the only additional witness Roquette would waive its objection to producing Mr. LeBihan in the U.S. (Exh. A). SPI's characterization of these clearly cooperative gestures as having "frustrated SPI's efforts to schedule to the deposition of Mr. Lebihan" is inaccurate.

The Honorable Mary Pat Thynge
December 18, 2007
Page 2 of 2

### B. The Requested Documents From Roquette's Privilege Log are Privileged – Those Which Were Produced Were Not

Roquette cannot be said to have waived privilege merely by producing other non-privileged communications to or from the same individual. Rather, Roquette's production of non-privileged communications involving Mr. Quenon indicates that Roquette carefully considered its privilege claims and did not withhold merely informational documents.

The documents which were withheld were generated for the purpose of and in connection with obtaining advice of U.S. and foreign counsel in anticipation of litigation. See Fed. R. Civ. P. 26(b)(3)(A).

Roquette previously informed SPI of the foregoing bases for its claim of privilege on the specified documents. (See Exh. B).[1] Moreover, SPI has asserted the identical basis for its privilege claim. For example, in refusing to answer deposition questions on the ground of attorney/client privilege, SPI's designated Rule 30(b)(6) witness explained, "[e]verything we did was then conferred with our attorneys." (Deposition Transcript of SPI Pharma, Inc., Exh. C hereto, at 52:6 to 53:2).

In light of its assertions of identical privilege, SPI's request for an *in camera* inspection of these communications is unwarranted.

### C. SPI's Challenge to Roquette's Prior Explicit Representation Regarding Attorney Prosecution Files is Wholly Without Merit

Roquette previously informed SPI that it has produced all non-privileged documents located in its foreign attorneys' prosecution file regarding the French priority application, in its foreign attorneys' prosecution file regarding the patent-in-suit, and in its U.S. attorneys' prosecution file regarding the patent-in-suit. (See Exh. B).

Respectfully,

*Julia Heaney*
Julia Heaney

JH:ncf
cc:  Dr. Peter Dalleo, Clerk (By hand delivery)
     John W. Shaw (By e-mail)
     Oren D. Langer (By e-mail)
1339922

---

[1] For its part, the SPI privilege log identifies numerous withheld documents which are neither authored nor received by an attorney. SPI has yet to respond to Roquette's letter, sent more than two months ago, requesting that SPI substantiate its privilege claims or produce the specified documents.

# EXHIBIT A

Case 1:06-cv-00540-GMS-MPT   Document 145-2   Filed 12/18/2007   Page 1 of 8

**Jeffrey Snay**

**From:** Jeffrey Snay
**Sent:** Monday, November 19, 2007 3:08 PM
**To:** 'olanger@morganlewis.com'
**Cc:** Douglas V. Rigler
**Subject:** Roquette v. SPI; depositions

Dear Oren,

December 4-6, 2007 do not work for the deposition of M. LeBihan. We are working to obtain available dates.

Roquette objects to producing M. LeBihan in the United States. However, if he is the only additional deponent it is willing to bring him here. Accordingly, please confirm that he is the only remaining witness or let us know who else SPI intends to notice.

Thank you,
Jeffrey

# EXHIBIT B

# YOUNG & THOMPSON
International Patent & Trademark Law

*Established 1903*

Emil Bönnelycke
1875–1936

William H. Young
1902–1958

Irvin S. Thompson
1903–1979



December 14, 2007

Daniel P. Murphy, Esq.
Morgan Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178

<u>**VIA ELECTRONIC MAIL AND FEDERAL EXPRESS**</u>

Re:     *Roquette Freres v. SPI Pharma, Inc.*; C.A. No. 06-540 (\*\*\*)
        <u>Our Ref.:  0600-269</u>

Dear Dan,

This responds to your letter of December 4, 2007, in which you request production of attorney prosecution files and specified documents listed on Roquette's privilege log.

Initially, we note the discrepancy between your December 4 letter and SPI's statements made in the December 3 Interim Status Report. Specifically, in the Interim Status Report, SPI requests "the French . . . attorneys' patent prosecution files for the Roquette <u>patent-in-suit</u>," whereas your December 4 letter calls for prosecution files from Roquette's "French counsel responsible for prosecution of the <u>French priority document</u>." Despite the consequential ambiguity, we respond regarding prosecution files pertaining to both the patent-in-suit and its French priority application.

All non-privileged documents regarding Roquette's French counsel's prosecution of the French priority application were previously produced. See RF 01019 – RF 01083. No additional non-privileged documents have been located.

All non-privileged documents regarding Roquette's U.S. and French counsel's prosecution of the patent-in-suit also have been produced. See RF 00581 – RF 00755 and RF 1955 – RF1960. No additional non-privileged documents have been located.

745 South 23rd Street
Arlington, Virginia 22202
(703) 521-2297

Website: www.young-thompson.com
Facsimile: (703) 685-0573 · (703)-979-4709
Licensing & Litigation Fax: (703) 521-8231

Daniel P. Murphy
December 14, 2007
Page 2 of 2

Regarding your request for production of Roquette's privileged documents, listed as RF P209-223, RF P226 and RF P233 on Roquette's privilege log, Roquette claims both attorney/client and work product privilege for those documents. Specifically, each of the foregoing privileged documents pertains to information that was generated for the purpose of obtaining advice of U.S. counsel, and upon which advice of U.S. counsel was sought and obtained. Accordingly, the listed documents will not be produced.

Sincerely,

Jeffrey R. Snay

# EXHIBIT C

Capital Reporting Company
CONFIDENTIAL

Page 52

```
 1                    COLLEEN BLACKNEY
 2      something you can't get around.  We worked to
 3      get around it.  So that's to work, develop
 4      the product outside of the patent.
 5  BY MR. RIGLER:
 6     Q.  What did SPI do to get around the patent?
 7             MR. LANGER:  Objection to the extent
 8      that that information was given to SPI Pharma
 9      as a result of its discussions with
10      attorneys.  I instruct you not to answer.
11             THE WITNESS:  That information is part
12      of attorney privilege.
13  BY MR. RIGLER:
14     Q.  So, everything that SPI did to get around the
15  patent was done at the direction of an attorney?
16     A.  Was done in conjunction with the attorney,
17  yes.
18     Q.  Everything?
19     A.  I'm not -- "everything" is a pretty relative
20  term.  Can you be more --
21     Q.  As I understand your testimony, every single
22  thing that SPI did to get around the patent was done
23  at the direction of or in conjunction with an
24  attorney, is that correct?
25     A.  Everything that we did was then conferred
```

Capital Reporting Company
**CONFIDENTIAL**

Page 53

1                COLLEEN BLACKNEY
2   with our attorneys.
3      Q.  And there were no --
4      A.  Based on work they were doing for us.
5      Q.  And there were no internal discussions at SPI
6   prior to taking the idea to the attorney?
7      A.  Actually, it's in documents submitted that
8   the clear first meeting step was to contact the
9   attorneys for a patent search.
10     Q.  How does SPI contend that it got around the
11  patent?
12           MR. LANGER:  Objection.  It's a
13       contention interrogatory question.  I
14       instruct the witness not to answer.
15           THE WITNESS:  I have been instructed not
16       to answer.
17           MR. RIGLER:  Mr. Langer, you were
18       present during the telephone discussion with
19       Judge Thynge when a similar question came up?
20           MR. LANGER:  Absolutely.
21           MR. RIGLER:  And what was Judge Thynge's
22       ruling?
23           MR. LANGER:  Judge Thynge's ruling was
24       when the inventor was asked about factual
25       inquiries into his patent that were not based