# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Julia Heaney
302 351 9221
302 425 3004 Fax
jheaney@mnat.com

September 4, 2008

**BY E-FILING**

The Honorable Mary Pat Thynge
United States District Court
    for the District of Delaware
844 King Street
Wilmington, DE 19801

        Re:  *Roquette Frères v. SPI Pharma, Inc., et al.*
              <u>C.A. 06-540 (GMS/MPT)</u>

Dear Magistrate Judge Thynge:

       In its letter of September 3, 2008 prior to tomorrow's teleconference, SPI mischaracterizes the substance and purpose of Dr. Brittain's August 5 test. SPI incorrectly asserts that Dr. Brittain's test "showed a non-infringing friability result," in an attempt to obtain further discovery of information it has long been aware of. The test was performed subsequent to receipt of SPI's expert reports in order to demonstrate that the friability values SPI's expert witnesses rely upon were the result of incorrect testing by SPI.

       Contrary to the patent, SPI measured friability of its products using a tablet drum. On August 5, in reaction to statements made in SPI's expert rebuttal reports which contend that SPI's different friability measurements were the result of variations in sieving, Dr. Brittain performed SPI's incorrect friability test to show that SPI's different and inaccurate measurements resulted from its use of the wrong drum. The result of that test, which Roquette immediately produced, is unrelated to infringement because it does not perform the friability test required by the claims of the patent.

       Well before the end of discovery, Dr. Brittain tested SPI's products for infringement, including measuring friability with an abrasion drum, which Dr. Brittain selected as the appropriate drum called for by the claims of the '777 patent. The details of those tests and the equipment used were identified in his notebook pages <u>and shown in videos</u>, which Roquette produced. The only different piece of equipment used in Dr. Brittain's subsequent test of August 5 was the tablet drum.

The Honorable Mary Pat Thynge
September 4, 2008
Page 2 of 3

SPI's discovery requests are: (1) irrelevant to any affirmative defense or counterclaim that SPI has raised in this case; (2) cumulative of discovery already produced; (3) made only after the close of discovery; and are essentially moot. Accordingly, Roquette requests that SPI's belated demand for further discovery be denied.

### (1) Dr. Brittain's Single Tablet Drum Test Is Irrelevant to Any of SPI's Asserted Defenses and Counterclaims in This Case

SPI's contention that Dr. Brittain's tablet drum test showed a "non-infringing friability result" is a mischaracterization of fact. To the contrary, Dr. Brittain confirmed in his deposition that using the tablet drum, as SPI did in its friability measurements, was not the test called for by the '777 patent:

> So I don't think one reading this [the '777 patent] would think of
> using a tablet drum. I think they would be led to use an abrasion
> drum. (Brittain Dep. at 18:12-14, Exh. A hereto).

All of Dr. Brittain's infringement-related friability tests were conducted with an abrasion drum, which Dr. Brittain selected as the appropriate drum called for by the claims of the '777 patent and which he identified in his notebook pages, videos and initial expert report.

Thus, Dr. Brittain's subsequent tablet drum test intentionally was _not_ the friability test ("Test I") recited in the claims of the '777 patent. Nor did Dr. Brittain conduct that test for any purpose related to his infringement analysis. Rather, Dr. Brittain explained that he conducted that test "[i]n response to some of the things I had read in [SPI's expert] rebuttal reports." (Brittain Dep. at 8:3-8, Exh. A hereto). SPI's expert rebuttal reports contend that the difference between SPI's and Dr. Brittain's measured friability values was caused by variations in sieving. Dr. Brittain then conducted the tablet drum test on August 5 to determine whether SPI's different measured friability value instead was caused by SPI's use of the wrong drum. Roquette produced Dr. Brittain's notebook pages relating to that tablet drum test three days later at the beginning of his deposition.

Contrary to SPI's suggestion made in the third bullet point on page 2 of its letter, SPI has **never** raised any question as to which drum should be used in the friability test in support of any claim of invalidity, nor has it raised that point in any interrogatory response, invalidity contention or expert report or expert testimony. Rather, as noted above, SPI's non-prior art invalidity defense has been directed exclusively to sieving.

### (2) Roquette Has Produced Information That Identifies and Depicts All of the Equipment Used by Dr. Brittain in His Infringement Tests

The equipment used by Dr. Brittain in his infringement tests is identified and depicted in the documents and videos which Roquette produced more than four months ago. That equipment also is commercially available, if not already owned by SPI. Any physical inspection of such equipment would be cumulative to what has already been produced.

The Honorable Mary Pat Thynge
September 4, 2008
Page 3 of 3

Both of SPI's technical experts, Drs. Masters and Davé, were able to opine in their rebuttal reports regarding SPI's friability data without ever inspecting or even viewing SPI's equipment. (See Masters Dep. at 41:12-15 and Davé Dep. at 78:8-79:1, Exhs B and C hereto) (indicating that neither expert has ever seen an ERWEKA friability device). SPI offers no reason why it now needs to inspect Dr. Brittain's equipment, which in any event has already been fully identified in writing and depicted in video.

### (3) SPI's Requests for Information It Knew of Well Before Discovery Closed, But Requested Only After Discovery Closed, are Untimely

Discovery ended June 30, 2008. (D.I. 187). More than a month later, SPI made new discovery requests regarding Dr. Brittain's laboratory equipment. (SPI's Exh. A).

Prior to the close of discovery, SPI knew of each piece of equipment that Dr. Brittain used in conducting his tests pertaining to his opinion of infringement. Dr. Brittain's equipment was identified in his notebook pages, <u>and shown in videos</u>, each of which were produced to SPI on April 17, 2008.

SPI had ample opportunity to request information regarding that equipment in a timely fashion long before discovery closed and it offers no excuse for its delay.

Although SPI's request is without merit and untimely, Roquette is willing to make available the ERWEKA operating manual and certificates pertaining to the Gilson Ro-Tap device, and to permit inspection of the tablet drum used by Dr. Brittain in the August 5 test at Young and Thompson's Virginia office at a mutually agreeable date and time.

Respectfully,

Julia Heaney

JH:ncf

cc: Dr. Peter Dalleo, Clerk (By hand delivery)
John W. Shaw (By e-mail)
Oren D. Langer (By e-mail)

2474829

# EXHIBIT A

Page 1

1              HARRY BRITTAIN

2        BEFORE THE UNITED STATES DISTRICT COURT

3              FOR THE DISTRICT OF DELAWARE

4

5   - - - - - - - - - - - - - - - -x

6   ROQUETTE FRERES,                :

7            Plaintiff,             :  Civil Action No.

8        vs.                        :  06-540 (GMS/MPT)

9   SPI PHARMA, INC., DRYTEC LTD.,  :

10  ANHYDRO U.K. LTD., DRYTEC        :

11  CONTRACT PROCESSING LTD., and    :

12  ANHYDRO HOLDING A/S,             :

13            Defendants.            :

14  - - - - - - - - - - - - - - - -x

15

16

17        VIDEOTAPED DEPOSITION OF HARRY BRITTAIN

18

19

20                              Washington, D.C.

21                              Friday, August 8, 2008

22

23  REPORTED BY:

24      SARA A. WICK, RPR, CRR

25

Page 2

HARRY BRITTAIN

Videotaped deposition of HARRY BRITTAIN, called for examination pursuant to Notice of Deposition, on Friday, August 8, 2008, in Washington, D.C., at the offices of Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Avenue Northwest, at 9:37 a.m. before SARA A. WICK, a Notary Public in and for the District of Columbia, when were present on behalf of the respective parties:

DOUGLAS V. RIGLER, ESQ.
JEFFREY R. SNAY, ESQ.
Young & Thompson
745 South 23rd Street
Arlington, Virginia 22202
703-521-2297
drigler@young-thompson.com
jsnay@young-thompson.com
On behalf of Plaintiff

-- continued --

TSG Reporting - Worldwide   877-702-9580

Page 3

HARRY BRITTAIN
APPEARANCES (continued):

BRIAN P. MURPHY, ESQ.
OREN D. LANGER, ESQ.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
212-309-2108
bmurphy@morganlewis.com
olanger@morganlewis.com
On behalf of Defendant SPI Pharma, Inc.

ALSO PRESENT: Larry Flowers, Video Operator

TSG Reporting - Worldwide   877-702-9580

Page 4

HARRY BRITTAIN
PROCEEDINGS
VIDEO OPERATOR: This is the start of tape labeled 1 of the videotaped deposition of Dr. Harry Brittain, in the matter of Roquette Freres, Plaintiff, versus SPI Pharma, Inc., et al., Defendant, in the United States District Court for the District of Delaware, Civil Action Number 06-540 (GMS/MPT).
    This deposition is being held at Morgan Lewis, 1111 Pennsylvania Avenue Northwest, Washington, D.C., on August 8, 2008, at approximately 9:37 a.m.
    My name is Larry Flowers from TSG Reporting, Inc., and I am the legal video specialist. The court reporter is Sara Wick, in association with TSG Reporting.
    Will counsel please introduce yourselves.
    MR. MURPHY: Yes. Brian Murphy from Morgan, Lewis & Bockius, on behalf of the Defendant SPI Pharma. And with me is Oren Langer, also from Morgan, Lewis.
    MR. RIGLER: Douglas Rigler and Jeffrey Snay, representing Roquette Freres.
    VIDEO OPERATOR: And will the court

09:34:56
09:35:15
09:35:30
09:35:41
09:35:58

TSG Reporting - Worldwide   877-702-9580

Page 5

HARRY BRITTAIN
reporter please swear in the witness.
Whereupon,
    HARRY BRITTAIN
was called as a witness and, having first been duly sworn, was examined and testified as follows:
    EXAMINATION
BY MR. MURPHY:
    Q  Good morning, Dr. Brittain.
    A  Good morning.                    09:36:12
    Q  Dr. Brittain, you've been deposed before; correct?
    A  Yes, I have.
    Q  You understand the procedure; right?
    A  I believe I do.                  09:36:19
    Q  You've been retained as an expert for the plaintiff in this case; is that right?
    A  Yes.
    Q  And that's Roquette Freres?
    A  Yes.                             09:36:29
    Q  And Roquette Freres is a French company that makes pharmaceutical excipients; right?
    A  That is my understanding.
    Q  And what's your area of expertise or background?    09:36:39

TSG Reporting - Worldwide   877-702-9580

### Page 6

**HARRY BRITTAIN**

A    My background is in physical chemistry, physical characterization of solid materials.

Q    All right. Any other areas of expertise that you'd like to put on the record?    09:36:56

A    I certainly have expertise in pharmaceutical formulations, characterization of bulk drug substances.

Q    All right. You've been retained as an expert witness by Roquette Freres; right?    09:37:18

A    Yes, I have.

Q    And when were you first retained?

A    I don't remember the exact date.

Q    Approximate month or year?

A    Probably some time last year, maybe the middle of the year. I really don't remember the month.    09:37:34

Q    Some time in 2007?

A    I believe so.

Q    And you have submitted two expert reports in this case; is that correct?    09:37:53

A    Yes, I have.

Q    And those reports are signed by you; right?

A    Yes, they are.    09:38:03

TSG Reporting - Worldwide    877-702-9580

### Page 7

**HARRY BRITTAIN**

Q    And those two reports reflect all of the opinions that you intend to give in this case at the time of trial; right?

A    Well, they certainly reflect all the opinions I have developed to date. What happens at trial, I have no way of knowing.    09:38:12

Q    But as of today, is it correct that your written reports reflect the opinions that you've developed and intend to give at trial?    09:38:29

A    As far as I know, yes.

Q    So there's nothing — if there's something that's not contained in your report, you're not going to give an opinion on it; correct?

A    Not necessarily. Everything depends upon the nature of questions which are posed to me.    09:38:44

Q    Is there anything you're aware of today right now that's not in your report that you would expect to give an opinion on at trial?

A    It could happen, yes.    09:39:00

Q    No, I mean specifics. Are you aware of anything right now?

A    Well, I'm aware of one specific, let's say, set of observations that I've made recently.

Q    And could you, please, describe that for    09:39:15

TSG Reporting - Worldwide    877-702-9580

### Page 8

**HARRY BRITTAIN**

me?

A    Yes. In response to some of the things I had read in rebuttal reports, last week -- no, early this week, in fact, I conducted some additional experimentation because I was rather perplexed by some of the things I had read and learned, something very interesting.    09:39:41

Q    When did you conduct these experiments?

A    Monday and Tuesday of this week.    09:40:04

Q    Did you bring any documents reflecting those experiments with you today?

A    I haven't brought any documents.

Q    Have you supplemented any of your reports?

A    No.    09:40:17

Q    What was the interesting thing that you learned?

A    Well, I believe I have uncovered the reason why the friability values measured by SPI were so low compared to the friability values I obtained on comparable Mannitol materials.    09:40:37

Q    This information that you just described is not in either of your two expert reports; is that correct?

A    It is not.    09:40:54

TSG Reporting - Worldwide    877-702-9580

### Page 9

**HARRY BRITTAIN**

Q    And you don't have any documents reflecting that work here today, do you?

A    I don't personally, no.

MR. RIGLER:  We do.    09:41:03

MR. MURPHY:  What does that mean?

MR. RIGLER:  We have the notebook entry for the experiment.

MR. MURPHY:  Can I have them, please? Let's take a break and go off the record.    09:41:13

VIDEO OPERATOR:  We're off the record. The time is approximately 9:43 a.m.

MR. RIGLER:  Let's stay on the record for one minute, please.

VIDEO OPERATOR:  We're still on.    09:41:28

MR. RIGLER:  Jeffrey, I'm not sure that these pages have been Bates numbered even. So we might hand Bates number them so that we'll have a record for identification.

MR. SNAY:  It's correct, they have not been Bates numbered, and I can hand-enter them.    09:41:42

MR. MURPHY:  Why don't you give me one while you're entering the others.

MR. SNAY:  That's fine.

MR. MURPHY:  Can we go off the record,    09:41:56

TSG Reporting - Worldwide    877-702-9580

Page 14

HARRY BRITTAIN

1
2  then, a copy of your notebook with experiments
3  entries from this case previously provided by
4  counsel for Roquette, Bates numbered RF2012 through
5  RF2037.                                         09:52:18
6      (Exhibit 39 identified.)
7  BY MR. MURPHY:
8    Q  Dr. Brittain, I've handed you now what
9  we've marked as Defendant's Exhibit 39. Can you,
10 please, take your time, take a moment to look    09:52:42
11 through it and confirm that, in fact, this is a copy
12 of your notebook entries on the experiments that you
13 performed in this case on SPI Pharma's Mannogem EZ
14 and Mannitol HS products.
15   A  Yes, yes, this is a copy of my research    09:53:14
16 notebook.
17   Q  All right. So if you could, let's keep in
18 front of you both of these exhibits since we now
19 have the -- all of the entries from your notebook,
20 at least as of today. And looking at page 1 in     09:53:24
21 Defendant's Exhibit 39, page 1 of your notebook
22 Bates numbered RF 2014, at the top, you've
23 written "material received"; correct?
24   A  Yes.
25   Q  And you reference Mannogem EZ lot 2635-CPC  09:53:47

TSG Reporting - Worldwide   877-702-9580

Page 15

HARRY BRITTAIN

1
2  as the specific lot of Mannogem EZ that you received
3  for testing; correct?
4    A  That is correct.
5    Q  And you received that material on February  09:54:00
6  6th, 2008; right?
7    A  Yes.
8    Q  And that's the same material that you used
9  for your experiment earlier this week on August 5th
10 of 2008, as reflected in Defendant's Exhibit 38;   09:54:12
11 right?
12   A  That is correct.
13   Q  Going back to Defendant's Exhibit 39 on
14 page 1 of your notebook, and we're under the entry
15 that you made on February 6th, 2008, you've also   09:54:30
16 pasted a copy of the patent claim on that page;
17 right?
18   A  Yes, I have.
19   Q  And when I say "patent," I'm referring to
20 the patent in suit, which is U.S. Patent No. 573777;  09:54:44
21 right?
22   A  Yes.
23   Q  So you've basically cut and pasted claim 1
24 from the patent into your notebook; correct?
25   A  That is correct.                         09:54:54

TSG Reporting - Worldwide   877-702-9580

Page 16

HARRY BRITTAIN

1
2    Q  And you did that as a point of reference
3  for the tests that you were going to conduct; right?
4    A  Yes.
5    Q  And isn't it correct that claim 1 of the   09:55:01
6  patent doesn't say anything about an abrasion drum
7  or a tablet drum?
8    A  It does not have those specific records in
9  it, no.
10   Q  And in fact, the entire '777 patent does   09:55:12
11 not have any reference to an abrasion drum or a
12 tablet drum; right?
13   A  I don't recall it saying those words, no.
14   Q  In fact, it doesn't say anything about the
15 type of drum to be used for the friability test    09:55:28
16 anywhere in the '777 patent; right?
17   A  I'm not 100 percent sure. It's possible
18 that the reference to the TAP friabulator could
19 contain a reference to the abrasion drum, but I
20 don't know that for sure.                         09:55:48
21   Q  Okay. Let me hand you a copy of the
22 patent in suit, then, please. I believe it's been
23 previously marked. Well, we're going to mark it
24 again. I'll have the reporter mark this as
25 Defendant's Exhibit 40.                           09:56:05

TSG Reporting - Worldwide   877-702-9580

Page 17

HARRY BRITTAIN

1
2     (Exhibit 40 identified.)
3  BY MR. MURPHY:
4    Q  So Dr. Brittain, you have a copy of the
5  patent in suit in your hands. We've marked it again  09:56:30
6  now as Defendant's Exhibit 40. Either you can find
7  it, or I can try and help you find the reference to
8  the Erweka TAP friabilimeter. I have it in column
9  5, if that helps you, if you start about line 22.
10   A  Yes, I see that.                          09:56:59
11   Q  Is that what you were referring to in your
12 previous answer?
13   A  Yes.
14   Q  Take a moment to read that paragraph, and
15 just tell me when you're finished, please.        09:57:11
16   A  Yes, I'm finished.
17   Q  All right. And isn't it correct that in
18 that paragraph, there is no reference to any
19 particular type of drum to be used in the Erweka
20 friabilimeter?                                   09:57:43
21   A  I'm not sure about that. It doesn't say
22 abrasion. It doesn't say tablet drum. But it does
23 reference something called a crushing chamber. As I
24 said before, a tablet drum is specifically
25 engineered, was designed to measure the ability of  09:57:55

TSG Reporting - Worldwide   877-702-9580

Page 18

HARRY BRITTAIN

1  HARRY BRITTAIN
2  tablets to be chipped; whereas, the abrasion drum
3  was designed to be a measurement of abrasion.
4      Now, since the test method talks about the
5  introduction of steel balls, there's no doubt that    09:58:14
6  in an abrasion drum through the tumbling there will
7  be abrasion and crushing. I don't -- when I see the
8  word "crushing chamber," it does not bring to mind a
9  tablet drum. I think one reading this would look at
10 that and say, first of all, that there's no mention    09:58:38
11 in here of testing tablets.
12     So I don't think one reading this would
13 think of using a tablet drum. I think they would be
14 led to use an abrasion drum. But it doesn't say the
15 word "abrasion." In that, you're correct.    09:58:56
16     Q  What is your basis for saying you think
17 that?
18     A  Well, it's my experience working in
19 physical characterization of pharmaceutical solids
20 over the past now it's more than 20 years.    09:59:11
21     Q  So your position is that the use of the
22 word "crushing chamber" instructs someone of
23 ordinary skill not to use a tablet drum?
24     A  I don't know that it says not to use a
25 tablet drum. I think what it says is that the    09:59:32

TSG Reporting - Worldwide    877-702-9580

Page 19

1  HARRY BRITTAIN
2  appropriate drum is an abrasion drum.
3      Q  Where does it say that?
4      A  It's through the use of the
5  words "crushing chamber" of this what I will call    09:59:41
6  friabulator. It's the American expression.
7      Q  So the patent doesn't say that; correct?
8  You're inferring it from the use of the
9  words "crushing chamber"; correct?
10     A  Yes. That's what I said earlier.    09:59:53
11     Q  What's a Erweka TAP friabilimeter?
12     A  Erweka is the company name, and I'm not
13 totally familiar with the nomenclature of their
14 different units. The Erweka instrument is -- it's
15 really just a rotating motor. All friabulators are    10:00:13
16 rotating motors, and the important part of the
17 instrument is the drum.
18     Now, whether TAP is a specific model that
19 they sell or sold with an abrasion drum, that, I
20 don't know. I know Erweka makes all types of    10:00:34
21 different drums, and probably as time evolved,
22 they've made additional ones. There are some
23 models, probably, with a single drum.
24     There's some models that let you perform
25 two measurements at a time. They have dual drums.    10:00:48

TSG Reporting - Worldwide    877-702-9580

Page 20

1  HARRY BRITTAIN
2  There are other models -- I'm not sure Erweka makes
3  them -- where you can actually stack multiple drums
4  on the same spindle. All of these would have,
5  perhaps, different nomenclatures.    10:00:59
6      Q  Have you ever tried to find an Erweka TAP
7  friabilimeter?
8      A  I looked on their current Web site once,
9  and the TAP is not listed on their current Web site.
10     Q  And the fact is, there is no such thing as    10:01:16
11 an Erweka TAP friabilimeter; correct?
12     A  I don't know that, no.
13     Q  You've never heard of one before, have
14 you?
15     A  I've not been able to -- well, I only    10:01:24
16 looked at the current Web site that Erweka has. I
17 don't know at the time of this patent -- it was
18 issued -- it was filed in 1994. I don't know what
19 Erweka actually sold in 1994. For all I know, they
20 could have had a TAP. It seems to me if the authors    10:01:46
21 of the patent wrote "Erweka TAP," they must have had
22 a Erweka TAP.
23     Q  So you're completely speculating on that;
24 correct?
25     A  I don't think it's speculation. It's in    10:02:02

TSG Reporting - Worldwide    877-702-9580

Page 21

1  HARRY BRITTAIN
2  the patent specification.
3      Q  Oh, really? Have you spoken to the
4  inventors?
5      A  No.    10:02:08
6      Q  Have you read their depositions?
7      A  I'm trying to -- I'm not sure. I might
8  have, but I'm not sure.
9      Q  Let me ask you, in this case, you've been
10 retained as an expert; is that right?    10:02:32
11     A  Yes.
12     Q  Have you been provided with the
13 depositions of the inventors?
14     A  I think I have. That's what I'm trying to
15 remember.    10:02:39
16     Q  Have you been provided with depositions of
17 anyone else besides the two inventors?
18     A  Yes, I have.
19     Q  And so are you aware of any evidence that
20 suggests that the inventors actually had available    10:02:50
21 to them at the time of this patent application
22 something called an Erweka TAP friabilimeter?
23     A  I haven't seen such evidence, no.
24     Q  Because no evidence exists to your
25 knowledge; correct?    10:03:06

TSG Reporting - Worldwide    877-702-9580

# EXHIBIT B

FILED SEPARATELY
UNDER SEAL

# EXHIBIT C

# FILED SEPARATELY UNDER SEAL